Exhibit 43

**THE RELATIONSHIP THERAPY CENTER**
*7302 Jarnigan Road*
*Chattanooga, TN 37421*
**Ph-(423) 855 – 4091**
**Fax-(423) 855 - 8928**

Independent Practitioners
William M. Hillner, Ph.D.
David A. Solovey, Ph.D., P.C.
Kevin Ferguson, M.D.



## PSYCHOLOGICAL EVALUATION

**Subject: Rea Jon Taylor**
**DOB: 9/15/1984**
**Date of Evaluation: 2/14/05-3/29/05**
**Date: January 22, 2006**

**Background Information**
His attorney, William Ortwein, referred Mr. Taylor for this evaluation. The specific questions asked were the following:

> -Did Mr. Taylor comprehend the nature of the charges against him?
> -Was Mr. Taylor suffering from a severe mental disease or defect that rendered him unable to appreciate the nature and quality or the wrongfulness of his acts?
> -Is Mr. Taylor capable and able to assist in his defense?
> -Is there relevant mitigation bearing on the character, history, physical history, mental history, or psychological status of Mr. Taylor?

**Social History**

Mr. Taylor was born to Reba Taylor and resided in a single parent home. He apparently was conceived while his father was temporarily out of jail. He and his mother report that his father (John) was in the penitentiary until Rea Jon was 11 years old. He briefly lived with his father when in Middle School. Rea Jon describes this as being without significant incident. He considers his dad as a good dad when they were together. There was no contact or lengthy visits before they lived together. He has an older brother 3 years his senior and an older sister 13 years his senior.

The reported history reveals no significant injuries, illnesses, or trauma. He has had no health problems, has never been involved in taking drugs and has not been in any accident with injury. He has not reported and denies visions and hallucinations.

He has been described as smart, lovable, and easy going. He always tended to defend and befriend disabled individuals. His mother reports that he was an average student. He did have some minor discipline problems arise in high school, but these were considered limited. He had never been aggressive. He worked after school and eventually had his own auto detail business. He decided to work more days and ended up dropping day school and enrolled in night school while in the 11th grade (8/01). He eventually dropped out of school.

His mother reported that she and his older brother would provide whatever Rea Jon wanted. He had no need for anything. His mother was upset about him leaving school. She attributes his

Exhibit 43

ReaJon Taylor

leaving was due to involvement with a girlfriend and eventually them moving in together.

His mother also recognized that he had exhibited poor judgment with other people. He would lend or give them things and other "friends" would steal from him. She sited one example of him lending her truck to a friend who then used it to try to steal motorcycles. His mother indicates that he had been taken advantage of on multiple occasions.

He remained in the auto detail business and eventually dropped this for more lucrative work. His mother did not want him to work but rather continue in school. She also reports that they had been involved in church, more actively over the past several years.

Rea Jon had placed himself in a position of having to raise a considerable amount of money to support his lifestyle. He had an expensive apartment, 2 car notes and a desire to buy for and take care of others. He had helped several of his friends with their rent, money for their children, and other payments. He liked going out and treating others. He was obtaining enough money in his various activities to maintain this lifestyle.

The instant offense occurred in August 2003. Rea Jon was arrested and incarcerated in November 2003. He has been in the Chattanooga Jail since February 2004. He has become increasingly religious since his incarceration. He is preoccupied with religious studies, obtaining states of religious reverie, and communicating religion to those around him. He has focused on purifying himself, freeing himself from earthly concerns and into spiritual experiences, and on worshipping Christ. He views the incarceration as prompted his spiritual growth and renewal.

He has used his time in jail to read, study, and meditate on scripture. He has studied, prayed, fasted, and meditated in order to enter a spiritual level of consciousness. He reports that he has dropped everything that draws him away from his worship of the Lord. On occasions, he refused contact with others (including his defense team and this psychologist), reporting that he was involved with meditation or fasting. He has reported to his defense team that he has discussions with God. He believed from this that God would intercede in his behalf regarding the evidence against him. He also informed the court that he did not need an attorney because he had God. At a later time he agreed to submit to his attorneys, based upon a "discussion" with the Lord. He believes his fate is in the hands of "The Lord" and that there is little that his attorneys could do that would make any difference. From his comments regarding this, his defense team was concerned about the presence of delusions or auditory hallucinations. The defense team is concerned as to whether his thinking is delusional or distorted to the extent that he cannot assist in his defense.

**Status at Evaluation**
Mr. Taylor was oriented x5. He was pleasant and smiling throughout the meetings we had. He demonstrated limited insight and disengagement from his current problems. He spoke rapidly, often excitedly, primarily focused on religious topics and personal gains and revelations made since he has been incarcerated. He indicated that he is transformed and unlike the person he was prior to the arrest. He indicated that he was entirely in the hands of "The Lord". He was not going to take any actions or decisions unless directed. He also reported a belief that God was

Exhibit 43

ReaJon Taylor

going to take care of him in this current situation. He expressed a belief that God was going to take care of the evidence against him and that he did not need to worry.

Mr. Taylor demonstrates no remote and no recent memory impairment. His reasoning level is within normal limits. He appears to be of at least average intelligence. There are no current risk factors regarding suicide. He has had no history of physically acting out with the exception of this instant offense.

Currently, his coping skills are doing well for him. He has adjusted to the boundaries placed upon him while incarcerated. He has used his time to read and learn and consult with the clergy in the jail. He is rationalizing an understanding of his time in jail via religious interpretations. Given that he has turned his fate and life to his higher power and authority, he appears euthymic. His sensorium appears unaffected by the threat of trial, the potential for the death penalty, and the impact of his alleged crime. He reports being at peace and trusting in God's decisions. He reports having prior feelings of sadness and guilt over the death of Mr. Luck. He indicates that his former lifestyle was bad and wrong, except that it eventually brought him to his current relationship with God.

**Test Administered**
Wechsler Adult Intelligence Scale- III
Minnesota Multiphasic Personality Inventory-2
Rorschach Diagnostic
Kaufman Short Neurological Assessment Procedure
Clinical Interview
The MacArthur Competence Assessment Tool-Criminal Adjudication

## Test Results

**Cognitive Evaluation**
Intellectually, Mr. Taylor is functioning in the Average Range of Abilities. He earned a Full Scale IQ of 108 (70th percentile), a verbal scale IQ of 107 (68th percentile), and a performance IQ of 107 (68th percentile). His verbal comprehension index was 107 (68th percentile), a perceptual organization index of 107 (68th percentile), and a working memory index of 106 (66th percentile). There were no outstanding weaknesses. He was at his best in the understanding of social rules and regulations and abstract skills.

| Scale | Index Score | Percentile Rank | Qualitative Description |
|-------|-------------|-----------------|-------------------------|
| Verbal Scale | 107 | 68th | Average |
| Performance Scale | 107 | 68th | Average |
| Full Scale | 108 | 70th | Average |

Exhibit 43

ReaJon Taylor

| Scale | Index Score | Percentile Rank | Qualitative Description |
|-------|-------------|-----------------|------------------------|
| Verbal Comprehension | 107 | 68th | Average |
| Perceptual Organization | 107 | 68th | Average |
| Working Memory | 106 | 66th | Average |

The Kaufman Short Neurological Assessment procedure reveals no significant findings. This is consistent with the WAIS-III.

Mr. Taylor behavior was consistent during the testing. He was nonplussed throughout. He also questioned the purpose or need for the evaluation. He thought the evaluation was irrelevant given the outcome was up to God. He attempted to redirect the questioning and the testing into discussions about God. He did report satisfaction with his abilities. He indicated that he did direct his talents in a wrong direction before and he has changed that, thanks to God's intervention.

**Competence**
The MacArthur Competence Assessment Tool measures: (a) the capacity for factual understanding for the legal system and the adjudication process; (b) the ability to distinguish more relevant from less relevant factual information and ability to reason about the two legal options: guilty or not guilty; and (c) the capacity to understand his or her own legal situation and circumstances. Additional subsets of items assessed are also included in this report.

The following are the results of Mr. Taylor's scoring on this instrument (also combined with cognitive testing):

| FACTOR | |
|--------|--|
| Understanding of the legal system | No impairment |
| Reasoning Ability | No impairment |
| Appreciation of legal situation | No impairment |
| Appraisal of available defenses | No impairment |
| Managing Behavior | No impairment |
| Quality of relating to attorney | No impairment |
| Planning strategy with Attorney | No impairment |
| Appraisal of Defense Counsel Role | No impairment |
| Appraisal of Prosecution Role | No impairment |
| Appraisal of Judge's role | No impairment |

Exhibit 43

ReaJon Taylor

| Appraisal of Jury's role | No impairment |
|---|---|
| Appraisal of Mr. Taylor's role | No impairment |
| Appraisal of witness role | No impairment |
| Appreciation of charges | No impairment |
| Appreciation of range of penalties | No impairment |
| Appraisal of possible outcomes | No impairment |
| Capacity to disclose to defense attorney | No impairment |
| Capacity to challenge | No impairment |
| Capacity to testify relevantly | No impairment |
| Self-defeating Vs self-serving motivation | No impairment |

**Emotional**
The Rorschach revealed a rigid and limited approach to novel and ambiguous situations. His responses to the stimulus were limited and immature. His responses were vague and almost pre-adolescent. He also had difficulties with stimuli that traditionally pull sexual-type responses in adults. His dependency and immaturity were notable throughout. There were no findings indicating through disorder.

The MMPI-2 evaluation reveals: lack of psychological sophistication, high self-control, rigidity, lack or insight; and the excessive use of repression and denial.

He perceives himself as being happy, healthy, and contented. He sees his life relationships as being satisfying. His MMPI-2 code-type is found in patients with personality problems. It can be surmised that he has little insight into his behavior and does not understand why others have concerns about him.

**Conclusions**
Based upon the data presented as well as Mr. Taylor's history the following conclusions represent responses to the referral questions:

**1. Did Mr. Taylor comprehend the nature of the charges against him?**
Although Mr. Taylor demonstrates remains nonplussed and disengaged from the charges, he is aware and does know about the nature of the charges against him.

**2. Was Mr. Taylor suffering from a severe mental disease or defect that rendered him unable to appreciate the nature and quality or the wrongfulness of his acts?**
Mr. Taylor does not demonstrate severe disease or defect that would render him unable to appreciate the nature and quality or wrongfulness of his acts.

**3. Is Mr. Taylor capable and able to assist in his defense?**

Exhibit 43

ReaJon Taylor

He is capable to fully assist in his defense. Mr. Taylor is intellectually and emotionally able to do this. He has not been totally forthright and emotionally involved in assisting his counsel. This has been due to the religiosity present and his belief system that God will take care of him. This position has taken on a delusional proportion, but does not constitute an inability to assist. He does present elements that can be confusing and difficult for his attorneys.

**4. Is there any relevant mitigation factors bearing on the character, history, physical history, mental history, or psychological status of Mr. Taylor?**

**The following constitute factors determined as relevant mitigation for Mr. Taylor.**

1. Mr. Taylor was a young man at the time of the offense.
2. Mr. Taylor was immature and lacked the normal emotional development at the time of the commission of the offense.
3. Mr. Taylor's psychological growth and development affected his adult psychology and personality.
4. Mr. Taylor has for a long time had serious personality disorders that are to a large extent caused by the problems that developed in his childhood with his family.
5. Mr. Taylor has expressed remorse and regret for the death of the deceased.
6. Mr. Taylor has expressed sorrow for the victim and his family.
7. Mr. Taylor has a sense of guilt and concern about his past inability to abide by the law.
8. Mr. Taylor has made attempts to determine why he committed these offenses in an effort to help himself and prevent any further acts of violence.
9. Mr. Taylor can be treated and rehabilitated.
10. Mr. Taylor is treatable in a present setting.
11. Mr. Taylor has demonstrated before and after his crime good moral character, including caring and concern for others.
12. The crime committed by the Mr. Taylor was out of character for him.
13. Since this arrest for the instant offense, the Mr. Taylor has shown no tendencies toward violence against others.
14. Mr. Taylor has no significant prior criminal activity.
15. Before the date of the offense, the Mr. Taylor had not fired a gun at anyone.
16. Mr. Taylor has a family who will provide him with love and support while in prison.
17. Mr. Taylor has demonstrated caring and concern for others before and after his crime.
18. Mr. Taylor is able to develop and maintain meaningful social relationships with others.
19. Mr. Taylor's planning, sophistication or professionalism in which the crime was carried out demonstrated a lack of premeditation, deliberation, or intent.
20. Mr. Taylor did not use force or violence in an effort to avoid arrest.
21. Mr. Taylor has adapted well to life in jail.
22. Mr. Taylor is likely to adjust and function well in a structured setting like prison.
23. Mr. Taylor has been a model prisoner who has received no disciplinary reports.
24. Mr. Taylor has helped other inmates while in jail.
25. Mr. Taylor is capable of helping other inmates contribute to society while in prison.
26. Mr. Taylor is has attempted to continue his education while in prison.
27. It is unlikely that the Mr. Taylor will be a danger to others if sentenced to life imprisonment without the possibility of parole.

Exhibit 43

ReaJon Taylor

**Diagnosis**
Axis I    Adjustment Disorder
**Axis II   Personality Disorder, NOS**
Axis III No Diagnosis
Axis IV Moderate environmental stressors- Legal Problems
Axis V    55-65

David A. Solovey, Ph.D., P.C.
Clinical Psychlogist
Health Service Provider in Psychology
Tennessee License P000577
Diplomate, American College of Forensic Examiner