# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

UNITED STATES OF AMERICA, )
)
     Plaintiff/Respondent, )
)   Case No. 1:19-cv-00147-CLC
  v. )   U.S. District Judge Curtis L. Collier
)
)
REJON TAYLOR, )
)
     Defendant/Movant. )

## REJON TAYLOR'S BRIEF REGARDING THE APPLICATION OF
## *UNITED STATES V. DAVIS* TO HIS CASE

On June 24, 2019, the Supreme Court decided *United States v. Davis*, invalidating Section 924(c)(3)(B), which provided enhanced penalties for using a firearm during "a crime of violence," as unconstitutionally vague. 139 S.Ct. 2319 (2019). *Davis* overruled the opinion of the United States Court of Appeals decision in Mr. Taylor's case. *United States v. Taylor*, 814 F.3d. 340 (2016), abrogation recognized by *United States v. Richardson*, 948 F.3d 733 (6th Cir. 2020). The parties agreed to brief the applicability of *Davis* to Mr. Taylor's case. As argued more fully below, Mr. Taylor's firearms kidnapping conviction (Count 4) is invalid as a matter of law under *Davis*. This Court must correct the conviction, vacate the resulting death sentence, and order a new sentencing hearing.

## I.    Introduction

On September 8, 2008, a jury convicted Rejon Taylor of four offenses: (1) carjacking resulting in death; (2) firearms murder during and in relation to carjacking; (3) kidnapping resulting in death; and (4) firearms murder during and in relation to kidnapping. (Doc. 670). Following a sentencing proceeding, the jury recommended a single death sentence for all four counts. (Doc. 760). On December 3, 2008, the Court ordered Mr. Taylor to be sentenced to death. (Doc. 789). On appeal, Mr. Taylor challenged his firearms convictions and resulting death sentence as unconstitutional. *Taylor*, 814 F.3d. 340. Whereas, the Government defended Mr. Taylor's firearms convictions solely under the residual clause. *Id.* The Sixth Circuit agreed with the Government's position. *Id.* The Government did not argue—and the Sixth Circuit did not hold—that Mr. Taylor's firearms convictions satisfied the elements clause. *Id.*

On May 14, 2019, Rejon Taylor filed a Motion for Collateral Relief to Vacate, Set Aside, or Correct Sentence and For a New Trial pursuant to 28 U.S.C. §2255. (Doc. 1036). Among numerous claims for relief, Mr. Taylor argues that his conviction and resulting death sentence for firearms murder during and in relation to kidnapping in Count 4 is unconstitutional because the predicate felony, which 18 U.S.C. § 924(c) defines, is unconstitutionally vague. (Doc. 1036, PageID #10680, p. 187). Mr. Taylor's Section 2255 Motion is currently pending before this Court, however, the outcome of this briefing could preempt the need for this Court to resolve the majority of the issues presented.

*Davis* overruled the Sixth Circuit opinion in Mr. Taylor's case with respect to his challenge to the constitutionality of Count 4 of the indictment. *See, e.g., In re Ervin*, 2019 U.S. App. LEXIS 30008, at *3 (6th. Cir. Oct. 4, 2019) ("*Davis* has now overruled our decision in *Taylor* that held that the residual clause of §924(c)(3)(B) was not unconstitutionally vague."). Mr. Taylor's firearms conviction cannot be sustained pursuant to the residual clause under the clear mandate of *Davis*. Because the jury sentenced Mr. Taylor to a single death sentence, the unconstitutional conviction is inextricably intertwined with the jury's sentencing verdict. Unlike cases where the Government argues that a *Davis* violation is harmless because the defendant received disaggregate sentences, only one of which was tainted by the *Davis* error, Mr. Taylor received one aggregate sentence for multiple convictions. Mr. Taylor's case is unlike any other federal capital prosecution in this respect. If this Court overturns any one of his convictions, it must also vacate Mr. Taylor's death sentence. *Johnson v. Mississippi*, 486 U.S. 578 (1988).

II.   **The Supreme Court's Holding in *United States v. Davis* Invalidated the Residual Clause of Section 924(c), the Last of Three Similarly Worded Federal Statutes the Court Found Unconstitutionally Vague**

On June 24, 2019, the Supreme Court held that the residual clause in 18 U.S.C.S. § 924(c) was unconstitutionally vague. *United States v. Davis,* 139 S.Ct. 2319 (2019). *Davis* is the third in a series of decisions where the Supreme Court invalidated federal criminal statutes due to unconstitutionally vague language. *See Johnson*, 135 S.Ct. 2551 (invalidating the ACCA's residual clause, defining a

"violent felony," as unconstitutionally vague); *Dimaya*, 138 S.Ct. 1204 (holding residual clause in 18 U.S.C. §16(b), defining "crime of violence," is unconstitutionally vague).

In *Davis*, the Government charged Respondents Maurice Davis and Andre Glover with multiple counts of robbery under the Hobbs Act, one count of conspiracy to commit robbery under the Hobbs Act, as well as charges under 18 U.S.C §924(c), which authorized heightened criminal penalties for using, carrying or possessing a firearm in connection with any federal "crime of violence or drug trafficking crime." *Davis*, 139 S.Ct. at 2324 (citing 18 U.S.C §924(c) (1)(A)). The statute defined "crime of violence" as an offense that is a felony and:

(A)     has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)     that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. §924(c)(3)(A)-(B). Sections 923(c)(3)(A) and 924(c)(3)(B) are referred to as the "elements clause"[1] and "residual clause," respectively.

Prior to *Davis*, courts interpreting the residual clause typically followed one of two different modes of analysis to determine if a crime was a "crime of violence," as enumerated by Section 924(c)(3)(B). One approach—the categorical approach—required judges to disregard a defendant's actual actions and instead consider an idealized ordinary case of the defendant's crime, then speculate if a serious potential risk of physical injury would occur in its commission. *See Davis,* 139 S.Ct.

---

[1] The elements clause is also referred to as the force clause.

at 2326. The Court rejected this approach as unconstitutionally vague. *Id.* at 2325-27. The second approach—the case specific approach—"look[s] to the defendant's actual conduct' in the predicate offense." *Id.* at 2327 (quotation marks omitted). The Court also rejected the case specific approach because it was not consistent with the statute's text, context, and history. *See id.* at 2327-33. Congress did not write a case-specific statute.

The Court's decision invalidating Section 924(c)(3)(B) as unconstitutionally vague as a matter of law relies heavily on its prior decisions striking down similar residual clauses. As in *Davis*, those cases held that the categorical approach yielded arbitrary, unpredictable outcomes and failed to give defendants fair warning on what would and would not be deemed "crime[s] of violence." *See id.,* 139 S. Ct. at 2325-27. *See also Johnson*, 135 S. Ct. 2551 (ACCA residual clause unconstitutional); *Dimaya*, 138 S. Ct. 1204 (residual clause in Immigration and Nationality Act unconstitutional). In fact, the Court observed that the statutes at issue in *Johnson*, 135 S.Ct. 2551 and *Dimaya*, 138 S.Ct. 1204, shared "more than a passing resemblance" to Section 924(c)(3)(B)'s residual clause. *Davis,* 139 S.Ct. at 2325-26.

III. ***United States v. Taylor*, 814 F.3d 340 (6th Cir. 2016) is No Longer Good Law: Mr. Taylor's 924(C) Conviction Cannot Be Sustained Under the Residual Clause**

Rejon Taylor appealed his convictions and death sentence to the Sixth Circuit, arguing, among other things, that Section 924(c)(3)(B) was unconstitutionally vague and that the court should vacate his implicated convictions. *Taylor*, 814 F.3d at 375-76 (citing *Johnson*, 135 S.Ct. 2551). In denying

the appeal, the court held that Section 924(c)(3)(B) was not unconstitutionally vague. *Id.* at 379 ("Although §16(b) [the statute at issue in *Johnson*, 135 S.Ct. 2551] appears identical to §924(c)(3)(B) in all material respects, neither decision changes our conclusion…"). That decision is no longer good law.

Even before the Supreme Court invalidated the residual clause of Section 924(c) in *Davis*, 139 S.Ct. 2319, the Sixth Circuit acknowledged that "*Taylor* stands on uncertain ground." *United States v. Richardson*, 906 F.3d 417, 425 (6th Cir. 2018). Since *Davis*, the Sixth Circuit has treated *Taylor* as effectively defunct. *See, e.g., United States v. Frazier*, 790 F. App'x 790, 791 (6th Cir. 2020) (reconsidering defendant's conviction because the court previously affirmed while "relying on then-binding precedent" in *Taylor*); *Manners v. United States*, 947 F.3d 377, 369 (6th Cir. 2020) (describing the court's previous reliance on "then-binding precedent in *Taylor*"). The Sixth Circuit has explicitly categorized *Taylor* as an overruled decision obliging reexamination of cases it had previously foreclosed. *See, e.g., In re Ervin*, 2019 U.S. App. LEXIS 30008, at *3 (6th. Cir. Oct. 4, 2019) ("*Davis* has now overruled our decision in *Taylor* that held that the residual clause of § 924(c)(3)(B) was not unconstitutionally vague."); *Manners*, 947 F.3d at 379 (citing *Taylor* as "*abrogated by United States v. Davis*"); *Harper v. United States*, 2019 WL 6321329, at *2 (6th Cir. Nov. 26, 2019) (citing *Taylor* as "*abrogated by United States v. Davis*"). *See also United States v. Richardson*, 948 F.3d 733, 741 (6th Cir. 2020) (reexamining petitioner's argument, which "*Taylor* [had] foreclosed," in light of *Davis*).

Likewise, district courts within the Sixth Circuit echo the understanding that *Taylor* is no longer good law following *Davis. See, e.g., Baugh v. United States*, 2020 WL 409728, at *3 (M.D. Tenn. Jan. 24, 2020) (describing the movant's argument as formerly, but no longer, foreclosed by "the Sixth Circuit's (now invalidated) opinion in *Taylor*"); *McQuiddy v. United States*, 2019 WL 4917073, at *3 (M.D. Tenn. Oct. 3, 2019) ("*Davis* effectively invalidated *Taylor*"); *Coleman v. United States*, 2019 WL 2763906, at *3 (M.D. Tenn. July 2, 2019) (observing that *Davis* "effectively invalidates *Taylor*"). The consensus in the circuit is that if a court relied in whole or in part on *Taylor* for its § 924(c) analysis, that case merits reexamination following *Davis.*

Given that the Supreme Court's decision in *Davis* effectively overruled Mr. Taylor's case, and given that *Davis* applies retroactively, this Court has the obligation to correct Mr. Taylor's unconstitutional conviction and sentence. *See e.g., Augustin v. United States*, 2020 WL 207942, at *3 (E.D. Tenn. Jan. 14, 2020) (vacating a §924(c)(3)(B) conviction, for which kidnapping was the predicate offense, in light of *Davis* and reducing the petitioner's sentence accordingly). [2]

### IV. Mr. Taylor's Conviction on Count 4 is Invalid and Must be Vacated

#### A. The conviction on Count 4 must be vacated because kidnapping resulting in death is not a crime of violence.

---

[2] *Davis*, as a substantive rule, applies retroactively to criminal convictions under Section 924(c). *E.g., In Re Hammoud*, 931 F.3d 1032, 1039 (11th Cir. 2019); *United States v. Reece*, 938 F.3d 630 (5th Cir. 2019); *In re Navarro*, 931 F.3d 1298 (11th Cir. 2019); *In re Franklin,* No. 19-6093, 2020 WL 1023313, at *1 (6th Cir. Mar. 3, 2020). Accordingly, courts have a duty to correct convictions where defendants were sentenced under the now invalid residual clause.

To qualify as a crime of violence under Section 924(c)'s force clause, an offense must satisfy two requirements. It must have as an element the use, attempted use, or threatened use of force. And the use, attempt or threat of force must be intentional or knowing; reckless or negligent use of force is not enough. The offense of kidnapping resulting in death, like the offense of kidnapping *simpliciter*, fails to satisfy either requirement.

    1. **Kidnapping resulting in death does not qualify as a crime of violence because it does not categorically require the use, attempted use or threatened use of force. [3]**

A predicate "crime of violence" supporting a Section 924(c) conviction must have "as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3)(A). To determine

---

[3] Post-*Davis*, the lower federal courts have consistently interpreted the federal crime of carjacking under Section 924(c) to fall under the elements clause within subsection (c)(3)(A). *See e.g., Steiner v. United States*, 940 F.3d 1282, 1285 (11th Cir. 2019) ("aiding and abetting a carjacking qualifies as a crime of violence under the elements clause of §924(c)(3)(A)"); *United States v. Gathercole*, 2020 WL 1027945, at *1 (8th Cir. Mar. 3, 2020) (*Davis* does not apply where predicate offense qualifies under use-of-force clause, such as in bank robbery and carjacking) (internal citations omitted). Section 2119(3) defines carjacking as taking a motor vehicle "from the person or presence of another by force and violence or by intimidation." 18 U.S.C §2119(3). The Sixth Circuit has considered this statute post-*Davis* and held that the commission of carjacking, including by intimidation, necessarily involves the use or threatened use of violent physical force. *See Overton v. United States*, 2019 WL 5606089 (6th Cir. Sept. 26, 2019); *Harper v. United States*, 2019 WL 6321329, at *3 (6th Cir. Nov. 26, 2019). Accordingly, *Davis* may not impact Mr. Taylor's conviction of a firearms murder during and in relation to carjacking. Mr. Taylor does not waive this argument, but acknowledges this Court is bound by *Overton*. Whether or not Mr. Taylor's carjacking related firearms offense under Count 2 must be vacated by *Davis* has no impact on the necessity to vacate Mr. Taylor's death sentence.

whether an offense is a crime of violence under Section 924(c)(3)(A), courts must use the "categorical approach." *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (*en banc*). The categorical approach requires courts to look only to the statutory elements of an offense, not at the facts of a particular case. *Id.* "When a statute defines an offense in a way that allows for both violent and nonviolent means of commission, that offense is not 'categorically' a crime of violence under the force clause." *Id.*

Binding Sixth Circuit authority holds that kidnapping does not constitute a crime of violence under Section 924(c). *See e.g., Knight v. United States*, 936 F.3d 495, 498 (6th Cir. 2019) (vacating kidnapping conviction under §924(c)(3)(B) post-*Davis* where government conceded that kidnapping was not a "crime of violence"). Other Circuits agree. The Fourth Circuit held in *United States v. Walker* that kidnapping under 18 U.S.C. § 1201(a) is not a crime of violence under the force clause because it "may be committed without violence," and thus "clearly does not categorically qualify as a crime of violence under the force clause[.]" 934 F.3d 375, 379 (4th Cir. 2019).

Pursuant to Section 1201(a)(1), kidnapping is defined as whoever "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person." Appellate courts post-*Davis* held that physical force is not necessarily required to commit kidnapping pursuant to the statutory definition, due to the inclusion of the words "inveigling or decoying." *See e.g., Brazier*, 933 F.3d 796, 801 (7th Cir. 2019). In *United States v. Mathis*, the

Fourth Circuit held that a review of Section 1201's "language and the decisions by Virginia's appellate courts interpreting that language indicates that the offense may be committed in a non-violent manner through deceptive means." 932 F.3d at 267; *see also United States v. Thompson*, 2019 WL 5704693 (4th Cir. Nov. 5, 2019). The Seventh Circuit in *Brazier* vacated both defendants' Section 924(c) convictions where the predicate offense was kidnapping, holding "kidnapping may be accomplished without force, by 'inveigling' or 'decoying' a person without a threat of force, and by holding the person simply by locking him or her in a room, again without threat of violence." 933 F.3d at 801. Because the relevant inquiry is a categorical approach, the fact kidnapping *may* be accomplished without force invalidated each defendants' conviction. Accordingly, when this Court evaluates Section 1201(a)(1) in the instant case, Mr. Taylor's actual conduct is entirely irrelevant to answer this question of legal construction.

The Government has conceded that loss of the residual clause would inevitably invalidate the predicate offense of kidnapping. At the oral argument in Davis, counsel for the Government stressed that without the residual clause, "there are a lot of offenses that we're going to lose," such as "kidnapping." Transcript of Oral Argument at 16-19, *Davis*, 139 S.Ct. 2319 (2019 (No. 66) Oral. Post-*Davis*, multiple lower federal courts agreed with the Government's position, finding that kidnapping can occur without the use of force. *See e.g.*, *United States v. Mathis*, 932 F.3d 267 (4th Cir. 2019); *United States v. Brazier*, F.3d 801 (7th Cir. 2019).

Since *Davis*, the Government has continually conceded that kidnapping does not fall within the force clause, subsection (c)(3)(A), in matters before this district, and other appellate and district courts. *See e.g., Augustin v. United States*, 2020 WL 207942 (E.D. Tenn. Jan. 14, 2020); *Bufkin v. United States*, 2020 WL 405389 (7th Cir. Jan. 24, 2020); *United States v. Sanford*, 779 F. App'x 568 (10th Cir. 2019); *Walker,* 934 F.3d 375; *Morgan v. United States*, 775 Fed.Appx. 456 (10th Cir. 2019); *United States v. Khamnivong,* 779 F. App'x 482 (9th Cir. 2019); *United States v. Campbell*, 783 Fed.Appx. 311 (4th Cir. 2019).[4] For example, in *United States v. Nobles*, the Court noted the Government's concession as follows: "The United States responds that guidance from the United States Department of Justice binds it to agree that kidnapping is not categorically a 'crime of violence' under the elements clause. Thus, the United States does not contest Nobles' motion." 2020 WL 831141, at *3 (S.D. Ala. Feb. 19, 2020). Similarly in *Robinson v. United States*, the Government initially argued that kidnapping was categorically a crime of violence, but then "explained that the United States Department of Justice had issued specific guidance regarding the federal kidnapping statute after *Davis*, which necessitated withdrawal of this argument." 2019 WL 4855161 (S.D. Ala. Sept. 30, 2019). If the Government takes the contrary position in relation to Mr. Taylor, it

---

[4] *See also Robinson v. United States*, 2019 WL 4855161 (S.D. Ala. Sept. 30, 2019); *Hines v. United States*, 2019 WL 4780789 (M.D. Ala. Sept. 30, 2019); *Simpson v. United States*, 2019 WL 4859068 (W.D.N.C. Oct. 1, 2019); *United States v. Nobles*, 2020 WL 831141, at *3 (S.D. Ala. Feb. 19, 2020); *United States v. Davisson*, 2019 WL 7580375, at *1 (D. Nev. Dec. 30, 2019); *United States v. Dugas*, 2020 WL 535696, at *1 (N.D. Fla. Jan. 31, 2020).

would depart from a consistent series of concessions across the nation in cases relating to kidnapping as a predicate offense under Section 924(c).

The Courts' and the Government's logic holds true for kidnapping resulting in death. Like kidnapping, kidnapping resulting in death does not require— *i.e.*, have "as an element"—the use, attempted use, or threatened use of physical force. The resulting in death element of § 1201 does not require that death be the result of physical force. The sentencing enhancement provision does not convert kidnapping into a crime of violence.

As the Fourth Circuit observed in *United States v. Torres-Miguel*, "a crime may *result* in death or serious injury without involving the *use* of physical force[.]" 701 F.3d 165, 168 (4th Cir. 2012) (emphasis in original). While the Fourth Circuit has acknowledged that a different aspect of *Miguel-Torres* was implicitly abrogated by the Supreme Court's subsequent decision in *United States v. Castleman*, 572 U.S. 157 (2014), it has reaffirmed this particular holding from *Miguel-Torres* in at least five subsequent decisions. *See United States v. Allred*, 942 F.3d 641, 653 (4th Cir. 2019) (explaining that, although *Castleman* abrogated one aspect of *Torres- Miguel*, it "did not, however, 'abrogate the causation aspect of *Torres-Miguel* that a crime may *result* in death or serious injury without involving the *use* of physical force.'") (quoting *United States v. Covington*, 880 F.3d 129, 134 n.4 (4th Cir. 2018)); *United States v. Battle*, 927 F.3d 160, 166 (4th Cir. 2019) ("It is true that a crime 'may result in' bodily injury without involving the use of force[.]"); *United States v. Middleton*, 883 F.3d 485, 491 (4th Cir. 2018) ("a crime

12

may *result* in death or serious injury without involving the *use* of physical force")
(quoting *Torres-Miguel*, 701 F.3d at 168); *Covington*, 880 F.3d at 134 n.4 (same);
*United States v. McNeal*, 818 F.3d 141, 156 n.10 (4th Cir. 2016) (same).

An examination of the offense of kidnapping "resulting in death" shows
why the Fourth Circuit's repeated pronouncements are correct. There are any
number of realistic scenarios in which a defendant could be convicted of
kidnapping resulting in death without using, attempting to use, or threatening to
use force:

- If a father whose parental rights have been terminated abducts his
  child without force from the custodial parent in the District of
  Columbia and then, after crossing over into Maryland, drives
  recklessly and gets into a car accident that results in the child's
  death, he is guilty of kidnapping resulting in death without using,
  attempting to use, or threatening to use force.

- If a passenger gets into a taxi cab in Maryland and dies when she
  jumps from the cab in Virginia after realizing the driver is abducting
  her and taking her far away from her requested destination, the
  driver is similarly guilty of kidnapping resulting in death, even
  though he neither used, attempted to use nor threatened to use force.

- If a man lures a child into a car from a school playground in Virginia,
  takes the child to a remote location in Maryland and keeps her there
  for several days before she suddenly dies because, unknown to the

man, she is diabetic and has not received her insulin, the man is guilty of kidnapping resulting in death—again, despite not having used, attempted to use, or threatened to use force.

These are just a few of many realistic scenarios demonstrating that, under the requisite categorical approach, kidnapping resulting in death does not qualify as a crime of violence.

Because kidnapping resulting in death does not have as an element the use, attempted use or threatened use of force, it does not qualify as a crime of violence under the force clause. For that reason alone, Count 4 should be vacated and Mr. Taylor's sentence set aside.

> **2. Kidnapping resulting in death does not qualify as a crime of violence because it does not require proof of the heightened *mens re*a necessary to qualify as a crime of violence.**

For an offense to qualify as a crime of violence under Section 924(c)'s force clause, it must also require proof that the defendant *intentionally or knowingly* used, attempted to use, or threatened to use physical force. *See United States v. McNeal*, 818 F.3d 141, 154-55 (4th Cir. 2016) ("[T]o qualify as a crime of violence, an offense must require either specific intent or knowledge with respect to the use, threatened use, or attempted use of physical force."). By contrast, crimes that can be committed recklessly or negligently cannot qualify as crimes of violence. *See Middleton*, 883 F.3d at 498; *United States v. Hodge*, 902 F.3d 420, 427 (4th Cir. 2018) (quoting *Middleton* for the proposition that the force clause of the Armed Career Criminal Act "requires a higher degree of *mens rea* than recklessness.");

*United States v. Clarke*, 171 F. Supp. 3d 449, 456 (D. Md. 2016) ("Defendant is undoubtedly correct that § 924(c) imposes a *mens rea* requirement of at least knowing as opposed to negligent or reckless misconduct.") (citing *Garcia v. Gonzales*, 455 F.3d 465, 468 (4th Cir. 2006)).

As previously discussed, it is settled that kidnapping *simpliciter* does not qualify as a crime of violence under the force clause. Tagging on the words "resulting in death" does not change the analysis. Kidnapping resulting in death cannot be considered a crime of violence because it does not require proof of the heightened *mens rea* necessary to qualify as a crime of violence. Proof of "death results" only requires causation, not state of mind.

> This conclusion is supported by a long line of cases interpreting the phrase "if death results" under analogous statutes. *See, e.g., United States v. Schwanke,* 598 F.2d 575, 579 (10th Cir.1979) ("if death results" under 18 U.S.C. § 844(i) analogized to felony murder); *United States v. Piche,* 981 F.2d 706, 711 (4th Cir.1992) (" 'if death results' requires only that death foreseeably and naturally, rather than directly and intentionally, result [sic] from the rights-violating conduct"); *United States v. Hayes,* 589 F.2d 811, 821 (5th Cir.1979) ("No matter how you slice it, 'if death results' does not mean 'if death was intended.' "); *United States v. Guillette,* 547 F.2d 743, 749 (2d Cir.1976) ("We find the principle of proximate cause embodied in [18 U.S.C.] § 241 through the phrase 'if death results.' ").

*United States v. Woodlee*, 136 F.3d 1399, 1405 (10th Cir. 1998).

Proving that a death results from a kidnapping requires proof that the victim died as a result of the kidnapping, not that the defendant intentionally or knowingly killed the victim. *See United States v. Barraza*, 576 F.3d 798, 807 (8th Cir. 2009) ("The statute does not require that deaths result from voluntary and intentional conduct, only that 'the death of any person results' in the course of the

15

kidnapping.") (quoting 18 U.S.C. § 1201(a)); *United States v. Mayhew*, 380 F. Supp. 2d 936, 959 (S.D. Ohio 2005) ("The Court finds that 18 U.S.C. § 1201, which states 'if the death of any person results, shall be punished by death or life imprisonment' does not require that the government prove *mens rea*. The language simply contains no indication that such proof is necessary."); *Fulks v. United States*, 875 F. Supp. 2d 535, 588 (D. S.C. 2010) ("Count Two, charging [k]idnapping resulting in death, has no *mens rea* requirement[.]"). Thus, a jury could return a guilty verdict on a kidnapping resulted in death charge even if the defendant caused the victim's death recklessly or negligently. *Barraza*, 576 F.3d at 807; *Mayhew*, 380 F. Supp. 2d at 959.

It is important to remember that the categorical approach prohibits consideration of the facts of a particular case. As the Supreme Court has explained, "[u]nder the categorical approach, a court assesses whether a crime qualifies as a violent felony, 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.'" *United States v. Johnson*, 135 S. Ct. 2551, 2557 (2015) (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)). Here, the law "defines" the crime of kidnapping resulting in death through elements that do not require proof of the heightened *mens rea* necessary to qualify as a crime of violence.

Because the crime of kidnapping resulting in death does not require proof that the defendant acted with "specific intent or knowledge with respect to the use, threatened use, or attempted use of physical force," *McNeal*, 818 F.3d at 154-55, it

16

does not qualify as a crime of violence under Section 924(c)'s force clause. For this reason, too, Count 4 must be vacated and the capital sentence set aside.

## V. Mr. Taylor's Death Sentence Must Also Be Vacated.

Because *Davis* requires this Court to set aside Mr. Taylor's conviction under Count 4, this Court must also vacate his death sentence. Mr. Taylor's conviction on four counts resulted in an aggregate death sentence. It is now impossible to determine the harmfulness of the invalidity of any one of those convictions. Accordingly, should any one of Mr. Taylor's convictions fall, this Court must vacate the death sentence. *Johnson*, 486 U.S. 578.

When one of the underlying convictions is later invalidated, a single "aggregate sentence" for multiple convictions likewise becomes a constitutionally invalid. As Mr. Taylor received only a single sentence for multiple capital convictions, his sentence must be vacated if any one of the convictions is later overturned or invalidated. *See United States v. Causey*, 185 F.3d 407, 423 (5th Cir. 1999).

Rejon Taylor's superseding indictment ("the indictment") charged him with four counts:

(1)   18 U.S.C. § 2119(3) (Carjacking Resulting in Death);
(2)   18 U.S.C. § 924(j)(1) (Firearms Murder During and in Relation to Carjacking);
(3)   18 U.S.C. § 1201(a)(1) (Kidnapping Resulting in Death);
(4)   18 U.S.C. § 924(j)(1) (Firearms Murder During and in Relation to Kidnapping)

(Doc. 447). All four counts were death-eligible offenses. Normally, a defendant convicted of multiple death-eligible offenses will receive a sentence for each

conviction. *See, e.g., United States v. Whitten*, 610 F.3d 168, 173 (2d Cir. 2010) (noting that the defendant received five sentences of death following conviction of five death-eligible federal offenses); *United States v. Higgs*, 353 F.3d 281, 289 (4th Cir. 2003) ("Higgs received nine death sentences under the Federal Death Penalty Act[.]"); *see also LaMar v. Houk*, 798 F.3d 405, 410 (6th Cir. 2015) ("[LaMar, a state prisoner] received death sentences for four of the killings and a life sentence for the fifth.").

Courts have only infrequently addressed the issues posed by this type of aggregate sentence. In the sole published opinion from a federal court addressing this issue, the Fifth Circuit vacated a defendant's death sentence when the defendant received a single death sentence for three convictions and one of those convictions was subsequently overturned. *Causey*, 185 F.3d at 423. The Fifth Circuit noted that "[t]he jury did not make separate recommendations concerning the appropriate penalties for each count of conviction." *Id.* This made it "impossible to say that the jury's penalty phase recommendations of the death penalty were not influenced by the fact that [defendants] had received three death eligible convictions, rather than two[.]" *Id.* In light of *Davis*, the law requires this Court to invalidate Mr. Taylor's conviction for firearms murder in relation to kidnapping, which puts Mr. Taylor in an identical position to the defendants in *Causey*.

From the record, there is no way for this Court to ascertain whether the jury imposed a sentence of death as punishment for the conduct charged in Count 1, Count 2, Count 3, or Count 4 of the indictment, or some combination thereof.

Furthermore, this Court cannot say with certainty that the jury would have imposed a sentence of death for Counts 1, 2, or 3 had the jury considered each conviction separately and had Mr. Taylor not been convicted of murder by use of a firearm during and in relation to kidnapping, 18 U.S.C. § 924(c)(3), § 924(j). (Doc. 760).

The Supreme Court has recognizes that the qualitative difference of a death sentence warrants "extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake." *Eddings v. Oklahoma*, 455 U.S. 104, 118 (1982) (O'Connor, J., concurring). Because of the uncertainty inherent in an aggregate punishment supported by an invalid conviction, Mr. Taylor's sentence of death does not comply with the Eighth Amendment's "indispensable" need for reliability. *Caldwell v. Mississippi*, 472 U.S. 320 (1985).

In Mr. Taylor's case, this risk of an unreliable death sentence is anything but abstract. The Government made Mr. Taylor's conviction for firearms murder in relation to kidnapping central to their argument for why the jury should sentence Mr. Taylor to death. Mr. Taylor's conviction for firearms murder during and in relation to kidnapping constituted proof of one of the statutory—a statutory aggravator that the Government was required to prove beyond a reasonable doubt before the jury could impose a sentence of death.

One of the last things the jury heard before beginning their deliberations was that the guilty verdict they returned on Count 4 was proof that the Government had met its burden of proving a statutory aggravating factor. (Doc. 902 PageID #: 7694, 7746). Courts have long recognized that "[c]losing arguments have special importance in the adversarial process" because they are "an opportunity to persuade the jury." *State v. Banks*, 271 S.W.3d 90, 130 (Tenn. 2008); *see also Herring v. New York*, 422 U.S. 853, 862 (1975) (noting that "closing argument is the last clear chance to persuade the trier of fact[.]").

In *United States v. Tucker,* the Supreme Court held that resentencing was necessary when a trial judge took a defendant's previous convictions into account when determining a sentence, and those convictions were later determined to be unconstitutional under the rule established in *Gideon v. Wainwright*, 372 U.S. 335 (1963). 404 U.S. 443, 447-48 (1972). The Sixth Circuit invoked *Tucker* when it vacated the sentence of a defendant who pleaded guilty and was sentenced as a persistent offender due to prior convictions that were later invalidated and vacated. *Bryan v. Brandon*, 228 F. App'x 578, 584 (6th Cir. 2007). The Sixth Circuit stated that *Tucker* "stand[s] for the proposition that a sentence imposed on the basis of an erroneous prior conviction is constitutionally invalid." *Id.* The Sixth Circuit has further recognized that "[f]undamental principles of due process prohibit a sentencing judge from considering prior unconstitutionally obtained convictions in sentencing." *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990).

Courts in multiple circuits have interpreted *Tucker* to mean "where the record is silent as to whether the District Court considered the subsequently invalidated convictions on other counts in sentencing a defendant on valid counts, the defendant must be resentenced." *Jerkins v. United States*, 530 F.2d 1203, 1204 (5th Cir. 1976); *see also Martinez v. United States*, 464 F.2d 1289, 1291 (10th Cir. 1972) (observing that the Court "cannot presume that the trial court ignored the [invalidated] conviction although the record is silent on this."). The Fifth Circuit has concluded that unless a reviewing court can affirmatively "ascertain[] from the record that a trial court's sentence on a valid conviction was not affected by a subsequently invalidated conviction on another count of the indictment, a defendant must be resentenced on the valid conviction." *Bourgeois v. Whitley*, 784 F.2d 718, 721 (5th Cir. 1986).

In *Johnson*, 486 U.S. 578, the Court set aside a death sentence that rested, in part, on the use of an invalid prior conviction as an aggravating circumstance. The Court found the error prejudicial stating, "[e]ven without that express [prosecutorial] argument, there would be a possibility that the jury's belief that petitioner had been convicted of a prior felony would be 'decisive' in the 'choice between a life sentence and a death sentence.'" *Johnson*, 486 U.S. at 578, 586 quoting *Gardner v. Florida*, 430 U.S. 349, 359 (1977).

In Mr. Taylor's case, instead of an invalid prior conviction necessitating a new sentence, one of his convictions under review is now invalid. The principles underlying *Tucker* and *Johnson* are even more important in this case. Because the

jury considered an unconstitutionally obtained conviction when it sentenced Mr.

Taylor to death, fundamental principles of due process require this Court to vacate

Mr. Taylor's unconstitutional sentence.

## VI. Mr. Taylor's case is unique.

Currently there are 62 individuals who have been sentenced to death under

the Federal Death Penalty Act.[5] Twenty-six of these cases involve convictions under

---

[5] *See United States v. Tipton*, No. 3-92-CR-68 (E.D. Va. 1992); *aff'd,* 90 F.3d 861 (4th Cir. 1996) (Richard Tipton, James Roane, and Corey Johnson); *United States v. Holloway*, No. 4:94-CR-121-Y-1 (N.D. Tex. 1994); (Bruce Webster and Orlando C. Hall); *United States v. Battle*, No. 1:95 CR 528 (N.D Ga. 1997);*United States v. Paul*, No. 6:96CR60022 (W.D. Ark 1997); *United States v. Holder*, No. 4:97-CR-0141-ERW (TCM)) (E.D. Mo. 1997) (Billie Jerome Allen and Norris G. Holder); *United States v. Barnette*, No. 3:97CR23-P (W.D. N.C. 1998); *United States v. Purkey*, No. 01-CR-308 (W.D. Mo. 1998); *United States v. Vialva*, No. 99-CR-00070 (W.D. Tex. 2000) (Christopher Andre Vialva and Brandon Bernard); *United States v. Higgs*, No. PJM-98- 0502 (D. Md. 2000); *United States v. Jackson*, No. 00-CR-74 (W.D. N.C. 2001); *United States v. LeCroy, Jr.,* No. No. 02-CR-38 (N.D. Ga. 2001); *United States v. Gabrion*, No. 1:99-CR-76 (W.D. Mich. 2002); *United States v. Kehoe*, No. LR-CR-97-243 (E.D. Ark. 1997); *United States v. Nelson*, No. 99-CR-303-1 (W.D. Mo. 2002); *United States v. Henderson*, No. 00-CR-00260 (N.D. Tex. 2002) (Julius Omar Robinson); *United States v. Brown,* CR No. 403-01 (S.D. Ga. 2003); *United States v. Mitchel*, No. 01-CR-1062 (D. Ariz. 2003); *United States v. Agofsky*, No. 1:03-CR 173 (E.D. Tex. 2004); *United States v. Fulks,* No. 02-CR-00992 (D.S.C. 2004) (Chadrick E. Fulks and Branden L. Basham); *United States v. Bour*, No. CR No. 02-216 (S.D. Tex. 2004); *United States v. Corley*, No. 02-CR-116 (N.D. Ind. 2004); *United States v. Honken*, No. 3:01-CR-03047-MWB (N.D. Iowa 2004); *United States v. Barrett*, No. 04-100-CR-S (E.D. Okla. 2005); *United States v. Davis*, No. 94-CR-381 (E.D. La 2005); *United States v. Fields,* No. 6:03-CR-00073 (E.D. Okla. 2005); *United States v. Fields*, No. 01-CR-164 (W.D. Tex 2005); *United States v. Lighty*, No. 8:03-CR-00457-PJM (D. Md. 2005); *United States v. Mikos*, No. 02-CR 137 (N.D. Ill. 2005); *United States v. Bolden*, No. 4:02-CR 0557 CEF (AGF) (E.D. Mo, 2006); *United States v. Lawrence*, No. 2:05-CR-00011-GLF-1 (S.D. Ohio 2006); *United States v. Rodriguez*, No. 04-CR-55 (D. N.D. 2006); *United States v. Caro*, No. 06 CR 00001 (W.D. Va, 2007); *United States v. Hager*, No. 1:05-CR-00264-TSE (E.D. Va 2007); *United States v. Mikhel*, No. 02-CR-00220 (C.D. Cal. 2007) (Iouri Mikhel and Jurijus Kadamovas); *United States v. Montgomery*, No. 5:05-CR-06002-GAF (W.D. Mo. 2007); *United States v. Duncan*, No. 07-23-N-EJL (D. Id. 2008); *United States v. Taylor,* No. 1:04-CR-00160-1 (E.D. Tenn. 2008); *United States v. Ebron*, No. 1:07-CR-142 (E.D. Tex 2009); *United States v. Runyon*, No. 4:08-CR-16 (E.D. Va 2009); *United States v. Varela*, No. 06-CR-80171 (S.D. Fla. 2009) (Ricardo Sanchez, Jr. and Daniel Troya); *United States v. Snarr*, No. 09-CR-00015 (E.D. Tex. 2009) (Mark Isaac Snarr and Edgar Baltaza Garcia); *United States v. Umana*, No. 3:08-CR-134-RJC (W.D. N.C. 2010); *United States v. Lewis*, No. 07-CR-00550 (E.D. Pa. 2013) (Steven Northington and Kaboni Savage); *United States v. Coonce*, No. 10-CR-03029 (W.D. Mo. 2014) (Wesley Paul Coonce, Jr. and Charles Michael Hall); *United States v. Sanders*, No. 1:10-CR-00351 (W.D. La. 2014); *United States v. Torrez*, No. 1:11-CR-115 (E.D. Va. 2014); *United States v. Tsarnaev*, No. 1:13-cr-10200-GAO-1 (D. Mass.); *United States v. Roof*, No. 2:15-cr-00472-RMG-1 (D.S.C.); *United States v. Sampson,* No 01-CR-10384 (D. Mass. 2017); *United States v. Fackrell*, No. 1:16-cr-00026-MAC-ZJH-2 (E.D. Tex.); *United States v. Council*, No. 4:17-mj-00203 (D. S.C. 2019).

Section 924(c), implicating the Supreme Court's holding in *Davis*.[6] However, Mr. Taylor's case in the only one of the 26 involving one aggregate sentence of death as a result of multiple death-eligible convictions. Conversely, the defendants in the 25 other cases all received multiple sentences for their various convictions.

For example, the defendants in *United States v. Runyon*, 707 F.3d 475 (4th Cir. 2013), and *United States v. Barnette*, 2010 WL 2302316 (W.D. N.C. June 7, 2010), were both convicted of carjacking, among other death eligible crimes, pursuant to Section 924(c). However, for both cases, a jury recommended, and the district court imposed, a death sentence on each of the capital counts. Both Mr. Runyon and Mr. Barnette received disaggregated sentences based on their multiple death-eligible convictions.[7] Two additional federal capital cases involved convictions for both kidnapping and carjacking, pursuant to Section 924(c), among other death eligible offenses. *See United States v. Basham*, 561 F.3d 302 (4th Cir. 2009); *United States v. Sanders*, 2012 WL 1222696 (W.D. La. Mar. 7, 2012). Unlike in Mr. Taylor's

---

[6]*See Tipton*, No. 3-92-CR-68 (E.D. Va. 1992); *aff'd,* 90 F.3d 861 (4th Cir. 1996) (Richard Tipton, James Roane, and Corey Johnson); *Paul*, No. 6:96CR60022 (W.D. Ark 1997); *Holder*, No. 4:97-CR-0141-ERW (TCM)) (E.D. Mo. 1997) (Billie Jerome Allen and Norris G. Holder); *Barnette*, No. 3:97CR23-P (W.D. N.C. 1998); *Higgs*, No. PJM-98- 0502 (D. Md. 2000); *Jackson*, No. 00-CR-74 (W.D. N.C. 2001); *Mitchel*, No. 01-CR-1062 (D. Ariz. 2003); *Fulks,* No. 02-CR-00992 (D.S.C. 2004) (Chadrick E. Fulks and Branden L. Basham); *Corley*, No. 02-CR-116 (N.D. Ind. 2004); *Barrett*, No. 04-100-CR-S (E.D. Okla. 2005); *Fields,* No. 6:03-CR-00073 (E.D. Okla. 2005); *Fields*, No. 01-CR-164 (W.D. Tex 2005); *Lighty*, No. 8:03-CR-00457-PJM (D. Md. 2005); *Bolden*, No. 4:02-CR 0557 CEF (AGF) (E.D. Mo, 2006); *Lawrence*, No. 2:05-CR-00011-GLF-1 (S.D. Ohio 2006); *Duncan*, No. 07-23-N-EJL (D. Id. 2008); *Taylor,* No. 1:04-CR-00160-1 (E.D. Tenn. 2008); *Runyon*, No. 4:08-CR-16 (E.D. Va 2009); *Varela*, No. 06-CR-80171 (S.D. Fla. 2009) (Ricardo Sanchez, Jr.); *Umana*, No. 3:08-CR-134-RJC (W.D. N.C. 2010); *Sanders*, No. 1:10-CR-00351 (W.D. La. 2014); *Tsarnaev*, No. 1:13-cr-10200-GAO-1 (D. Mass.);. *Roof,* No. 2:15-cr-00472-RMG-1 (D.S.C.).

[7] Runyon was sentenced to death for conspiracy to commit murder for hire and murder in relation to a crime of violence, and to life imprisonment for carjacking resulting in death. For his multiple convictions, Barnette received two 240-month sentences, two life sentences, a 120-month sentence, a 360-month sentence, and a 180-month sentence, all to run concurrently.

case, Basham and Sanders both received disaggregated sentences for their respective convictions.[8]

A ruling in favor of Mr. Taylor represents the most narrow possible decision.

## VII. Conclusion

For the foregoing reasons, this Court should set aside Rejon Taylor's kidnapping conviction, and vacate his death sentence in light of *United States v. Davis*.

Dated: March 30, 2020

Respectfully Submitted,

/s/ Kelley J. Henry
Kelley J. Henry, BPR # 021113
Supervisory Assistant Federal Public
Defender, Capital Habeas Unit

/s/ Amy D. Harwell
Amy D. Harwell, BPR # 018691
Assistant Chief, Capital Habeas Unit
Office of the Federal Public Defender for
the Middle District of Tennessee
810 Broadway, Suite 200
Nashville, TN 37203
Tel: (615) 736-5047
amy_harwell@fd.org
kelley_henry@fd.org

/s/ Alexis J. Hoag
Alexis J. Hoag
Practitioner in Residence
Eric H. Holder Initiative for Civil &
Political Rights
Columbia Law School

---

[8] Basham received the death penalty after being convicted of carjacking resulting in death and kidnapping resulting in death; he received 744 months for six additional convictions. Sanders received two concurrent death sentences after being convicted of interstate kidnapping resulting in death and carrying a firearm during a crime of violence that resulted in death.

435 W 116th Street, Rm 605
New York, New York 10027
Tel: (212) 854-2619
alexis.hoag@law.columbia.edu

/s/ Patricia Okonta
Patricia Okonta
Skadden Fellow
NAACP Legal Defense and
Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, New York 10006
Tel: (212) 965-2200
Fax: (212) 226-7592
pokonta@naacpldf.org

*Counsel for Movant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 25th day of March 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel record.

/s/ Kelley J. Henry
Kelley J. Henry, BPR # 021113
Supervisory Assistant Federal Public
Defender, Capital Habeas Unit
Office of the Federal Public Defender for the
Middle District of Tennessee
810 Broadway, Suite 200
Nashville, TN 37203
Tel: (615) 736-5047
kelley_henry@fd.org
