REJON TAYLOR,
      Petitioner,

v.

UNITED STATES OF AMERICA,
      Respondent.

No. 1:19-cv-147
Judge Collier

## BRIEF REGARDING THE APPLICATION
## OF *UNITED STATES V. DAVIS*

Consistent with the Court's orders (Docs. 40, 45, Orders), the United States of America

submits this brief regarding the applicability of *United States v. Davis*, 139 S. Ct. 2319 (2019),

to Taylor's case.  Kidnaping resulting in death constitutes a crime of violence under 18 U.S.C.

§ 924(c)(3)(A), such that *Davis*'s invalidation of 18 U.S.C. § 924(c)(3)(B) as unconstitutionally

vague does not undermine Taylor's convictions or sentence.

### FACTUAL AND PROCEDURAL HISTORY

On August 6, 2003, Taylor, aided by Sir Jack Matthews and Joey Marshall, carjacked and

kidnaped Guy Luck from Georgia, transported him to a rural area in Tennessee, fatally shot him,

and left him to die.  *United States v. Taylor*, 814 F.3d 340, 345 (6th Cir. 2016).  In 2008, a jury

convicted Taylor of carjacking resulting in death, in violation of 18 U.S.C. § 2119(3) (Count 1);

murder by use of a firearm during and in relation to a crime of violence, *i.e.*, the carjacking in

Count One, in violation of 18 U.S.C. § 924(j) (Count 2); kidnaping resulting in death, in

violation of 18 U.S.C. § 1201(a)(1) (Count 3); and murder by use of a firearm during and

in relation to a crime of violence, *i.e.*, the kidnaping in Count Three, in violation of 18 U.S.C.

§ 924(j) (Count 4).  (Case No. 1:04-cr-160, Doc. 670, Verdict; Doc. 790, Judgment.)

The district court's jury instructions presumed that carjacking and kidnaping were crimes of violence within the meaning of § 924(c).[1] (*E.g.*, Case No. 1:04-cr-160, Doc. 868, Trial Transcript at 1735-37, 1744 (stating, in relevant part, that "[a] person is guilty of this offense if he, in the course of committing a crime of violence, murders a person through the use of a firearm. For you to find defendant guilty of the offense charged in Count 4, the government must prove . . . beyond a reasonable doubt . . . [that] defendant committed the kidnaping charged in Count 3 . . ."). Taylor did not argue in the district court that kidnaping resulting in death is not a crime of violence under § 924(c), likely because "each crime qualified as a crime of violence as a matter of law under § 924(c)(3)(B)." *Taylor*, 814 F.3d at 376. Congress had defined "crime of violence" in two alternative provisions. The first defines "crime of violence" as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). The second encompasses any felony "that[,] by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B).

While Taylor's direct appeal was pending, the Supreme Court decided that the residual clause of the Armed Career Criminal Act was unconstitutionally vague. *Johnson v. United States*, 135 S. Ct. 2551 (2015). Taylor argued that the same reasoning equally invalidated § 924(c)(3)(B), but the Sixth Circuit rejected his argument, and the Supreme Court declined to grant certiorari. *Taylor*, 814 F.3d at 376-79, *cert. denied*, 138 S. Ct. 1975 (2018).

---

[1] "[A]ny person who, during and in relation to any crime of violence . . . , uses or carries a firearm" shall be sentenced "in addition to the punishment provided for such crime of violence." 18 U.S.C. § 924(c)(1)(A). And "[a] person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm" shall be punished by death or imprisonment if the killing is a murder as defined in 18 U.S.C. § 1111. 18 U.S.C. § 924(j). Because § 924(j) incorporates § 924(c), determinations about the constitutionality and proper interpretation of § 924(c) also apply to § 924(j).

The following year, in *Davis*, the Supreme Court invalidated the second definition of "crime of violence" as unconstitutionally vague. 139 S. Ct. at 2336. In the meantime, Taylor had filed a timely § 2255 motion which alleged, as relevant here, that his § 924(j) convictions are invalid because § 924(c) is unconstitutionally vague. (Doc. 1, § 2255 Motion at 187.)

According to Taylor, his conviction on Count 4 is invalid because the charged predicate crime of violence—kidnaping resulting in death—categorically fails to qualify as a crime of violence under § 924(c)(3)(A). (*E.g.*, Doc. 43, Brief at 7-17.) He also argues that his death sentence must be vacated, because the jury imposed a single verdict of death as to all four convictions. (*Id*. at 17-22 (discussing Case No. 1:04-cr-160, Doc. 760, Special Verdict).)

**ARGUMENT**

*Davis* provides no basis to vacate Taylor's conviction on Count 4 because the predicate crime of violence—kidnaping resulting in death—qualifies under § 924(c)(3)(A): it has as an element the use, attempted use, or threatened use of physical force against the person of another.

To determine whether an offense fits within § 924(c)(3)(A), courts ordinarily apply a "categorical approach." *See*, *e.g.*, *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (describing categorical approach in context of Armed Career Criminal Act); *Taylor v. United States*, 495 U.S. 575, 602 (1990) (same). Under that approach, a court "focus[es] solely" on "the elements of the crime of conviction," not "the particular facts of the case." *Mathis*, 136 S. Ct. at 2248. If the statute of conviction lists multiple alternative elements, as opposed to alternative means of committing a single element, it is "divisible" into different offenses. *Id*. at 2249. To classify a conviction under a divisible statute, a court may "look[ ] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, [the] defendant was convicted of." *Id*.

3

The death-results provision of the kidnaping statute triggers an enhanced penalty, 18 U.S.C. § 1201(a) (increasing the sentencing range if "the death of any person results"), and is therefore an element of the aggravated offense of kidnaping resulting in death. *See Burrage v. United States*, 571 U.S. 204, 210 (2014) ("Because the 'death results' [penalty] enhancement [in 21 U.S.C. § 841(b)] increased the minimum and maximum sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt."); *United States v. Ruiz-Hernandez,* 890 F.3d 202, 210 (5th Cir.) ("resulting-in-death element" in 8 U.S.C. § 1324(a)(1)(B)(iv) "increases the applicable statutory maximum sentence and thus must be submitted to the jury and found beyond a reasonable doubt"), *cert. denied*, 139 S. Ct. 278 (2018); *United States v. Lentz*, 524 F.3d 501, 512 (4th Cir. 2008) ("death resulted" is an essential element of the offense of kidnaping resulting in death). The kidnaping statute is therefore divisible into different offenses—kidnaping that does not result in death and kidnaping that does result in death—and Taylor was unquestionably charged with and convicted of the latter.[2] (*E.g.*, Case No. 1:04-cr-160, Doc. 447, Superseding Indictment; Doc. 670, Verdict; Doc. 790, Judgment.)

---

[2] The United States readily concedes, as it has done in other cases, that kidnaping that does not result in death does not constitute a crime of violence under § 924(c)(3)(A). *See*, *e.g.*, *Knight v. United States*, 936 F.3d 495, 498 (6th Cir. 2019). That concession does not require a concession with regard to kidnaping resulting in death, which has different elements. (Doc. 43, Brief at 12 (suggesting, mistakenly, that the government's position in this case is a "depart[ure] from a consistent series of concessions").) As the Sixth Circuit has stressed in a related context, "That one crime was found to be [—or not to be—] a [predicate offense] in no way implies that another crime with entirely different elements and circumstances should likewise be classified as such." *United States v. Vanhook*, 640 F.3d 706, 715 (6th Cir. 2011) (reviewing the violent-felony status of an offense under the Armed Career Criminal Act). And the United States is consistently arguing, as here, that kidnaping resulting in death is a crime of violence within the meaning of § 924(c)(3)(A). *See*, *e.g.*, Brief of the Appellee, *United States v. Sanders*, No. 15-31114, at 82-90 (5th Cir. July 16, 2019); Supplemental Memorandum in Opposition, *United States v. Fulks & Basham*, No. 4:02-cr-992 (D.S.C. Oct. 1, 2019).

Kidnaping resulting in death has as an element the use, attempted use, or threatened use of physical force against the person or property of another. "Physical force" in this context means "force capable of causing physical pain or injury to another person," even if no more severe than "a slap in the case," *Johnson v. United States*, 559 U.S. 133, 140, 143 (2010) (interpreting analogous provision of the Armed Career Criminal Act), or the "amount of force necessary to overcome a victim's resistance," *Stokeling v. United States*, 139 S. Ct. 544, 555 (2019). *See also United States v. Rafidi*, 829 F.3d 437, 445 (6th Cir. 2016) (applying *Johnson*'s definition of "physical force" to § 924(c)(3)(A)). That force may be indirect and it need not be intentional. *E.g.*, *United States v. Verwiebe*, 874 F.3d 258, 261-62 (6th Cir. 2017) ("[a] defendant uses physical force whenever his volitional act sets into motion a series of events that results in the application of a 'force capable of causing physical pain or injury to another person.'") (internal citation omitted); *accord United States v. Reyes-Contreras*, 910 F.3d 169, 182-84 (5th Cir. 2018) (*en banc*).

Citing Fourth Circuit cases, Taylor asserts that an offense cannot constitute a crime of violence unless the use, attempted use, or threatened use of force is intentional or knowing. (Doc. 43, Brief at 14-16 (primarily relying on *United States v. McNeal*, 818 F.3d 141 (4th Cir. 2016)).) But the Sixth Circuit—whose decisions bind this Court—has unequivocally held that "the argument that crimes satisfied by reckless conduct categorically do not include the 'use of physical force' simply does not hold water after *Voisine*" v. United States, 136 S. Ct. 2272 (2016). *Verwiebe*, 874 F.3d at 264; *accord United States v. Frazier*, 790 F. App'x 790, 791 (6th Cir. 2020) (finding, with respect to a § 924(c) offense, that circuit precedent "forecloses [the] argument that an offense cannot be categorically violent if it can be committed recklessly"); *accord United States v. Mann*, 899 F.3d 898, 906 (10th Cir. 2018) (concluding that, so long as an

"act was done with (at least) conscious disregard of a substantial risk that the behavior will cause harm to another," it can sustain "an increased penalty under § 924(c)(3)(A)"), *cert. denied*, 139 S. Ct. 2637 (2019).

Taylor also emphasizes that kidnaping not resulting in death sets forth different means of committing that offense (seizing, confining, inveigling, decoying, kidnaping, abducting, or carrying away and holding) and does not categorically have as an element the use of force (Doc. 43, Brief at 9-11), but he does not meaningfully address the divisibility of the kidnaping statute as between kidnaping resulting in death and kidnaping not resulting in death.

To prove the offense of kidnaping resulting in death, the government has to prove that the victim was subjected to "physical force" within the meaning of § 924(c)(3)(A). The requirement that "death results" from the kidnaping requires a causal connection between the kidnaping and the death; it would not be sufficient, for example, to show that the victim happened to die of natural causes during the course of a kidnaping. *See Burrage*, 571 U.S. at 214 ("a phrase such as 'results from' imposes a requirement of but-for causation"); *United States v. Hayes*, 589 F.2d 811, 821 (5th Cir. 1979) (holding that the "death results" provision of 18 U.S.C. § 242 incorporates general principles of causation and noting that death would not "result" from a § 242 violation if the victim is struck by lightning while being detained pursuant to an illegal arrest). And establishing that connection will, as in this case, require proof that force capable of causing physical pain or injury or of overcoming a victim's resistance was used during the course of the commission of the offense—whether or not the force was direct or intentional.[3]

---

[3] Taylor cites *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), for the proposition that death may result without the use of physical force (Doc. 43, Brief at 12), but the Fourth Circuit's "distinction . . . in *Torres-Miguel* between indirect and direct applications of force . . . no longer remains valid," *United States v. Battle*, 927 F.3d 160, 166-67 (4th Cir. 2019); *accord In re Irby*, 858 F.3d 231, 238 (4th Cir. 2017), because the Supreme Court held that it is

Indeed, where, as here, kidnaping resulting in death is charged as a capital offense, the jury cannot return a verdict of death unless it necessarily found that the defendant intentionally killed the victim; intentionally inflicted serious bodily injury that resulted in the victim's death; intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person and the victim died as a result of the act; or intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act. *See* 18 U.S.C. § 3591(a)(2). (*See also* Case No. 1:04-cr-160, Doc. 760, Special Verdict at 2 (jury finding beyond a reasonable doubt that all four of those statutory aggravating factors were present).) Those statutory aggravating factors require intentional conduct that caused a victim's death.

Capital kidnaping resulting in death, therefore, categorically has as an element—imported from 18 U.S.C. § 3591(a)(2)—the use, attempted use, or threatened use of physical force against the person or property of another, because no defendant can be found guilty of that offense without a finding that he used force capable of causing physical pain or injury against another person. *E.g.*, *In re Irby*, 858 F.3d at 238 ("one cannot unlawfully kill another human being without a use of physical force capable of causing physical pain or injury to another"). The existence of possible hypothetical scenarios in which death might result from a kidnaping without the use of "physical force" (*e.g.*, Doc. 43, Brief at 13-14) does not change the categorical analysis under § 924(c)(3)(A). *E.g.*, *United States v. Maxwell*, 823 F.3d 1057, 1062 (7th Cir.

---

"impossible to cause bodily injury without applying force in the common-law sense," *United States v. Castleman*, 572 U.S. 157, 170 (2014). *See also Reyes-Contreras*, 910 F.3d at 183 (finding that *Castleman* repudiated any distinction between "causing injury" and "using force").

2016) (barring defendants from "rely[ing] on fanciful hypotheticals not applicable in real world contexts (apart from law school exams)" to show categorical overbreadth).

The Supreme Court and the Sixth Circuit have repeatedly cautioned against using "legal imagination" to treat an offense as categorically overbroad. *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (explaining that "there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime'") (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)); *Chaney v. United States*, 917 F.3d 895, 902 (6th Cir.) (holding that, because defendant could not point to any case applying the statute to "nonqualifying force," he had not shown any realistic probability that a conviction for violating that statute would fall outside of the elements clause), *cert. denied*, 140 S. Ct. 265, *rehr'g denied*, 140 S. Ct. 666 (2019); *United States v. Patterson*, 853 F.3d 298, 304 (6th Cir. 2017) (reiterating that the Supreme Court had cautioned against "imaginative flights" when "applying the categorical approach"); *United States v. Ceron*, 775 F.3d 222, 229 (5th Cir. 2014) (*per curiam*) (same; rejecting a "clever hypothetical"). Taylor has identified no case—and the government knows of none—in which a court found the death-results element of the offense of kidnaping resulting in death where there was no use of physical force. *See Duenas-Alvarez*, 549 U.S. at 193; *United States v. Hill*, 890 F.3d 51, 56 (2d Cir. 2018) ("To show that a particular reading of the statute is realistic, a defendant must at least point to his own case or other cases in which the courts in fact did apply the statute in the manner for which he argues. To that end, the categorical approach must be grounded in reality, logic, and precedent, not flights of fancy.") (internal citations and quotation marks omitted), *cert. denied*, 139 S. Ct. 844 (2019). As explained above, no such case could exist in the capital context, where kidnaping resulting in death must always include the additional element of intentional violence.

In sum, *Davis*'s invalidation of § 924(c)(3)(B) offers no basis to vacate Taylor's

conviction on Count 4 for murder by use of a firearm during and in relation to kidnaping, nor

to vacate his capital sentence.[4]  That claim of his § 2255 motion should be denied as meritless.

Respectfully submitted,

J. Douglas Overbey
United States Attorney

By:     *s/ Steven S. Neff*
Steven S. Neff, BPR #GA 537187
Assistant U.S. Attorney
1110 Market Street, Ste. 515
Chattanooga, Tennessee 37402
(423) 752-5140
steven.neff@usdoj.gov

By:     *s/Christopher D. Poole*
Christopher D. Poole (BPR No. 019155)
Assistant United States Attorney
1110 Market St., Suite 515
Chattanooga, Tennessee 37402
 (423)752-5140
chris.poole@usdoj.gov

---

[4] If the Court disagrees and deems Taylor's conviction on Count 4 invalid post-*Davis*, resentencing would be necessary, because the jury returned a single verdict for all of Taylor's convictions.  *See*, *e.g.*, *United States v. Causey*, 185 F.3d 407, 423 (5th Cir. 1999) (resentencing required where "[t]he jury did not make separate recommendations concerning the appropriate penalties for each count of conviction," making it "impossible to say that the jury's penalty phase recommendations of the death penalty were not influenced by the fact that [defendants] had received three death eligible convictions, rather than two").