**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

REJON TAYLOR, )
)
      Petitioner, )
) No. 1:19-cv-147-CLC-CHS
v. )
)
UNITED STATES OF AMERICA, )
)
      Respondent. )

## MEMORANDUM OPINION & ORDER
## ON THE APPLICATION OF *UNITED STATES v. DAVIS*, 139 S. Ct. 2319 (2019)

Before the Court are the parties' briefs on *United States v. Davis*, 139 S. Ct. 2319 (2019) [Docs. 43, 46, 49] and supplemental briefs on *Borden v. United States*, 141 S. Ct. 1817 (2021) [Docs. 58, 61, 62]. Petitioner challenges count four of his conviction, for using, carrying, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c), as unconstitutional under *Davis*. Having carefully considered the parties' arguments, Petitioner's conviction under count four remains valid despite *Davis* because the predicate offense for this conviction—kidnapping resulting in death under 18 U.S.C. § 1201(a)—categorically qualifies as a crime of violence under 18 U.S.C. § 924(c)(3)(A). The Court, therefore, **DENIES** Petitioner's *Davis* claim.[1]

---

[1] In addition, for the reasons discussed in more detail *infra* note 7, the Court **RESERVES** a decision on whether carjacking resulting in death under 18 U.S.C. § 2119(3)—the predicate offense underlying Petitioner's firearms conviction under count two—categorically qualifies as a crime of violence under 18 U.S.C. § 924(c)(3)(A).

## I.  BACKGROUND

Petitioner is a death row inmate incarcerated at the Bureau of Prisons Federal Correctional Institution in Terre Haute, Indiana.  [Doc. 1 at 11].[2]  In 2003, he was charged with the following in connection with the murder of Guy Luck:  carjacking resulting in death, in violation of 18 U.S.C. § 2119(3) (count one); using a firearm during and in relation to a crime of violence, *i.e.*, carjacking resulting in death, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), and firearms murder, in violation of 18 U.S.C. § 924(j)(1) (count two); kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) (count three); and using a firearm during and in relation to a crime of violence, *i.e.*, kidnapping resulting in death, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), and firearms murder, in violation of 18 U.S.C. § 924(j)(1) (count four).  [1:04-cr-160, Superseding Indictment, Doc. 447 at 1–4].  The United States (hereinafter "the Government") notified Petitioner that it was seeking the death penalty under the Federal Death Penalty Act ("FDPA"), 18 U.S.C. §§ 3591–99, on all counts.  [*See* 1:04-cr-160, Notice of Intent, Doc. 123 at 1–6; *see also* Superseding Indictment, Doc. 447 at 5–6].

Trial began in this Court in August 2008 and was divided into two phases:  the guilt phase and the sentencing phase.  At the guilt phase, the jury found Petitioner guilty on all counts.  [*See* 1:04-cr-160, Doc. 670].  Trial proceeded to the sentencing phase.  [*See* 1:04-cr-160, Docs. 873–76].  The Government, in seeking the death penalty against Petitioner, sought to prove the four

---

[2] Petitioner's criminal action that corresponds with this 28 U.S.C. § 2255 proceeding is docketed under case number 1:04-cr-160.  Citations to the record in this opinion correspond with filings in Petitioner's § 2255 action unless this Court indicates otherwise.

statutory intent factors under the FDPA.[3]  [*See* 1:04-cr-00160, SEALED Doc. 876 at 113].  The Government also sought to prove the following two statutory aggravating factors under the FDPA: that (1) "the defendant committed the offense after substantial planning and premeditation to cause the death of a person," 18 U.S.C. § 3592(c)(9), and (2) "[t]he death, or injury resulting in death, occurred during the commission or attempted commission of . . . section 1201 (kidnapping)," *id*. § 3592(c)(1).[4]  [*See* 1:04-cr-00160, SEALED Doc. 876 at 186].  After hearing witness testimony from both parties, the jury unanimously determined that the Government proved all four statutory intent factors and two statutory aggravating factors under the FDPA beyond a reasonable doubt. [*See* 1:04-cr-160, Doc. 760 at 3].  In addition, the jury found that the statutory aggravating factors outweighed any mitigating factors.  [*Id*. at 15].  The jury unanimously decided that Petitioner should be sentenced to death.  [*Id*.]  Pursuant to the jury's recommendation, this Court imposed a death sentence and sentenced Petitioner to death "on Counts 1 through 4." [1:04-cr-160, Doc. 879 at 3:8–16].

Petitioner appealed his convictions and death sentence on fifteen grounds.  *See United States v. Taylor*, 814 F.3d 340, 345 (6th Cir. 2016).  The Court of Appeals for the Sixth Circuit

---

[3] The FDPA provides that a defendant "shall be sentenced to death" if the government, at a hearing, proves at least one of four statutory intent factors beyond a reasonable doubt.  *See* 18 U.S.C. § 3591(a)(2)(A)–(D).  These statutory intent factors include the following:  the defendant (A) intentionally killed the victim; (B) intentionally inflicted serious bodily injury that resulted in the death of the victim; (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a result of the act.  *Id*.

[4] The FDPA also provides that a jury, or if there is no jury, a court, must consider statutory aggravating factors before imposing a death sentence.  *See* § 3592(c)(1)–(16).

affirmed this Court's judgment. *Id*. Petitioner thereafter filed a petition for a writ of *certiorari* in the United States Supreme Court, but he was unsuccessful. *See Taylor v. United States*, 138 S. Ct. 1975, 1976 (2018).

Petitioner now seeks post-conviction relief from this Court. On May 14, 2019, he filed a motion to vacate, set aside, and correct his sentence under 28 U.S.C. § 2255. [*See* Doc. 1]. Shortly after he filed his motion, the Court set a scheduling and case management conference for August 20, 2019. [*See* ECF No. 33]. Petitioner, however, moved the Court to continue the conference to allow the parties additional time "to research and assess" the Supreme Court's recent decision in *Davis*, 139 S. Ct. at 2319. [Doc. 34 at 2].[5] The Court granted Petitioner's unopposed motion and reset the scheduling and case management conference for January 28, 2020. [*See* Docs. 35–38].

At the conference on January 28, 2020, Petitioner's attorneys further apprised the Court that they had assessed *Davis*'s impact on Petitioner's case. [Jan. 28, 2020 Tr. at 3:14–16 (on file with the Court)]. Petitioner's attorneys proposed that the parties submit briefs on *Davis*'s application to Petitioner's case and whether kidnapping resulting in death under 18 U.S.C. § 1201(a) qualifies as a crime of violence under the elements clause of 18 U.S.C. § 924(c). [*Id*. at 3:21–25]. The Government indicated that it did not oppose Petitioner's proposal. [*Id*. at 6:3–4].[6] Following the conference, this Court ordered the parties to file briefs on *Davis*. [*See* Doc. 40].

---

[5] Petitioner noted in ground sixteen of his motion that the Supreme Court at the time was considering the constitutionality of 18 U.S.C. § 924(c) in *Davis*. [Doc. 1 at 195 (citing *United States v. Maurice Davis and Andre Glover*, Case No. 16-10330)].

[6] At the conference, Petitioner's counsel informed the Court that "the next prudent step would be" to brief the Court on *Davis*'s application to Petitioner's case and on whether kidnapping resulting in death is a crime of violence under § 924(c)(3)(A). In Petitioner's brief, he also states that "the outcome of this briefing could preempt the need for this Court to resolve the majority of the issues presented." [Doc. 43 at 2].

The parties have filed their briefs on *Davis*.[7] This Court, however, stayed Petitioner's case pending the Supreme Court's decision in *Borden*. [*See* Doc. 52]. After the Supreme Court rendered its decision, this Court ordered the parties to submit supplemental briefs on *Borden*. [Doc. 53]. The parties have done so, and this Court is ready to rule on Petitioner's *Davis* claim.

## II.     STANDARD OF REVIEW

Although Petitioner does not raise his *Davis* claim in the form of a motion, the Court will address the standard under 28 U.S.C. § 2255 that governs a prisoner's collateral attack on his sentence. Under § 2255(a), a prisoner may move to vacate, set side, or correct his sentence upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, the court was without jurisdiction to impose the sentence, the sentence is in excess of the maximum authorized by law, or the sentence is otherwise subject to collateral attack. If a claim under § 2255 is meritorious, district courts must vacate and set aside the prisoner's judgment, resentence him, grant him a new trial, or correct his sentence, "as may appear appropriate." 28 U.S.C. § 2255(b).

Relief under § 2255, however, "does not encompass *all* claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (emphasis added). Rather, a

---

[7] Petitioner's brief addresses whether kidnapping resulting in death is a crime of violence. But he appears to raise an additional issue in two of his footnotes as well: whether carjacking resulting in death is a crime of violence under § 924(c)(3)(A). [Doc. 43 at 8 n.3; Doc. 58 at 9 n.5]. The Government, however, fails to address this issue, and the Court declines to address its merits absent any legal argument from the Government. [Doc. 46 at 3, 9 n.4]; *see Uduko v. Cozzens*, 975 F. Supp. 2d 750, 758 (E.D. Mich. 2013) (stating "that the Court is not obligated to make the [parties]' arguments for them" (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997))). The Court, therefore, **RESERVES** a decision on this issue until further briefing from the parties or until Petitioner's motion to vacate, set aside, and correct his sentence is ripe for a decision on the merits.

prisoner must allege "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)).  In addition, the prisoner "must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).  To obtain collateral relief under § 2255, a prisoner "must show a 'fundamental defect' in the proceedings which necessarily results in a miscarriage of justice or an egregious error violative of due process."  *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994) (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

### III.  <u>DISCUSSION</u>

The Court will begin with a discussion of *Davis*—the Supreme Court's most recent decision in a line of three cases addressing the constitutionality of a statute's residual clause.  In *Davis*, the Supreme Court held that the residual clause under 18 U.S.C. § 924(c) was unconstitutionally vague.  139 S. Ct. at 2326–27.  Before *Davis*, the Supreme Court in *Johnson v. United States*, 576 U.S. 591, 597 (2015), invalidated the residual clause under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), because "the wide-ranging inquiry required by the residual clause both denie[d] fair notice to defendants and invite[d] arbitrary enforcement by judges." *Id*.  Following *Johnson*, the Supreme Court in *Sessions v. Dimaya*, 138 S. Ct. 1204, 1220 (2018), invalidated the residual clause under 18 U.S.C. § 16 for similar reasons discussed in *Johnson*.  *Id*. (stating that § 16(b) "cannot cure the statutory indeterminacy *Johnson* described").

In *Davis*, Maurice Davis and Andre Glover ("the defendants"), were charged with one count of conspiracy to commit robbery and multiple counts of robbery affecting interstate

commerce, in violation of the Hobbs Act, 18 U.S.C. § 1951(a). 139 S. Ct. at 2324. The defendants were also charged under 18 U.S.C. § 924(c), which enhances criminal penalties for a person who uses, carries, or possesses a firearm in connection with a federal "crime of violence or drug trafficking crime." *Id*. (quoting 18 U.S.C. § 924(c)(1)(A)). Section 924(c) contains two subparts that define "crime of violence": the elements clause, § 924(c)(3)(A), and the residual clause, § 924(c)(3)(B). The elements clause defines "crime of violence" as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A).[8] The residual clause defines "crime of violence" as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(3)(B).

At trial, the defendants were convicted of most of the underlying offenses and on two separate charges for brandishing a short-barreled shotgun during their crimes, in violation of § 924(c). *Davis*, 139 S. Ct. at 2323–25. The defendants appealed their convictions and argued that § 924(c)'s residual clause was unconstitutionally vague in light of the Supreme Court's decision in *Johnson*. *Id.* at 2325 (citing *United States v. Davis*, 677 F. App'x 933 (5th Cir. 2017) (*per curiam*)). But the United States Court of Appeals for the Fifth Circuit disagreed with the defendants because the language of § 924(c)'s residual clause was "more definite" than the language of the ACCA's residual clause at issue in *Johnson*. *Davis*, 677 F. App'x at 936. The Fifth Circuit therefore joined several other circuits in concluding that *Johnson* did not invalidate the residual clause under § 924(c). *Id.*

---

[8] Courts refer to § 924(c)(3)(A) as either the force clause or the elements clause. The Court will refer to § 924(c)(3)(A) in this opinion as the elements clause.

The defendants petitioned the Supreme Court for a writ of *certiorari*. *See Davis v. United States*, 138 S. Ct. 1979 (2018). The Supreme Court vacated the defendants' judgments and remanded the case to the Fifth Circuit for further consideration in light of its recent decision in *Dimaya*, 138 U.S. Ct. at 1204. *Id*. On remand, the Fifth Circuit held that Davis's § 924(c) conviction under count two could not stand in light of *Dimaya*. *United States v. Davis*, 903 F.3d 483, 486 (5th Cir. 2018). However, it declined to extend *Dimaya* to section 924(c)'s elements clause because it held that the Supreme Court in "*Dimaya* only addressed, and invalidated, a residual clause mirroring the residual clause in § 924(c); it did not address the elements clause." *Id.* at 485.

The Supreme Court then granted the United States' petition for a writ of *certiorari* to resolve the "deepened . . . dispute among lower courts about the constitutionality of § 924(c)'s *residual* clause." *Davis*, 139 S. Ct. at 2325 (emphasis added). In its decision, the Supreme Court noted its prior holdings in *Johnson* and *Dimaya* and held that § 924(c)(3)(B)—which bore "more than a passing resemblance" to the residual clauses at issue in *Johnson* and *Dimaya*—was also unconstitutionally vague. *Id*.

**A.  Application of *Davis***

The parties agree that the Supreme Court in *Davis* indeed invalidated § 924(c)'s residual clause. Petitioner states in his brief that *Davis* "invalidat[ed] Section 924(c)(3)(B)." [Doc. 43 at 1]. Similarly, the Government states that *Davis* "invalidated the second definition of 'crime of violence'" under § 924(c), which is the residual clause. [Doc. 46 at 2–3 (citing *Davis*, 139 S. Ct. at 2336)].

The parties, however, dispute whether *Davis* is dispositive as to the Court's determination to vacate Petitioner's conviction under count four for using, carrying, and discharging a firearm

during and in relation to a crime of violence, in violation of § 924(c).[9]  Petitioner, for instance,

makes several arguments that count four of his conviction is no longer valid "pursuant to the

residual clause under the clear mandate of *Davis*." [Doc. 43 at 3].  First, he argues that the Sixth

Circuit's decision in *Taylor*, 814 F.3d at 340, is no longer good law in light of *Davis*.  [*Id*. at 5].

He states that, since *Davis*, "the Sixth Circuit has treated *Taylor* as effectively defunct" and "has

explicitly categorized *Taylor* as an overruled decision obliging reexamination of cases it had

previously foreclosed."  [*Id*. at 6 (citing *United States v. Frazier*, 790 F. App'x 790, 791 (6th Cir.

2020); *Manners v. United States*, 947 F.3d 377, 369 (6th Cir. 2020); *In re Ervin*, 2019 U.S. App.

LEXIS 3008, at *3 (6th Cir. Oct. 4, 2019))].[10]  He also states that *Davis* applies retroactively and

argues that the Court is therefore obligated to correct his unconstitutional conviction, vacate his

---

[9] As stated above, Petitioner was also convicted of firearms murder, in violation of § 924(j), as charged in count four of the superseding indictment. [*See* 1:04-cr-160, Superseding Indictment, Doc. 447 at 1–4].  The Government notes in its brief that § 924(j) incorporates § 924(c), which Petitioner does not dispute.  [Doc. 46 at 2 n.1]; *see United States v. Roof*, 10 F.4th 314, 397 (4th Cir. 2021) ("Section 924 proscribes the use of a firearm 'during and in relation to any crime of violence' resulting in murder, and it authorizes the imposition of the death penalty."  (citing 18 U.S.C. § 924(c)(1)(A), (j)(1) (incorporating 18 U.S.C. § 924(c) and § 1111 by reference))).  So, "determinations about the constitutionally and proper interpretation of § 924(c) also apply to § 924(j)."  [Doc. 46 at 2 n.1]; *see Roof*, 10 F.4th at 398 ("To qualify as a crime of violence under 18 U.S.C. § 924(c)(3), which is the controlling definition for purposes of § 924(j)(1), a predicate offense must have 'as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" (quoting 18 U.S.C. § 924(c)(3)(A))); *see also United States v. Robinson*, 275 F.3d 371, 378 (4th Cir. 2001) (explaining that proof of a § 924(j) violation requires "the commission of a § 924(c) violation").

[10] One of the issues that Petitioner raised on appeal was whether the residual clause under 18 U.S.C. § 924(c) was unconstitutionally vague in light of *Johnson*.  *See Taylor*, 814 F.3d at 375–76.  But the Sixth Circuit determined that *Johnson* did not invalidate § 924(c)'s residual clause because it was "distinctly narrower" than the ACCA's residual clause.  *Taylor,* 814 F.3d at 375–79 (noting that "several factors distinguish[ed] the ACCA from § 924(c)(3)(B)").  The Supreme Court in *Davis* subsequently invalidated § 924(c)'s residual clause in 2019.

"single death sentence"—which he says is "inextricably intertwined with the jury's sentencing verdict"—and order a new sentencing hearing. [*Id.* at 1, 2, 3, 7].

Second, Petitioner argues that his conviction under count four cannot stand because kidnapping resulting in death under 18 U.S.C. § 1201(a)—the predicate offense for his firearms conviction under count four—is not a crime of violence under § 924(c)'s elements clause. [*Id.* at 7–16]. Petitioner argues, therefore, that the Court must vacate count four of this conviction because there can be no qualifying predicate offense to support his firearms conviction under § 924(c)'s constitutionally defunct residual clause or under § 924(c)'s elements clause.

The Government does not dispute Petitioner's contention that *Davis* is retroactive. Rather, its position is that *Davis*'s invalidation of § 924(c)'s residual clause does not undermine Petitioner's firearms conviction under count four. [Doc. 46 at 1]. That is, according to the Government, *Davis* provides no basis to vacate count four of Petitioner's conviction because the predicate offense of kidnapping resulting in death can still qualify as a crime of violence under § 924(c)'s elements clause. [*Id.* at 3]. The Government agrees, however, that should the Court determine that Petitioner's firearms conviction under count four is invalid, "resentencing would be necessary, because the jury returned a single verdict for all of [Petitioner]'s convictions." [*Id.* at 9 n.4].

The Sixth Circuit has recognized that *Davis* indeed addressed the validity of § 924(c)'s residual clause "head-on" and that this "clause is, in fact, unconstitutionally vague." *United States v. Richardson*, 948 F.3d 733, 741 (6th Cir. 2020) (citing *Davis*, 139 S. Ct. at 2336). The Sixth Circuit has also recognized that *Davis* established a new rule of law that is retroactive to cases on collateral review. *See In re Franklin*, 950 F.3d 909, 910–11 (6th Cir. 2020) (stating that the "Supreme Court's decision in *Welch v. United States*, 136 S. Ct. 1257, 1264–65 (2016), establishes

10

the retroactivity of *Davis*"). *Davis*, therefore, renders the residual clause under § 924(c) constitutionally defunct, and it applies retroactively to Petitioner's case on collateral review.

The Court's analysis, however, does not end here because, despite *Davis*, Petitioner's firearms conviction under count four may still stand under § 924(c)'s elements clause. As the Sixth Circuit has explained, *"Davis* does not gut the entire statute. To the contrary, *Davis* leaves intact a separate definition of crime of violence supplied by the statute's 'elements clause.'" *Richardson*, 948 F.3d at 740–42 (citing § 924(c)(3)(A)); *see Knight v. United States*, 936 F.3d 495, 497–501 (6th Cir. 2019) (holding that, despite *Davis*, the petitioner's § 924(c) conviction "for using a firearm during assault and robbery in violation of § 18 U.S.C. § 2114(a)" is a crime of violence under § 924(c)'s *elements* clause); *see also Mannie v. United States*, No. 3:19-cv-00632, 2020 WL 1923229, at *4 (M.D. Tenn. Apr. 21, 2020) ("*Davis* leaves intact a separate definition of crime of violence supplied by the statute's 'elements clause.'" (citing § 924(c)(3)(A))).

So, although the Court agrees with Petitioner that "reexamination" of his case is warranted in light of *Davis*, whether it decides to vacate his conviction and sentence turns on whether kidnapping resulting in death under § 1201(a) categorically qualifies as a crime of violence under the elements clause of § 924(c)—an issue which appears to be one of first impression in this circuit.[11] [Doc. 43 at 7]. If the Court determines that kidnapping resulting in death qualifies as a

---

[11] The Sixth Circuit has not yet decided whether kidnapping resulting in death under § 1201(a) qualifies as a crime of violence under § 924(c)(3)(A). The United States Court of Appeals for the Eighth and Fifth Circuits, however, have squarely addressed this issue and held that kidnapping resulting in death under § 1201(a) is a crime of violence under § 924(c)(3)(A). *See United States v. Ross*, 969 F.3d 829 (8th Cir. 2020); *In re Hall*, 979 F.3d 339 (5th Cir. 2020). Both decisions, however, predated *Borden*, in which the Supreme Court recently held that "offenses criminalizing reckless conduct" cannot qualify as a violent felony under the ACCA's elements clause. 141 S. Ct. at 1825. The Eighth Circuit in *Ross*, therefore, partly rested its decision on its prior holdings that "[r]ecklessness is a sufficient *mens rea* for application of the force [elements] clause." 969 F.3d at 839 (citation omitted). On October 12, 2021, the Supreme Court

crime of violence under § 924(c)(3)(A), it will uphold Petitioner's conviction and resulting death sentence. *Cf. Mannie*, 2020 WL 1923229 at *3 ("With the residual clause [under § 924(c)] now gone, we can uphold [petitioner]'s conviction and sentence under § 924(c) only if the statute underlying his conviction—aiding and abetting Hobbs Act Robbery—satisfies § 924(c)'s elements clause." (quoting *Richardson*, 948 F.3d at 741)). If, on the other hand, this Court determines that kidnapping resulting in death does not qualify as a crime of violence under § 924(c)(3)(A), it must vacate Petitioner's firearms conviction under count four, as there can be no qualifying predicate offense to support this conviction.

### B. Crime of Violence Analysis

#### 1. The Categorical and Modified Categorical Approach

The Court will begin its analysis by discussing the legal framework for determining whether an offense qualifies as a crime of violence. When determining whether federal or state offenses qualify as crimes of violence, courts apply the "categorical approach" or its variant called the "modified categorical approach." *Descamps v. United States*, 570 U.S. 254, 254 (2013). Courts apply the categorical approach when a statute is "indivisible"—meaning the statute "defines only one crime, with one set of elements, but . . . lists alternative factual means by which a defendant can satisfy those elements." *Mathis v. United States*, 136 S. Ct. 2243, 2246 (2016). Alternatively, when a statute is "divisible," meaning that it sets out "one or more of the elements

---

granted *certiorari* in *Ross* and a companion case, vacated judgment, and remanded the case for further consideration in light of *Borden*. *See King v. United States*, 142 S. Ct. 332 (2021). In *In re Hall*, the Fifth Circuit also held that kidnapping resulting in death is a crime of violence under § 924(c)(3)(A) because it "entails the kind of reckless conduct contemplated by the 'use of force' required under 18 U.S.C. § 924(c)(3)(A)." 979 F.3d at 345. The Fifth Circuit in *In re Hall* also adopted a bright line rule for "all federal capital charges." *Id*. at 346 (stating that "all federal capital charges must incorporate the required [statutory intent elements] of § 3591(a)(2)," and "therefore necessarily satisfy the elements clause of § 924(c)").

in the alternative," the Supreme Court instructs courts to apply a variant of the categorical approach called the modified categorical approach. *Descamps*, 570 U.S. at 254.

The Supreme Court has explained that the modified categorical approach is "a tool for implementing the categorical approach, to examine . . . which of a statute's alternative elements formed the basis of the defendant's prior conviction." *Id*. at 262. But unlike the categorical approach, the modified categorical approach "permits sentencing courts to consult a *limited* class of documents, such as indictments and jury instructions, to determine which alternative element formed the basis of the defendant's prior conviction." *Id.* at 254, 257 (emphasis added); *see Shepard v. United States*, 544 U.S. 13, 13 (2005) ("[A] court . . . can look to statutory elements, charging documents, and jury instructions to determine whether an earlier conviction after a jury trial was for [a] generic [crime]." (citation omitted)). This limited class of documents is called "*Shepard* documents." *United States v. Burris*, 912 F.3d 386, 393 (6th Cir. 2019).

Under either approach, however, a court's focus is "on the statutory definition of the [underlying] offense, rather than the manner in which an offender may have violated the statute in a particular circumstance." *Manners*, 947 F.3d at 379 (internal quotation marks and citation omitted). Stated another way, courts must ascertain the minimum conduct criminalized by the underlying offense based on "its statutory elements and judicial interpretations of those elements— not the facts underlying the conviction." *Porter v. United States*, 959 F.3d 800, 802 (6th Cir. 2020) (citations omitted); *see Wingate v. United Sates*, 969 F.3d 251, 263 (6th Cir. 2020) ("[Under the categorical approach], [w]e focus on the *minimum* conduct criminalized by the statute[.]" (internal quotation marks and citations omitted) (emphasis added)); *see also United States v. Evans*, 924 F.3d 21, 28 (2d Cir. 2019) ("[W]e identify the elements of the predicate conviction by determining the minimum criminal conduct a defendant must commit to be convicted."). The court must then

determine "whether the minimum criminalized conduct necessarily involves physical force as contemplated by" § 924(c)(3)(A). *Wingate*, 969 F.3d at 263.

Thus, regardless of whether this Court applies the categorical or the modified categorical approach, it must ignore the facts underlying Petitioner's capital case. The Court, instead, must determine whether kidnapping resulting in death under § 1201(a) qualifies as a crime of violence under § 924(c)(3)(A) as a matter of law. .

### 2. Applying the Categorical Approach and Modified Categorical Approach

In applying the above framework, the Court's first task is to determine whether § 1201(a) is indivisible or divisible. *See Knight*, 936 F.3d at 498 ("We first consider whether the statute is divisible."). If the statute is divisible, the Court may utilize the modified categorical approach and turn to the *Shepard* documents "to determine what crime, with what elements . . . [Petitioner] was convicted of." *Mathis*, 136 S. Ct. at 2249. The Court must then determine the minimum conduct criminalized by kidnapping resulting in death under § 1201(a). *Wingate*, 969 F.3d at 263. Finally, the Court "must determine whether the minimum criminalized conduct necessarily involves physical force as contemplated in § 924(c)(3)(A)." *Id*. (citations omitted). If the minimum conduct criminalized by kidnapping resulting in death sweeps more broadly than § 924(c)(3)(A) permits, the offense cannot categorically qualify as a crime of violence.

### a. Divisibility

Title 18 of United States Code § 1201(a), in pertinent part, provides the following:

(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when—

  (1) The person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when

> transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense . . .
>
> shall be punished by imprisonment for any term of years or for life and, if the death of any person results,[12] shall be punished by death or life imprisonment.

*Id.* The Supreme Court has explained the difference between a divisible and an indivisible statute. A divisible statute "may list elements in the alternative, and thereby define multiple crimes." *Mathis*, 136 S. Ct. at 2249. In addition, "[i]f statutory alternatives carry different punishments, then . . . they must be elements," and the statute is divisible. *Id.* at 2256 (citations omitted); *see Burris*, 912 F.3d at 405 (One "way *Mathis* describes to determine whether a statute is divisible is to look to see '[i]f statutory alternatives carry different punishments,' because if they do, . . . they must be elements." (quoting *Mathis*, 136 S. Ct. at 2256)). An indivisible statute, on the other hand, merely "enumerates various factual means of committing a single element." *Mathis*, 136 S. Ct. at 2249.

Petitioner does not appear to take a stance as to whether § 1201(a) is a divisible or an indivisible statute; he does not specifically mention the modified categorical approach and only explains that courts must apply the "categorical approach" when determining whether a predicate offense qualifies as crime of violence. [Doc. 43 at 4–5]. The Government, on the other hand, argues that § 1201(a)'s death-results provision "triggers an enhanced penalty . . . and is therefore an element." [(Doc. 46 at 4 (citing *Burrage v. United States*, 571 204, 210 (2014))]. According

---

[12] Throughout this opinion, the Court will refer to the "if the death of any person results" language of § 1201(a) as the "death-results provision."

to the Government, § 1201(a) is therefore "divisible into different offenses—kidnap[p]ing that *does not* result in death and kidnap[p]ing that *does* result in death." [*Id.* (emphasis added)].

The Court agrees with the Government's position on this point. Section 1201(a) defines two alternative offenses: simple kidnapping[13] and kidnapping that results in death. *See* 18 U.S.C. § 1201(a); *see also Ross*, 969 F.3d at 837 ("The statute defines at least two alternative crimes: (1) kidnapping and (2) kidnapping resulting in death."). Simple kidnapping and kidnapping resulting in death carry different punishments. Simple kidnapping under § 1201(a) "punishe[s] by imprisonment for any term of years or for life" an individual who "unlawfully . . . kidnaps . . . and holds for ransom or reward or otherwise any person." § 1201(a). Section 1201(a), however, provides an enhanced penalty of "death or life imprisonment" when an individual "unlawfully . . . kidnaps . . . and holds for ransom or reward or otherwise any person" *and* "if the death of any person results." *Id*. And because statutory alternatives that carry different punishments are elements, the statute is divisible. *Burris*, 912 F.3d at 405 ("[T]o determine whether a statute is divisible is to look to see '[i]f statutory alternatives carry different punishments,' because if they do, . . . 'they must be elements.'" (quoting *Mathis*, 136 S. Ct. at 2256); *see Burrage*, 571 U.S. at 210 (holding that statute's "death results enhancement . . . is an element that must be submitted to the jury and found beyond a reasonable doubt" (citations and internal quotation marks omitted)); *see also In re Hall*, 979 F.3d 339, 344 (5th Cir. 2020) ("The federal kidnapping resulting in death provision involves different elements of conviction from the general federal crime of kidnapping—

---

[13] Petitioner refers to kidnapping that does not result in death under § 1201(a) as "kidnapping simpliciter." [Doc. 43 at 8, 15]. In this opinion, the Court will refer to kidnapping that does *not* result in death under § 1201(a) as "simple kidnapping."

namely, the additional requirement that 'the death of [a] person results'—and triggers an enhanced penalty." (citing *Burrage,* 571 U.S. at 210)).

### b. *Shepard* Documents

Having determined that § 1201(a) is divisible, the Court may utilize the modified categorical approach. *See Knight*, 936 F.3d at 498 ("When a statute is divisible—i.e. it comprises multiple versions of the crime with alternative elements—we use the modified categorical approach."). Again, in applying the modified categorial approach, the Court "looks to a *limited* class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249 (emphasis added).

The parties do not appear to dispute that Petitioner was charged with and convicted of kidnapping resulting in death under § 1201(a). And the superseding indictment and jury instructions confirm that Petitioner was indeed charged with kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a). For instance, count three of the superseding indictment reads that Petitioner: "[D]id willfully and unlawfully seize, confine, abduct and carry away Guy Luck and did hold him for ransom, reward and otherwise did transport him in interstate commerce . . . *and* in committing this offense, did cause the death of Guy Luck." [1:04-cr-160, Doc. 447 at 3 (emphasis added)]. Count four of the superseding indictment states that Petitioner "did knowingly use, carry, and discharge a firearm during and in relation to a crime of violence. . . that is, kidnap[p]ing, as charged in Count Three of this Indictment." [*Id*. at 4].

The jury instructions also show that Petitioner was charged with kidnapping resulting in death. This Court informed the jury that Petitioner was charged with "kidnapping resulting in death" in count three of the indictment. [1:04-cr-160, Doc. 868 at 94:25–95:1]. This Court also

instructed the jury that to find Petitioner guilty of the offense of kidnapping in count three of the indictment, they had to find that the Government proved beyond a reasonable doubt that Petitioner "seized, confined, kidnapped, or carried away" Guy Luck, "held that person for ransom [or] reward," "transported [Guy Luck] in interstate commerce," *and* the additional element that Petitioner, "in committing the offense, . . . caused the death of Guy Luck." [*Id*. at 95:6–15]. It further instructed the jury that, "to find defendant guilty of the offense charged in Count 4," the Government must first prove that "the defendant committed the kidnapping charged in Count 3." [*Id*. at 96:3–13].

### c. The Minimum Conduct Criminalized by Kidnapping Resulting in Death, 18 U.S.C. § 1201(a)

Having determined that Petitioner was convicted of kidnapping resulting in death, in violation of § 1201(a), the Court must determine "the minimum conduct criminalized" by this offense. *Wingate*, 969 F.3d at 263 (internal quotation marks and citations omitted). In determining the minimum conduct criminalized by kidnapping resulting in death, the Court looks "to the offense's statutory definition along with controlling judicial interpretations of it." *United States v. Harris*, 853 F.3d 318, 320 (6th Cir. 2017). The Court is mindful that in undertaking this inquiry, "there must be a realistic probability, not a theoretical possibility, that the minimum conduct would actually be punished under the offense." *Roof*, 10 F.4th at 398 (internal quotation marks and citation omitted); *see Harris*, 853 F.3d at 322 ("[O]ur focus on the minimum conduct criminalized by the . . . statute is not an invitation to apply legal imagination to the . . . offense." (internal quotation marks and citations omitted)).

The Court turns, then, to the elements of § 1201(a). To obtain a conviction for kidnapping resulting in death under § 1201(a), the government must prove the first two elements of simple

kidnapping: that the offender (1) unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away a person, and (2) held a person "for ransom or reward or otherwise." § 1201(a); *see United States v. Small*, 988 F.3d 241, 249–52 (6th Cir. 2021) (discussing the elements necessary for a conviction for simple kidnapping under § 1201(a)). These first two elements under § 1201(a) are "*actus reus* elements of the offense." *United States v. Brika*, 487 F.3d 450, 455 (6th Cir. 2007). The government also must show that an offender "willfully transported" another "in interstate or foreign commerce." § 1201(a)(1). However, this is a "jurisdictional requirement" rather than an element requiring the government to prove that a defendant purposely engaged in transporting the victim. *United States v. Burnette*, 170 F.3d 567, 571 (6th Cir. 1999) ("Interstate transportation of the kidnapping victim is a jurisdictional requirement with respect to a violation charged under 18 U.S.C. § 1201, but the government has no obligation to prove that the defendants purposely engaged in such transportation.").

In addition, the Sixth Circuit has not squarely addressed the level of culpability required for the government to obtain a conviction under § 1201(a). But Sixth Circuit jurisprudence seems to support that § 1201(a) is a "general intent crime" as opposed to a "specific intent crime" because it "is silent insofar as requiring that a defendant act with any intent at all." *United States v. Gonyea*, 140 F.3d 649, 650–51, 654 (6th Cir. 1998) (holding that "the first paragraph of § 2113(a) describes a general intent crime"); *see United States v. Sneezer*, 983 F.2d 920, 922–23 (9th Cir. 1992) (determining that "kidnapping is a general intent crime" rather than a specific intent crime). The Sixth Circuit has explained the difference between a general intent crime and a specific intent crime. *United States v. Kimes*, 246 F.3d 800, 807 (6th Cir. 2001). A general intent crime "requires the knowing commission of an act that the law makes a crime." *Id*. (quoting *United States v. Kleinbart*, 27 F.3d 586, 592 n.4 (D.C. Cir. 1994)). A specific intent crime, on the other hand,

19

"requires additional 'bad purpose.'" *Id.* (quoting *Kleinbart*, 27 F.3d at 592 n.4). So, although proof that an offender had any additional bad purpose is not necessary for the government to obtain a conviction under § 1201(a), Sixth Circuit jurisprudence tends to support that the government, at the very least, must prove that the "actor . . . entertain[ed] . . . the criminal intent to do the acts" and "knowingly, consciously, and voluntarily committed" the kidnapping. *United States v. Milliron*, 984 F.3d 1188, 1194 (6th Cir. 2021) (quoting *United States v. Feola*, 420 U.S. 671, 684–86 (1975); *Kimes*, 246 F.3d at 807)).

As to the death-results provision of § 1201(a), the parties appear to agree that it, at the very least, contains a causation element. [*See* Doc. 43 at 15 (stating that "[p]roof of 'death results' only requires causation"); Doc. 46 at 6 (stating "that 'death results' from the kidnap[p]ing requires a causal connection" (citing *Burrage*, 571 U.S. at 214))]. At trial, this Court, indeed, instructed the jury that to find Petitioner guilty of kidnapping resulting in death, they had to find that the Government proved beyond a reasonable doubt that he, "in committing the kidnapping[,] . . . did *cause* the death of Guy Luck." [1:04-cr-160, Doc. 868 at 96:21–24 (emphasis added)]. In addition, the Supreme Court's interpretation of statutes that are similar in language to § 1201(a) supports that its death-results provision contains an element of causation. *See Paroline v. United States*, 572 U.S. 434, 445 (2014) ("The words 'as a result of' plainly suggest causation." (citations omitted)); *Burrage*, 571 U.S. at 204–05, 210–11 (holding that the ordinary meaning of "results from" imposes a requirement of actual causality).

In *Burrage*, for instance, the Supreme Court interpreted the meaning of "results from" in a sentencing enhancement provision under 21 U.S.C. § 841. 571 U.S. at 208–19. The statute at issue criminalizes the unlawful distribution of a Schedule I or II drug and contains a penalty enhancement when "death or serious bodily injury results from the use of such substance." *Id*. at

20

206 (quoting 21 U.S.C. § 841(a)(1), (b)(1)(A)–(C) (2012 ed.)). The Supreme Court gave "results from" under § 841(b)(1)(C) its ordinary meaning and, in relevant part, explained:

> A thing results when it [a]rise[s] as an effect, issue, or outcome *from* some action, process or design. . . . Results from imposes, in other words, a requirement of actual causality. In the usual course, this requires proof that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct. . . . The Model Penal Code reflects this traditional understanding; it states that [c]onduct is the cause of a result if it is an antecedent but for which the result in question would not have occurred. . . . That formulation represents *the minimum* requirement for a finding of causation when a crime is defined in terms of conduct causing a particular result.

*Id*. at 210–11 (internal quotation marks and citations omitted) (emphasis in original). *Burrage* suggests, therefore, that § 1201(a)'s death-results provision requires the Government to prove that an offender was the actual, or but-for, cause of another's death. *See Ross*, 969 F.3d at 838 (interpreting "results" in § 1201(a) as "mean[ing] that the kidnapping is a but-for cause of death" (citing *Burrage*, 571 U.S. at 204, 210–11)).

Lastly, § 1201(a)'s death-results provision lacks a *mens rea* requirement. As Petitioner points out, at least one court in this circuit has held that § 1201(a)'s death-results provision "does not require that the government prove mens rea." *United States v. Mayhew*, 380 F. Supp. 2d 936, 958–60 (S.D. Ohio 2005) (holding that the language of § 1201(a)'s death-results provision only requires proof of causation and "does not require that the government prove mens rea," "intent to kill," or "that Defendant acted with scienter"). And the Government does not appear to dispute Petitioner's contention.[14] Therefore, all that is required under § 1201(a)'s death-results provision

---

[14] As the Court will discuss in more detail in the next section of this opinion, *infra* § III(B)(2)(d)(ii), the Government does not appear to dispute that the death-results provision of § 1201(a) lacks a *mens rea* requirement on its *face*. Rather, the Government argues that "capital kidnapping" under § 1201(a) requires proof of intentional conduct "imported from 18 U.S.C.

is proof that the offender caused the death of another, and "[t]he only mens rea required is the mens rea necessary to commit the underlying" kidnapping. *United States v. McDuffy*, 890 F.3d 796, 799–02 (9th Cir. 2018) (declining to "read a *mens rea* requirement into" § 2113's death-results provision based on the statute's structure and congressional intent).

### d. Use of Physical Force Under § 924(c)(3)(A)

Having determined the minimum conduct criminalized by kidnapping resulting in death under § 1201(a), the Court must answer whether the offense qualifies as a crime of violence under § 924(c)(3)(A). To qualify as a crime of violence under § 924(c)(3)(A), kidnapping resulting in death must "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A).

The Supreme Court has parsed the meaning of the phrase "use of physical force" in several decisions and in different statutory contexts. *See, e.g., Borden*, 141 S. Ct. 1817 at 1823–25 (interpreting the meaning of "use of physical force" and "against" language under the ACCA's elements clause); *Stokeling v. United States*, 139 S. Ct. 544, 553 (2019) (interpreting the meaning of "physical force" under the ACCA's elements clause); *Johnson v. United States*, 559 U.S. 133, 137–45 (2010) (same); *Leocal v. Ashcroft*, 543 U.S. 1, 9–10 (2004) (interpreting the meaning of "use" under 18 U.S.C. § 16's elements clause). Beginning with *Leocal*, for instance, the Supreme Court interpreted the meaning of "use" in the phrase "use of physical force against another's person or property" under 18 U.S.C. § 16's elements clause. 543 U.S. at 2, 9. The Supreme Court recognized that it "must give words their 'ordinary or natural' meaning." *Id*. at 11 (citation

---

§ 3591(a)(2)." [Doc. 46 at 7 (stating that "the jury cannot return a verdict of death unless it necessarily found that the defendant intentionally killed the victim" (citing 18 U.S.C. § 3591(a)(2))].

omitted).  In doing so, it determined that the word "use" under § 16(a) means "active employment," which "most naturally suggests a higher degree of intent than negligent or merely accidental conduct."  *Id*. at 9–10.  The Supreme Court held, therefore, that offenses requiring proof of merely negligent or accidental conduct cannot qualify as crimes of violence under § 16(a).  *Id*.

After *Leocal*, the Supreme Court decided *Johnson* and *Stokeling*.  In *Johnson*, the Court held that "physical force" under the ACCA's elements clause means "violent force—that is, force capable of causing physical pain or injury to another person."  559 U.S. at 140.  Mere offensive touching is not enough to satisfy the degree of physical force necessary under this clause.  *Id*. at 134, 139 (holding that Florida battery statute did not satisfy the ACCA's definition of physical force because the "element of actually and intentionally touching another person" under Florida law encompassed "*any* intentional contact, no matter how slight" (internal quotation marks and citations omitted)).  Then, in *Stokeling*, the Supreme Court further described "violent force" in the ACCA context as the kind that is "necessary to overcome resistance by a victim."  139 S. Ct. at 552–53

Most recently, the Supreme Court in *Borden* decided an issue that it "left open" in *Leocal*: whether *reckless* offenses can satisfy the ACCA's elements clause.  141 S. Ct. at 1819.  The Supreme Court in *Borden* interpreted the language of the ACCA's elements clause in determining whether Tennessee reckless aggravated assault could qualify as a "violent felony."  *Id*. at 1822 (citing Tenn. Code Ann. § 39-12-102(a)(2) (2003)).  The Supreme Court stated that "the phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual."  *Id*. at 1825.  And because reckless conduct is "not aimed in that prescribed manner," the Supreme Court held that a criminal offense that requires a *mens rea* of recklessness cannot qualify as a violent felony under the ACCA's elements clause; rather,

"*purposeful* or *knowing* conduct" will satisfy the clause's demand for the use of force against the person of another. *Id*. at 1823, 1827–28 (emphasis added).

In its supplemental brief, the Government concedes that "*Borden*'s reasoning applies to the definition of 'crime of violence' in § 924(c)(3)(A)." [Doc. 61 at 1]. In addition, both parties refer to *Johnson*'s definition of "physical force" in their briefs [*see* Doc. 46 at 5, Doc. 58 at 3], and the Sixth Circuit has indeed applied *Johnson*'s definition of physical force when determining whether an offense qualifies as a crime of violence under § 924(c)(3)(A). *See United States v. Rafidi*, 829 F.3d 437, 445–46 (6th Cir. 2016) (applying *Johnson*'s definition of "physical force" in the ACCA context to the definition of "crime of violence" under § 924(c)(3)(A)). The precise issue for the Court to determine then is whether the minimum conduct criminalized by kidnapping resulting in death "necessarily involves" the use of "physical force as contemplated in § 924(c)(3)(A)"—that is, *violent* force that is "capable of causing physical pain or injury to another person" as defined under *Johnson*. *Wingate*, 969 F.3d at 262–63 (quoting *Johnson*, 559 U.S. at 140). In addition, *Borden* indicates that the offense must at least require proof of "purposeful or knowing conduct" to qualify as a crime of violence under § 924(c)(3)(A). 141 S. Ct. at 1828. Mere reckless conduct will not suffice. *Id*. at 1825.

Petitioner, indeed, acknowledges in his brief that "an offense must satisfy two requirements" to qualify as a crime of violence under § 924(c)(3)(A). [Doc. 43 at 8]. He states that the offense "must have as an element the use, attempted use, or threatened use of [physical] force," and the offense must "require proof of . . . heightened *mens rea*." [*Id*. at 8, 14–16]. According to Petitioner, however, kidnapping resulting in death cannot satisfy either requirement because § 1201(a) sweeps more broadly than § 924(c)(3)(A)'s elements clause permits. [*See id*. at 8–17]. He appears to make two main arguments in support of this position. [*See id*.]. First,

24

Petitioner argues that an individual may be convicted of kidnapping resulting in death under § 1201(a) when he accidentally, nonviolently, or negligently causes another's death. [Doc. 43 § IV(A)(1)]. Second, Petitioner argues that kidnapping resulting in death "does not require proof of the heightened *mens rea*," such as specific intent or knowledge. [*Id*. § IV(A)(2)]. Although there is some overlap in these two arguments, the Court will address each of them in the order that Petitioner does in his brief.

### (i) Argument 1: Accidental or Negligent Conduct or Non-Violent Force

In this section, the Court will determine whether kidnapping resulting in death "necessarily involves" the degree of "physical force as contemplated in § 924(c)(3)(A)"—that is, *violent* force that is "capable of causing physical pain or injury to another person" as defined under *Johnson*. *Wingate*, 969 F.3d at 262–63 (quoting *Johnson*, 559 U.S. at 140). If kidnapping resulting in death "defines [the] offense in a way that allows for both violent *and* nonviolent means of commission," it cannot categorically qualify as a crime of violence under § 924(c)(3)(A). *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (emphasis added).

According to Petitioner, kidnapping resulting in death does not qualify as a crime of violence because "it does not categorically require the use, attempted use or threatened use of physical force." [Doc. 43 at 8]. Petitioner makes three arguments in support of this broader argument. He argues that (1) courts have held that simple kidnapping under § 1201(a) is not a crime of violence; (2) the Government has conceded that simple kidnapping under § 1201(a) is not a crime of violence under § 924(c)'s elements clause; and (3) kidnapping resulting in death, which only requires proof of causation, "does not require that death be the result of [violent] physical force." [*Id*. at 8–14].

Turning to his first argument, Petitioner states that because courts have held that "[simple] kidnapping may be accomplished without force," the courts' logic in these cases "holds true for kidnapping resulting in death." [*Id*. at 9, 11–12 (quoting *United States v. Brazier*, 933 F.3d 796, 801 (7th Cir. 2019)]. He cites one Sixth Circuit decision and several out-of-circuit decisions in support of his argument. [*Id*. (citing *Knight*, 936 F.3d at 498; *United States v. Walker*, 934 F.3d 375, 379 (4th Cir. 2019); *United States v. Mathis*, 932 F.3d 242, 267 (4th Cir. 2019); *United States v. Thompson*, No. 17-4131, 2019 WL 5704693, at *1 (4th Cir. Nov. 5, 2019))]. Petitioner, for instance, cites the Sixth Circuit's decision in *Knight*, 936 F.3d at 498, for the proposition that "[b]inding Sixth Circuit authority holds that kidnapping does not constitute a crime of violence under Section 924(c)." [*Id*. at 9].[15] He also cites two Fourth Circuit cases and one Seventh Circuit case in support of his argument that "[a]ppellate courts post-*Davis* held that physical force is not necessarily required to commit kidnapping pursuant to the statutory definition, due to the inclusion of the words 'inveigling or decoying.'" [*Id*. (citing *Brazier*, 933 F.3d at 801; *Mathis*, 932 F.3d 242; *Thompson*, 2019 WL 5704693 at *1)].

But none of the courts in these cases squarely decided the issue presently before this Court: whether kidnapping *resulting in death* under § 1201(a) qualifies as a crime of violence. Instead, in the cases Petitioner cites, the defendants were convicted of simple kidnapping under § 1201(a),

---

[15] The Sixth Circuit in *Knight* did not decide whether kidnapping resulting in death is a crime of violence under § 924(c). Rather, the defendant was convicted of *simple* kidnapping under § 1201(a). In addition, the Sixth Circuit did not appear to make a substantive determination as to whether simple kidnapping under § 1201(a) is a crime of violence; it did not apply the categorical approach. Rather, the Sixth Circuit vacated the petitioner's firearms conviction under § 924(c) because the Government *conceded* that simple kidnapping under § 1201(a) was not a crime of violence. 936 F.3d at 497 ("The government concedes that under *Davis* kidnapping in violation of 18 U.S.C. § 1201(a) is not a 'crime of violence' and thus Knight's conviction under § 924(c) for using a firearm during and in relation to kidnapping must be vacated.").

and the courts therefore answered whether simple kidnapping qualifies as a crime of violence.[16]

*See Brazier*, 933 F.3d at 800–01 (holding that simple kidnapping under § 1201(a) does not qualify as a crime of violence because it "may be accomplished without force"); *Walker*, 934 F.3d at 375 (same); *Thompson*, 2019 WL 5704693 at *1–*2 (same).

In addition, the offense of kidnapping resulting in death is meaningfully different from the offense of simple kidnapping under § 1201(a) because, as the Government points out, § 1201(a) is divisible, [*see* Doc. 46 at 6 (stating that Petitioner's arguments do "not meaningfully address the divisibility of the kidnap[p]ing statute as between kidnap[p]ing resulting in death and [simple] kidnap[p]ing"). *Cf. Rafidi*, 829 F.3d at 446 ("[A] violation of § 111(*b*) involving a deadly weapon is meaningfully different than a violation of § 111(a), by itself." (emphasis in original)).  As the Court noted in the previous section, the Government must prove an additional element to obtain a conviction for kidnapping resulting in death, *i.e.*, causation, that is not necessary to obtain a conviction for simple kidnapping.  The Court, therefore, disagrees with Petitioner that it should apply the same logic here that other courts have applied when determining whether simple kidnapping under § 1201(a) qualifies as a crime of violence.

In a similar vein, Petitioner argues that, since *Davis*, the Government has conceded that simple kidnapping under § 1201(a) does not satisfy § 924(c)'s elements clause—concessions that Petitioner claims should also extend to kidnapping resulting in death.  [*See* Doc. 43 at 10–12]. In support of his position, he cites numerous in-circuit and out-of-circuit opinions in which the

---

[16] In *Mathis*, the Fourth Circuit determined whether the defendant's conviction for kidnapping under Virginia law, not federal kidnapping under 18 U.S.C. § 1201(a), qualifies as a crime of violence.  932 F.3d at 267–68 ("We conclude that kidnapping under Virginia law does not qualify categorically as a crime of violence under the force clause.").  It is unclear, therefore, how *Mathis* advances Petitioner's argument.

Government has conceded that *simple* kidnapping under § 1201(a) is not a crime of violence under § 924(c)'s element clause.  [*Id.* (citing *United States v. Nobles*, No. 12-00090-KD-B, 2020 WL 831141, at *3 (S.D. Ala. Feb. 19, 2020); *Augustin v. United States*, Nos. 1:19-cv-328; 1:15-cv-237; 1:09-cr-187, 2020 WL 207942, at *1 (E.D. Tenn. Jan. 14, 2020); *Bufkin v. United States*, 800 F. App'x 436 (7th Cir. 2020); *United States v. Sanford*, 779 F. App'x 568 (10th Cir. 2019); *Walker,* 934 F.3d at 375; *United States v. Morgan*, 775 F. App'x 456 (10th Cir. 2019); *United States v. Khamnivong*, 779 F. App'x 482 (9th Cir. 2019); *United States v. Campbell*, 783 F. App'x 311 (4th Cir. 2019))].[17]  According to Petitioner, "[i]f the Government takes the contrary position in relation to Mr. Taylor, it would depart from a consistent series of concessions across the nation in cases relating to kidnapping as a predicate offense under Section 924(c)."  [*Id.* at 11–12].

The Government, however, is not taking a contrary position as to the predicate offense of simple kidnapping under § 1201(a).  For instance, in its response brief, the Government states that it "readily concedes, as it has done in other cases, that [simple] kidnap[p]ing. . . does *not* constitute

---

[17] In a footnote, Petitioner also cites several out-of-circuit district-court cases as examples in which the "Government has continually conceded that kidnapping does not fall within the [elements] clause."  [Doc. 43 at 11 n.4].  But again, the statute underlying the petitioners' convictions in those cases was for simple kidnapping rather than kidnapping resulting in death under § 1201(a).  [*See id.* (citing *Robinson v. United States*, No. 12-0009-KD-C, 2019 WL 4855161, at *6–*7 (S.D. Ala. Sept. 30, 2019) (holding that simple kidnapping under § 1201(a) is not a crime of violence under the elements clause of § 924(c)); *Hines v. United States*, No. 1:16cv511-MHT, 2019 WL 4780789, at *1 (M.D. Ala. Sept. 30, 2019) ("The parties agree, and the court finds . . . petitioner's underlying conviction of [simple] kidnapping in violation of 18 U.S.C. § 1201(a) does not qualify as a crime of violence under the elements clause of § 924[.]" (internal quotation marks and citations omitted)); *Simpson v. United States*, 3:16-cv-483-GCM, 2019 WL 4859068, at *2 (W.D. N.C. Oct. 1, 2019) ("The Government correctly concedes that it [simple kidnapping under § 1201(a)] is not [a crime of violence]."); *United States v. Davisson*, No. 2:16-cr-00265-GMN-NJK, 2019 WL 7580375, at *1 (D. Nev. Dec. 30, 2019) ("[T]he United States concedes that [simple] kidnapping does not qualify as a crime of violence[.]"); *United States v. Dugas*, No. 5:03-cr-29/MCR/MJF, 2020 WL 535696, at *3 (N.D. Fla. Jan. 31, 2020) ("Kidnapping is not a proper predicate for a § 924(c) conviction[.]").

a crime of violence under § 924(c)(3)(A)." [Doc. 46 at 4 n.2 (emphasis added)]. But the Government continues: "That concession does *not* require a concession with regard to kidnap[p]ing resulting in death, which has different elements." [*Id*. (emphasis added)]. And indeed, in the cases that Petitioner cites, the Government conceded that *simple* kidnapping under § 1201(a), rather than kidnapping resulting in death, could not qualify as a crime of violence.[18] The Court, therefore, sees no reason to extend the Government's past concessions regarding simple kidnapping to kidnapping resulting in death.

Next, Petitioner argues that § 1201(a)'s death-results provision "does not convert [simple] kidnapping into a crime of violence" because mere proof of causation does not necessarily require the *use* of physical force. [Doc. 43 at 12]. In support of his position, Petitioner cites decisions from the Fourth Circuit Court of Appeals in which the court held that an offense that requires proof that an offender causes injury does not necessarily require the *use* of force. [*Id*. at 12–13 (citing *United States v. Battle*, 927 F.3d 160, 166 (4th Cir. 2019) ("It is true that a crime may result in bodily injury without involving the use of force[.]" (internal quotation marks omitted)); *United*

---

[18] *See Augustin*, 2020 WL 207942 at *2 ("Petitioner argues, and the Government agrees, that Petitioner's federal kidnapping conviction only qualified as a crime of violence for the purposes of § 924(c) based on the now-unconstitutional residual clause."); *Bufkin*, 800 F. App'x at 439 (noting that the "United States . . . conceded that in light of *Davis*, using a firearm to kidnap a victim does not violate 18 U.S.C. § 924(c)" (internal quotation marks omitted)); *Khamnivong,* 779 F. App'x at 484 ("The government does not contest that [simple] kidnapping is not a crime of violence under the remaining force [elements] clause."); *Campbell*, 783 F. App'x 311–12 ("The parties thus agree that Count 2 should be vacated because federal kidnapping does not qualify as a crime of violence under § 924(c)(3) in light of *Davis*[.]"); *Nobles*, 2020 WL 831141 at *3 ("The United States responds that guidance from the United States Department of Justice binds it to agree that [simple] kidnapping is not categorically a 'crime of violence' under the elements clause. Thus, the United States does not contest Nobles' motion."); *Robinson*, 2019 WL 4855161 at *6 ("The United States explained that the United States Department of Justice had issued specific guidance regarding the federal kidnapping statute after *Davis*, which necessitated withdrawal of" its initial argument that simple kidnapping was a crime of violence under § 924(c)(3)(A)).

*States v. Covington*, 880 F.3d 129, 134 (4th Cir. 2018); *United States v. Middleton*, 883 F.3d 485, 491 (4th Cir. 2018); *United States v. McNeal*, 818 F.3d 141, 156 n.10 (4th Cir. 2016); *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012))].

Beginning with *Torres-Miguel*—which Petitioner appears to rely on most heavily [*see id*. at 12]—the issue before the Fourth Circuit was whether a California statute qualifies as a crime of violence within the meaning of the United States Sentencing Guidelines ("the guidelines"). 701 F.3d at 166. Similar to § 924(c)'s elements clause, the guidelines define "crime of violence," as "any other offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id*. at 170 (quoting U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (emphasis omitted)). The California offense for which the defendant was convicted punishes an offender who, in relevant part, "willfully threatens to commit a crime which *will result* in death or great bodily injury to another person.'" *Id*. at 167–68 (quoting Cal. Penal Code § 422(a) (emphasis in original)).

The Fourth Circuit determined that the California statute did not qualify as a crime of violence under the guidelines because "[a]n offense that *results* in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of a crime of violence." *Id*. at 168 (emphasis in original). In other words, "a crime may *result* in death or serious injury without involving *use* of physical force." *Id*. (emphasis in original). Therefore, the Fourth Circuit held the statute was too broad to qualify as a crime of violence under the guidelines.

Petitioner also cites *Middleton*, in which the Fourth Circuit determined whether involuntary manslaughter under South Carolina law qualifies as a crime of violence under the ACCA's elements clause. 883 F.3d at 487. The South Carolina involuntary manslaughter statute

criminalizes the killing of "another person without malice and unintentionally while . . . engaged in either (1) an unlawful activity not amounting to a felony and not naturally tending to cause death or great bodily harm, or (2) a lawful activity with a reckless disregard of the safety of others." *Id*. at 489 (internal quotation marks and citation omitted). The Government argued "that *causing* injury categorically mean[t] violent force was *used*." *Id*. at 490 (emphasis added). The Fourth Circuit, however, rejected this argument, stating "[it] does not follow that any action leading to bodily injury, through however attenuated a chain of causation, necessarily qualifies as a use of violent physical force against the person of another." *Id*. at 492 (stating that "the Government erroneously conflates the use of violent force with the causation of injury"). That is, the Fourth Circuit determined that causation of injury or death was not the same as *use* of force, and because an offender could commit involuntary manslaughter non-violently, the statute did not satisfy the ACCA's elements clause. *Id*. at 491. Accordingly, the Fourth Circuit held that South Carolina involuntary manslaughter swept more broadly than the physical force required by the ACCA. *Id*. at 492.

*Torres-Miguel* and *Middleton*, however, are not particularly persuasive in light of Sixth Circuit jurisprudence that is binding on this Court. Specifically, this Court is unaware of a case, nor does Petitioner cite one, in which the Sixth Circuit has applied the same logic as the Fourth Circuit in *Torres-Miguel* or *Middleton*. And although the Sixth Circuit has not squarely decided the exact issue before this Court, Sixth Circuit jurisprudence seems to support that kidnapping resulting in death under § 1201(a)—which requires proof that the offender caused the death of another—necessarily involves the use of violent physical force as contemplated by § 924(c)(3)(A). *Cf. United States v. Collins*, 799 F.3d 554, 597 (6th Cir. 2015) ("We have previously held that crimes which require proof of physical injury necessarily have as an element the use, attempted

use, or threatened use of physical force against the person of another and thus qualify as crimes of violence under the elements clause of the ACCA." (internal quotation marks and citation omitted)).

As noted earlier in this opinion, to obtain a conviction for kidnapping resulting in death under § 1201(a), the government must prove the first two elements for simple kidnapping: that the offender (1) unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away a person, and (2) held a person "for ransom or reward or otherwise." § 1201(a); *see Small*, 988 F.3d at 249–52 (discussing the elements necessary for a conviction for simple kidnapping under § 1201(a)). The government must also satisfy the "jurisdictional requirement" under § 1201(a), *Burnette*, 170 F.3d at 571—that the offender "willfully transported" the person "in interstate or foreign commerce," or the offender traveled in such commerce or used a means of such commerce, § 1201(a)(1).

The parties agree—and therefore the Court need not determine—that simple kidnapping under § 1201(a) is not a crime of violence under § 924(c)(3)(A). But again, the government must also prove a fourth element to obtain a conviction for kidnapping resulting in death under § 1201(a): the additional element that the offender was the but-for cause of another's death during the commission of the kidnapping. *See Burrage*, 571 U.S. at 214 ("a phrase such as 'results from' imposes a requirement of but-for causation"). As the Government explains in its brief:

> To prove the offense of kidnap[p]ing resulting in death, the government has to prove that the victim was subjected to 'physical force' within the meaning of § 924(c)(3)(A). The requirement that death results from the kidnap[p]ing requires a causal connection between the kidnap[p]ing and the death . . . And establishing that connection will, as in this case, require proof that force capable of causing physical pain or injury . . . was used[.]

[Doc. 46 at 6 (citing *Burrage*, 571 U.S. at 214)]. Indeed, the Supreme Court in *Burrage* has explained that but-for causation "requires proof that the harm [*i.e.*, death] would not have occurred

32

in the absence of . . . the defendant's conduct." 571 U.S. at 210–11 (internal quotation marks and citations omitted)). And causing the death of an individual necessarily requires the use of *violent* physical force capable of causing physical pain or injury to another person as contemplated by § 924(c)(3)(A). *See Johnson*, 559 U.S. at 134 (defining "physical force" as "*violent* force—*i.e.*, force capable of causing physical pain or injury to another person" (emphasis in original)).

In addition, an offender "must show a realistic probability, not a theoretical possibility, that the" government "would apply its statute to conduct that falls outside the generic definition of a crime." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193–94 (2007). To "show that realistic probability," the Supreme Court has stated that an offender "must at least point to his own case or other cases in which the . . . courts in fact *did* apply the statute in the special (nongeneric) manner for which he argues." *Id*. at 193 (emphasis added). "The application of legal imagination to a statute's language" is not enough to show that an underlying offense "falls outside the generic definition of a crime." *Id*.

According to Petitioner, there is a realistic probability that kidnapping resulting in death sweeps more broadly than § 924(c)(3)(A) permits because there are several "realistic scenarios" in which an offender may cause the death of another accidentally, negligently, or by using nonviolent force:

- If a father whose parental rights have been terminated abducts his child without force from the custodial parent in the District of Columbia and then, after crossing over into Maryland, drives recklessly and gets into a car accident that results in the child's death, he is guilty of kidnapping resulting in death without using, attempting to use, or threatening to use force.

- If a passenger gets into a taxi in Maryland and dies when she jumps from the cab in Virginia realizing the driver is abducting her and taking her far away from her requested destination, the driver is

similarly guilty of kidnapping resulting in death, even though he neither used, attempted to use nor threatened to use force.

- If a man lures a child into a car from a school playground in Virginia, takes the child to a remote location in Maryland and keeps her there for several days before she suddenly dies because, unknown to the man, she is diabetic and has not received her insulin, the man is guilty of kidnapping resulting in death—again, despite not having used, attempted to use, or threatened to use force.

[Doc. 43 at 13–14]. Citing Supreme Court and Sixth Circuit case law, the Government responds that courts must refrain from using legal imagination to treat an offense as categorically overbroad. [Doc. 46 at 8 (citing *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013); *Chaney v. United States*, 917 F.3d 895, 902 (6th Cir. 2019); *United States v. Patterson*, 853 F.3d 298, 304 (6th Cir. 2017))]. The Government further states that Petitioner "has identified no case"—and that it "knows of none—in which a court found the death-results element of the offense of [§ 1201(a)]" requires "no use of physical force." [*Id.* (citing *Duenas-Alvarez*, 549 U.S at 193; *United States v. Hill*, 890 F.3d 51, 56 (2d Cir. 2018))].

In Petitioner's reply brief, he disagrees with the Government's position that he must "supply *a* case" to satisfy the realistic-probability standard for two reasons. [Doc. 49 at 4 (emphasis added)]. First, he states that "the clear language of § 1201(a) and the absence of a *mens rea* requirement . . . demonstrate[s] a 'realistic probability' that the statute can be used in such a manner," *i.e.*, "to prosecute accidental or negligent conduct resulting in death." [*Id.* at 4, 5 n.5]. Second, he argues that this Court "merely needs to look at . . . pronouncements of courts that have applied the statute to determine whether the law contemplates the possibility of prosecution." [*Id.*

at 5 (citing *United States v. McGrattan*, 504 F.3d 608, 614–15 (6th Cir. 2007); *United States v. Lara*, 590 F. App'x 574, 584 (6th Cir. 2014))].[19]

The parties therefore dispute how Petitioner must satisfy the realistic-probability standard that the Supreme Court and Sixth Circuit have applied when determining whether offenses categorically qualify as crimes of violence. The Government, for instance, cites *Chaney* and *Patterson* for the proposition that an offender must cite a case to satisfy the realistic-probability standard. [*See* Doc. 46 at 8]. In *Chaney*, 917 F.3d at 895, the Sixth Circuit determined whether the petitioner's prior conviction for attempted unarmed robbery under Michigan law qualifies as a violent felony within the meaning of the ACCA's elements clause. The petitioner argued that the words "force and violence" under the Michigan statute did not mean "violent force" within the meaning of the ACCA. *Id*. at 900 (citing Mich. Comp. Laws § 750.530 (1981)). In support of his position, the petitioner cited two Michigan intermediate appellate court decisions that interpreted the words "force and violence," albeit in the context of an assault statute, as meaning that an offender could use *any* degree of physical force, rather than violent force, so as to harm or embarrass someone. *Id*. at 901.

The Sixth Circuit rejected the petitioner's argument. It stated that "[e]ven if a more creative mind could imagine such a scenario," in which an offender committed unarmed robbery by merely using physical force to embarrass the victim, "there must be a 'realistic probability, not a theoretical possibility, that [Michigan] would apply its statute to conduct that' is less than violent force." *Id*. at 902 (citing *Duenas-Alvarez*, 549 U.S. at 193; *Perez v. United States*, 885 F.3d 984,

---

[19] Petitioner refers to the *McGrattan* case as "*McGraham*." [Doc. 49 at 5]. This appears to be a typo because his citation is otherwise consistent with the *McGrattan* case.

990 (6th Cir. 2018)). Because the petitioner had "not pointed to any Michigan case that applied the statute to nonqualifying force," he had "not shown that realistic probability." *Id*.

Similar to *Chaney*, the Sixth Circuit in *Patterson*, 853 F.3d at 302, noted that the defendant failed to cite a case supporting his argument that the underlying offense was overbroad. The issue before the Sixth Circuit in *Patterson* was whether the defendant's conviction for aggravated robbery under Ohio law qualifies as a violent felony under the ACCA's elements clause. *Id*. at 302–03. The Ohio aggravated-robbery statute provides the following:

> (A) No person, in attempting or committing a theft offense, ... or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.

*Id.* at 302 (quoting Ohio Rev. Code § 2911.01). The defendant argued that the Ohio aggravated-robbery statute was overbroad because its "language . . . would allow Ohio to convict someone who robs a store while just happening to be carrying a weapon openly, as Ohio allows." *Id*. at 303. The Sixth Circuit rejected the defendant's argument because he "point[ed] to no case where Ohio ha[d] convicted someone of aggravated robbery" under those circumstances. *Id*. at 304. The Sixth Circuit recognized that it could not indulge in "imaginative flights" and held that the Ohio statute qualifies as a violent felony under the ACCA's elements clause. *Id*. (internal quotation marks and citations omitted).

The two Sixth Circuit decisions Petitioner cites tend to support that an offender need not cite a case to satisfy the realistic-probability standard. But having reviewed these decisions, the Court finds them less persuasive than those the Government cites. For instance, in *Lara*, 590 F. App'x at 583–84, an unpublished opinion, the issue before the Sixth Circuit was whether the

defendant's prior conviction for Tennessee aggravated burglary qualifies as a crime of violence under the guidelines. *Id*. at 574. The defendant argued that the Tennessee aggravated-burglary statute could not qualify as a crime of violence because Tennessee's definition of "habitation" was broader than the generic definition of "burglary of a dwelling" under the guidelines. *Id*. at 575, 577.

The plaintiff argued that the defendant failed to cite a single Tennessee decision showing that the Tennessee aggravated-burglary statute was overbroad. *Id*. at 584. According to plaintiff, the defendant's failure to cite a case was fatal to his argument that the state statute was not a crime of violence under the guidelines. *Id*. The Sixth Circuit disagreed with the plaintiff, but that was because the Sixth Circuit determined that the plain meaning of the state statute at issue supported a realistic probability that the State could apply it in the special manner that the defendant argued, *i.e.*, that the Tennessee aggravated-burglary statute could include burglaries of unattached and uninhabited structures. *Id*. ("[T]here appear to be no cases in Tennessee that have applied § 39-14-403 to unattached, uninhabited structures. The meaning of the statute, however, is plain," and "[w]e should not ignore the plain meaning of the statute."). The plain meaning of the statute at issue in *Lara*, therefore, supported the defendant's position that the statute was overbroad. *Id*.

Citing *Lara*, Petitioner argues that he need not "supply a case" to show a realistic probability that kidnapping resulting in death is overbroad because the "clear language" of § 1201(a)'s death-results provision indicates that "the statute can be used" to criminalize accidental or negligent death during a kidnapping. [Doc. 49 at 4, 5 n.5]. The Court, however, does not agree that the plain or "clear language" of § 1201(a)'s death-results provisions supports a realistic probability that the minimum conduct criminalized by kidnapping resulting in death is merely negligent or accidental conduct. *Id*. As this Court already stated in the previous section, § 1201(a)

37

appears to be a general intent crime, which, at the very least, "requires the knowing commission

of an act that the law makes a crime." *Kimes*, 246 F.3d at 807 (quoting *Kleinbart*, 27 F.3d at 592

n.4). In addition, Petitioner lacks compelling authority supporting his contention that the minimum

conduct criminalized by kidnapping resulting in death is mere negligent, accidental, or nonviolent

conduct simply because the death-results provision is lacking an express *mens rea* requirement of

intent to kill.[20] *Cf. United States v. Pena*, 161 F. Supp. 3d 268, 283–84 (S.D. N.Y. 2016) ("[That]

the prosecution need not prove a *specific intent* to *cause* fear . . . . does not mean that the bank

robbery [can be] accomplished through 'negligent or merely accidental conduct.'" (quoting

*Leocal*, 543 U.S. at 9) (emphasis added)).

In the second case Petitioner cites, *McGrattan*, 504 F.3d at 609–10, the defendant pleaded

guilty to a misdemeanor attempted violation of an Ohio statute that punishes an individual who

possesses or views any material or performance that shows a minor in a state of nudity, "where

---

[20] The Court wishes to clarify this point. Petitioner appears to read the death-results provision of § 1201(a) in isolation from the rest of the statute. [*See* Doc. 43 at 15–16 (stating that "death results from a kidnapping" does not require proof "that the defendant intentionally or knowingly killed the victim" and therefore, "a jury could return a guilty verdict on a kidnapping result[ing] in death charge even if the defendant caused the victim's death . . . negligently"); *see also* Doc. 49 at 3 ("The 'resulting in death' element contains no *mens rea* requirement and thus the Government may prosecute those who, in the course of committing kidnapping, cause of the death of the victim by accident or negligence.")]. But as this Court already stated, Sixth Circuit jurisprudence seems to support that § 1201(a) is a general intent crime, meaning it requires the *knowing* commission of a crime. *Kimes*, 246 F.3d at 807. And this Court is aware of a case in which the Fourth Circuit declined to isolate the statute's *mens rea* requirement from its "'death-results' element" when determining whether the offense qualified as a crime of violence; the Fourth Circuit, instead, "look[ed] at the elements of [the] offense as a whole." *Roof*, 10 F.4th at 401–02 ("[Petitioner] argues that the . . . *mens rea* . . . does not attach to the death results element . . . . But we do not view each element of the crime in isolation. [Petitioner]'s rigid division of the elements ignores the interrelated character that elements of a crime can share, and his farfetched examples of potential § 249(a)(1) violations illustrate the absurd results that arise from analyzing each element in the way that he wants." (internal quotation marks and citations omitted)).

such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals[.]" *Id*. at 611 (internal quotation marks and citations omitted). Title 18 of the United States Code, § 2252A(b)(1), provides an enhanced penalty if an individual has a prior conviction for possessing, reviewing, or distributing any visual depiction of a minor engaging in "lascivious exhibition of the genitals or pubic area of any person." *Id*. The Sixth Circuit determined whether the defendant's prior conviction under Ohio law involved depictions of "lascivious exhibition of the genitals" within the meaning of § 2252A(b)(1). *Id*. at 612 (stating that "the only way in which it [the Ohio statute] will categorically fall within the federal child pornography definition is if crimes under the statute must involve lascivious exhibition of the genitals or pubic area of any person" (internal quotation marks and citations omitted)).

The Sixth Circuit turned to the Ohio courts' interpretation of "lewd exhibition" to determine if the Ohio statute was overbroad. *Id*. at 613. It noted that it was unaware of any decision from the Ohio Supreme Court that had directly addressed the issue before it. *Id*. at 614. The Sixth Circuit nonetheless determined that there was a realistic probability that the Ohio statute "would be applied to someone who possessed depictions of nudity which were lewd, but which did not involve the genitals" because, under Ohio law, nudity "clearly covers representations . . . [of] the buttocks or breasts." *Id*. at 614. Accordingly, although there was no Ohio case that addressed the precise issue before it, the Sixth Circuit determined that "Ohio courts ma[d]e[] it clear that" the state statute could cover forms of nudity other than depictions of the genitals. *Id*. (stating that "such a possibility is contemplated by the law"). Thus, the Sixth Circuit held that the Ohio statute was overbroad and could not satisfy the federal statute's definition of child pornography. *Id*.

Citing *McGrattan*, Petitioner states that this Court "merely needs to look at . . . pronouncements of courts that have applied the statute [§ 1201(a)] to determine whether the law contemplates the possibility of prosecution." [Doc. 49 at 5 (citing *McGrattan*, 504 F.3d at 614–15]. He appears to rely on *Mayhew*—an in-circuit district-court decision—as an example in which a court has applied kidnapping resulting in death under § 1201(a) in the special manner that he argues. [*See id*. at 4 (stating that "[c]ase law also makes clear that one can be prosecuted" for kidnapping resulting in death "on the basis of negligent or accidental conduct" (citing *Mayhew*, 380 F. Supp. 2d at 959–60))]. In *Mayhew*, 380 F. Supp. 2d at 959–60, the district court interpreted § 1201(a)'s death-results provision and held that the language of this provision does not require the government to prove "intent to kill." It held that § 1201(a)'s death-results provision, rather, only contains an element of causation. *Id*.

The Court, however, does not agree with Petitioner that *Mayhew* "makes clear that one can be prosecuted" for kidnapping resulting in death "on the basis of negligent or accidental conduct." [Doc. 49 at 5 (citing *Mayhew*, 380 F. Supp. 2d at 959–60)]. That the district court in *Mayhew* held that § 1201(a)'s death-results provision does not require the government to prove intent to kill does not necessarily mean that the law contemplates the possibility of prosecution when an offender accidentally, negligently, or nonviolently causes the death of another during a kidnapping.[21] *Cf.*

---

[21] The issue before the district court in *Mayhew*, 380 F. Supp. 2d at 939, was not whether kidnapping resulting in death under § 1201(a) is categorically a crime of violence. Rather, there were various motions pending before the court, and among them was the defendant's motion to declare § 1201(a) unconstitutional. *Id*. According to the defendant, the death-results provision under § 1201(a) is unconstitutional because it requires the government to prove "neither proximate cause nor mens rea." *Id*. at 957. Although the district court agreed with the defendant that § 1201(a)'s death-results provision does not require the government to prove "intent to kill," it determined that the government must prove an element of causation. *Id*. at 959. It therefore disagreed with the defendant that § 1201(a)'s death-results provision is unconstitutional. *Id*. at 960. Accordingly, there is nothing in the *Mayhew* decision suggesting that the language of §

40

*Pena*, 161 F. Supp. 3d at 283–84 ("[That] the prosecution need not prove a *specific intent* to *cause* fear . . . . does not mean that the bank robbery [can be] accomplished through 'negligent or merely accidental conduct.'" (quoting *Leocal*, 543 U.S. at 9) (emphasis added)).  For these reasons, the Court finds *McGrattan* and *Lara* distinguishable from Petitioner's case.

Although Petitioner argues that he need not summon a case to satisfy the realistic-probability standard, in his reply brief, he cites the Court of Appeals for the Ninth Circuit's decision in *McDuffy*, 890 F.3d at 796, arguing it shows a realistic probability that the Government "will use Section 1201 to criminalize accidental or negligent death that results from kidnapping." [Doc. 49 at 4–5].  The Ninth Circuit summarized the facts in *McDuffy* as follows:

> McDuffy entered a Bank of America branch in Reno, Nevada, brandished a handgun, and demanded money from one of the bank tellers.  The teller took the money from the till, put it in a plastic bag, and handed it to McDuffy.  At that moment, Charles Sperry (a bank customer) attempted to grab the gun from McDuffy.  However, as he went to grab the gun, [McDuffy] shot him in the chest. Sperry subsequently died from his wound.  After shooting Sperry, McDuffy did not end the robbery. Instead, he calmly approached another teller and forced her to hand over the money from her till. With the money in hand, McDuffy then fled the bank.  An off-duty police officer who was in the bank during the robbery pursued McDuffy and apprehended him at a nearby bus stop. !

890 F.3d at 798 (internal quotation marks omitted).  The Government charged the defendant with federal bank robbery resulting in death in violation of 18 U.S.C. § 2113(e) and several lesser-included offenses under § 2113.  *Id*.  At trial, the defendant provided "some evidence indicating

---

1201(a)'s death-results provision criminalizes mere negligent or accidental death for purposes of this Court's crime-of-violence analysis.  *See Duenas-Alvarez*, 549 U.S. at 193 ("The application of legal imagination to a statute's language" is not enough to show that an underlying offense "falls outside the generic definition of a crime.").

that he accidentally discharged the firearm." *Id*. at 802 n.2. The jury, nonetheless, convicted the defendant of bank robbery resulting in death under § 2113(e). *Id*. at 798, 802 n.4.[22]

None of Petitioner's hypothetical scenarios, however, are on point with the defendant's conduct or the way the individual died in *McDuffy*. *Cf. United States v. Scott*, 990 F.3d 94, 106 (2d Cir. 2021) (recognizing that "simply . . . hypothesizing some non-violent scenario . . . that is nowhere reflected in caselaw" cannot satisfy the realistic-probability standard). Although in *McDuffy* the defendant's theory at trial was that the killing was accidental, he still brandished a handgun during the commission of a robbery, discharged the handgun as a customer was attempting to disarm him, "shot [the customer] in the chest," and killed the customer. 890 F.3d at 798. The Court, therefore, does not agree with Petitioner's contention that *McDuffy* shows a realistic probability that the Government "will use Section 1201 to criminalize accidental . . . death that results from kidnapping." [Doc. 49 at 5]; *see United States v. McDuffy*, 194 F. Supp. 3d 1054,

---

[22] Petitioner, citing *McDuffy*, states that "[c]ase law makes clear that one can be prosecuted under federal statutes that contain the language 'resulting in death' on the basis of accidental or negligent conduct." [Doc. 49 at 4]. He quotes the following language from the Ninth Circuit's decision: "In 18 U.S.C. § 2113(e), Congress mandated an enhanced punishment for an individual who kills a person in the course of committing a bank robbery. We conclude the enhancement applies when the bank robber *accidentally* kills someone." [*Id*. (citing *McDuffy,* 890 F.3d at 797–98)]. But having reviewed *McDuffy*, Petitioner seems to apply this quote outside of its intended factual context. For instance, the issue before the Ninth Circuit in *McDuffy* was not whether § 2113(e) is a crime of violence. *McDuffy*, 890 F.3d at 798. Rather, the issue before it was limited to whether the district court's jury instruction was erroneous. *Id*. at 796–98. In determining whether the jury instruction was erroneous, the Ninth Circuit interpreted the language of § 2113(e), which is silent regarding "an explicit mens rea requirement." *Id*. at 798. It determined that, based on § 2113(e)'s text and structure, Congress intended to omit a *mens rea* requirement. *Id*. at 801. It therefore held that the district court did not err "in instructing the jury that § 2113(e) applies as long as the bank robber kills someone in the course of the bank robbery, regardless of whether the killing was accidental." *Id*. at 801 (emphasis added). Thus, the Ninth Circuit's characterization of "accidental killings" under § 2113(e) was used in the context of deciding the narrow issue before it, not in deciding whether § 2113(e) is categorically a crime of violence—an issue that was not before the Ninth Circuit in *McDuffy*. *Id*. at 798.

1061–61, 1063 (D. Nev. 2016) (holding that § 2113(e), "a crime of general intent," is a crime of violence under § 924(c)(3)(A)).[23]

Without a case showing such a realistic probability, Petitioner invites the Court to resort to conjecture to envision the ways the Government could, in theory, prosecute someone for kidnapping resulting in death under § 1201(a) who accidentally or nonviolently caused the death of another. But as the Government points out, the Sixth Circuit has routinely cautioned courts from indulging in such imaginative flights. *See Chaney*, 917 F.3d at 901–02 ("The categorical approach's focus on the minimum conduct criminalized by the . . . statute is not an invitation to apply legal imagination to the state offense." (internal quotation marks and citation omitted)); *Patterson*, 853 F.3d at 304 (recognizing that the defendant's hypotheticals fell "into the category of 'imaginative flights' that the Supreme Court cautioned us not to use in applying the categorical approach" (citations omitted)). In short, the realistic-probability standard is clear: it does not require this Court, or any court, to be prescient; rather, it requires Petitioner to come equipped to this Court with "cases in which the . . . courts in fact *did apply* [§ 1201(a)] in the special . . . manner for which he argues." *Duenas-Alvarez*, 549 U.S. at 193 (emphasis added). Petitioner simply has not satisfied this exacting standard, and § 1201(a)'s plain language does not exempt him from it, for all the reasons the Court has already stated.

---

[23] The *district* court in *McDuffy*, 194 F. Supp. 3d at 1060–61, squarely answered whether § 2113(e) is a crime of violence and held that it is under § 924(c)(3)(A). It rejected the defendant's argument that § 2113(e) could apply to accidental killings. *Id.* at 1060. The defendant argued that § 2113(e) "involve[s] a killing that does not require any intent because the killing could be reckless or *accidental*, and is broader than a crime of violence[.]" *Id.* (emphasis added). The district court stated that the defendant's argument was "tenuous." *Id.* ("McDuffy's additional argument regarding § 924(c)(3)(A)—that bank robbery with a dangerous weapon resulting in death is not a categorical crime of violence under § 924(c)(3)(A) because the offense need not involve intentional killing—is tenuous.").

In addition, the cases in which the Government has prosecuted an offender for kidnapping resulting in death under § 1201(a) strongly suggest that the offense requires the use of violent physical force.[24] *Cf. Chaney*, 917 F.3d at 902 (recognizing that "[t]he cases *most* on point strongly suggest that robbery requires violent force" (emphasis added)). These cases further undercut the Petitioner's position that the Government would prosecute someone for kidnapping resulting in death when an offender accidentally, negligently, or nonviolently caused the death of another. *See Fullum v. United States*, 756 F. App'x 568, 571 (6th Cir. 2018) ("This dearth of cases clarifies what the text leaves ambiguous: The statute requires the use, attempted use, or threatened use of violent force."). This Court, therefore, does not agree with Petitioner that there is a realistic

---

[24] This Court is only aware of cases in which the Government prosecuted an offender for kidnapping resulting in death under § 1201(a) when the offender violently caused an individual's death. And although the following cases are not an exhaustive list of examples in which the Government prosecuted someone for kidnapping resulting in death under § 1201(a), none of them show a realistic probability that the Government has prosecuted someone who accidentally or nonviolently caused an individual's death during the kidnapping. *See, e.g., Ruiz v. United States*, 990 F.3d 1025, 1027 (7th Cir. 2021) (kidnapping in which one of the victim's captors shot the seventeen-year-old victim in the stomach, locked him in a bathroom, and left him to bleed to death); *In re Hall*, 979 F.3d at 339 (capital case in which the captors kidnapped, raped, beat, and murdered sixteen-year-old girl by burying her alive); *Ross*, 969 F.3d at 836 (capital case in which the kidnapping victim died from multiple gunshot wounds); *United States v. Lazo*, 816 F. App'x 752, 757 (4th Cir. 2020) (kidnapping involving MS-13-related schemes in which the captors killed the victim by stabbing him fifty-one times and then dumped his mutilated body into a ravine); *United States v. Shields*, 480 F. App'x 381, 384–85 (6th Cir. 2012) (kidnapping in which the victim's captors beat him, locked him in the trunk of a car, and later shot and killed him); *Fulks v. United States*, 875 F. Supp. 2d 535, 588 (D.S.C. 2010) (capital case in which the kidnapping victim was tied up, raped, and killed); *United States v. Rodriguez*, 581 F.3d 775, 783–84 (8th Cir. 2009) (capital case in which the kidnapping victim was found in a drainage ditch, with her hands tied behind her back, her head encircled in a plastic bag, and she likely died from the slash wound to her neck, from asphyxiation, or from suffocation); *United States v. Montgomery*, 635 F.3d 1074, 1080–81 (8th Cir. 2011) (capital case involving the offender strangling a pregnant woman to death before extracting the fetus from the victim's body and the offender then kidnapping the fetus); *United States v. Mayhew*, 337 F. Supp. 2d 1048, 1052 (S.D. Ohio 2004) (kidnapping in which the offender shot the victim twice, killing her).

probability that the Government would prosecute someone for kidnapping resulting in death under § 1201(a) "in the special . . . manner for which he argues." *Duenas-Alvarez*, 549 U.S. at 193.

For the foregoing reasons, kidnapping resulting in death under § 1201(a) "has as an element the use, attempted use, or threatened use of [violent] physical force against the person or property of another" because it requires proof that the offender caused the death of an individual. § 924(c)(3)(A). It therefore satisfies the first requirement to qualify as a crime of violence under § 924(c)(3)(A).

### (ii) Argument 2: *Mens Rea*

In this section, the Court considers Petitioner's second argument and whether kidnapping resulting in death under § 1201(a) has the requisite *mens rea* to qualify as a crime of violence under § 924(c)(3)(A). As stated above, to qualify as a crime of violence under § 924(c)(3)(A), an offense must require the use of "violent force," *Johnson*, 559 U.S. at 140, *and* proof of at least "purposeful or knowing conduct," *Borden*, 141 S. Ct. at 1828. Mere reckless conduct is insufficient. *Id*. at 1825.

Petitioner argues that kidnapping resulting in death cannot qualify as a crime of violence under § 924(c)(3)(A) because the death-results provision lacks a "heightened *mens rea*"—*i.e.*, that a defendant intentionally or knowingly caused death. [Doc. 43 at 14–17]. In this section of Petitioner's brief, he argues that reckless conduct is the minimum conduct criminalized by § 1201(a) because, again, § 1201(a)'s death-results provision is silent regarding a *mens rea* requirement. [*See id*. at 16 ("[A] jury could return a guilty verdict on a kidnapping result[ing] in death charge even if the defendant caused the victim's death recklessly[.]"); *see also* Doc. 58 at 1 (reiterating that "because kidnapping resulting in death can be accomplished recklessly, it does not qualify as a crime of violence")].

In support of his argument, Petitioner cites numerous out-of-circuit opinions and one in-circuit opinion in which courts held that either: (1) offenses requiring mere negligent or reckless conduct are insufficient to qualify as a crime of violence or (2) § 1201(a)'s death-results provision and similarly worded provisions do not have a *mens rea* requirement of *intent* to cause death or bodily injury. [Doc. 43 at 15–16 (citing *United States v. Hodge*, 902 F.3d 420, 427, 430 (4th Cir. 2018) (holding that the defendant's "reckless-endangerment conviction . . . cannot do the job"); *McNeal*, 818 F.3d at 154; *United States v. Clarke*, 171 F. Supp. 3d 449, 456 (D. Md. 2016) (holding that "§ 924(c) imposes a *mens rea* requirement of at least knowing (as opposed to negligent or reckless) conduct"); *United States v. Barraza*, 576 F.3d 798, 807 (8th Cir. 2009) ("The statute does not require that death results from voluntary and intentional conduct, only that the 'death of any person results' in the course of the kidnapping." (quoting 18 U.S.C. § 1201(a)); *Fulks*, 875 F. Supp. 2d at 535 (stating that kidnapping resulting in death "has no *mens rea* requirement"); *Mayhew*, 380 F. Supp. 2d at 959–60 (holding that the death-results provision under § 1201(a) "does not require that the government prove mens rea" and does not require proof of "intent to kill"); *United States v. Woodlee*, 136 F.3d 1399, 1405 (10th Cir. 1998) (holding that 18 U.S.C. § 245(b) only requires proof that "defendants' illegal conduct *resulted* in bodily injury; not that the defendants intended bodily injury" (emphasis in original))].[25]

In his reply brief, Petitioner also cites *United States v. Poindexter*, 44 F.3d 406, 408–09 (6th Cir. 1995), in support of his argument that the Court should refrain from reading or "add[ing]

---

[25] *See also* Doc. 49 at 4 nn.3–4 (citing *United States v. Guillette*, 547 F.2d 743, 748–49 (2d Cir. 1976); *United States v. Hayes*, 589 F.2d 811, 821 (5th Cir. 1979) ("No matter how you slice it, 'if death results' does not mean 'if death was intended [under 18 U.S.C. § 242].'"); *United States v. Lewis*, 644 F. Supp. 1391, 1406 (W.D. Mich. 1986))].

an additional scienter requirement" into § 1201(a)'s death-results provision. [Doc. 49 at 3–4 (quoting *Poindexter*, 44 F.3d at 408–09)]. In *Poindexter*, the Sixth Circuit determined that 18 U.S.C. § 2113(e) "did not require a showing of intent to kill" because "the plain language of the statute says simply kills, and not intentionally kills." 44 F.3d at 409 (internal quotation marks omitted). The Sixth Circuit held, therefore, that "the legislature did not intend to add an additional scienter requirement to" the statute. *Id*.

The Government, however, does not argue that the Court should "add an additional scienter requirement" into § 1201(a)'s death-results provision based on the statute's congressional intent or its legislative history. *Poindexter*, 44 F.3d 406, 408–09. In addition, the Government does not appear to dispute that § 1201's death-results provision lacks an express *mens rea* requirement. [*See* Docs. 46, 61]. And as it already indicated earlier in this opinion, this Court agrees with Petitioner that § 1201(a)'s death-results provision only requires proof of causation. *See Mayhew*, 380 F. Supp. 2d at 959–60 (holding that the death-results provision under § 1201(a) "does not require that the government prove mens rea" and does not require proof of "intent to kill").

The Government, rather, makes two arguments, one of which it recognizes in its supplemental brief is no longer valid in light of *Borden*. [*See* Doc. 61]. In its initial brief, the Government argued that reckless conduct was sufficient to satisfy § 924(c)'s elements clause based on the Sixth Circuit's then-binding decision in *United States v. Verwiebe*, 874 F.3d 258, 261–62 (6th Cir. 2017). [Doc. 46 at 5]. In *Verwiebe*, the Sixth Circuit held that "crimes satisfied by reckless conduct categorically . . . include the 'use of physical force.'" *Id*. at 264. The Government acknowledges in its supplemental brief, however, that its argument "invoked then-

47

controlling precedent (now abrogated by *Borden*) for the proposition that reckless conduct is sufficient for a crime of violence." [Doc. 61 at 2].[26]

But the Government makes an alternative argument that it states is "unaffected by *Borden*." [*Id*.] The Government distinguishes between noncapital kidnapping resulting in death and capital kidnapping resulting in death and argues that the latter requires proof of intentional conduct. [*Id*.] Specifically, the Government maintains that *capital* kidnapping resulting in death requires proof that the defendant's conduct was *intentional* under the FDPA's statutory intent factors. [Doc. 46 (citing 18 U.S.C. § 3591(a)(2))]. In its supplemental brief, the Government reiterates its position, stating that Petitioner "was convicted of *capital* kidnap[p]ing resulting in death, meaning that the jury found at least one of the aggravating intent factors in 18 U.S.C. § 3591(a)(2), each of which requires proof of intentional rather than reckless conduct." [Doc. 61 at 1]. So, although the Government does not contradict Petitioner's position that § 1201's death-results lacks an express *mens rea* requirement of *intent* to cause death, the Government argues that the Court should import the statutory intent factors from the FDPA into § 1201(a). [Doc. 46 at 7 ("Capital kidnap[p]ing resulting in death, therefore, categorically has as an element—imported from 18 U.S.C. § 3591(a)(2)]—the use, attempted use, or threatened use of physical force.")].

The United States Court of Appeals for the First and Fifth Circuits addressed similar arguments in *Tsarnaev* and *In re Hall*, respectively, and the parties cite these two opinions in their supplemental briefs. [*See* Doc. 58 at 10 (citing *United States v. Tsarnaev*, 968 F.3d 24, 102–03 (1st Cir. 2020)); Doc. 61 at 2 (citing *In re Hall*, 979 F.3d at 345–46)]. Citing *Tsarnaev*, Petitioner

---

[26] The Supreme Court in *Borden* expressly abrogated the Sixth Circuit's decision in *Verwiebe*. 141 S. Ct. at 1818, 1830 ("[T]he classification of reckless crimes as violent felonies [does not] comport with the ACCA's purpose." (internal quotation marks omitted)).

argues that the Government cannot bootstrap the capital sentencing factors into the elements of § 1201(a) and that its "argument is antithetical to the categorical approach." [Doc. 62 at 2; *see* Doc. 49 at 2]. The Government, on the other hand, argues that this Court should reject *Tsarnaev* and, instead, adopt the Fifth Circuit's reasoning in *In re Hall*. [*See* Doc. 61 at 2–3].

In *Tsarnaev*, the First Circuit, in applying the categorical approach, declined to look past the statute of conviction when determining whether a predicate offense could qualify as a crime of violence. 968 F.3d at 102. The predicate offense underlying one of the petitioner's firearms convictions under § 924(c) was arson resulting in death, in violation of 18 U.S.C. § 844(i). *Id*. at 99. Similar to the Government in Petitioner's case, the Government in *Tsarnaev* argued that arson under § 844(i) was a crime of violence because "when the indictment charges arson as a *capital* crime, the jury must find as an element at least one of the FDPA's gateway-intent factors—each of which requires proof that the defendant engaged in *intentional* conduct." *Id*. at 101 (internal quotation marks omitted) (emphasis added). Therefore, the Government argued that § 844(i) had the requisite intent to qualify as a crime of violence. *Id*.

The First Circuit, however, disagreed with the Government's position. It noted that the jury did not have to find any of the gateway-intent factors under the FDPA to *convict* the petitioner for arson resulting in death under § 844(i); rather, the jurors considered these intent factors in determining the petitioner's sentence. *Id*. at 102–03. The First Circuit, therefore, declined to "look beyond the statute of conviction to an unrelated statutory scheme—like the FDPA" and import an element of intent into § 844(i). *Id*. at 102.

The Fifth Circuit's reasoning in *In re Hall*, however, differs from the First Circuit's reasoning in *Tsarnaev*. In *In re Hall*, the Fifth Circuit held that "[a]ny offense that incorporates the elements" of the FDPA's sentencing factors satisfies the elements clause. 979 F.3d at 345–46

("In sum, all federal *capital* charges must incorporate the required elements of § 3591(a)(2), and therefore necessarily satisfy the elements clause of § 924(c)." (emphasis added)). The Fifth Circuit, therefore, "ha[d] no difficulty concluding that *capital* kidnapping resulting in death is a crime of violence under the elements clause." *Id*. (emphasis added).

This Court finds the First Circuit's reasoning in *Tsarnaev* more persuasive. Despite *In re Hall*, this Court is reluctant to look at other statutory schemes to determine whether kidnapping resulting in death under § 1201 categorically qualifies as a crime of violence. For instance, importing elements from the FDPA into the underlying statute of conviction, as the Government proposes this Court should do, would appear to run afoul of the categorical approach, which the Supreme Court has explained requires courts to focus on the statutory elements of a *conviction*. *See Mathis*, 136 S. Ct. at 2245 (stating that, in applying the categorical approach, courts focus on "the elements of the offense forming the basis for the conviction"). And as Petitioner points out in his reply brief [Doc. 49] and reiterates in his supplemental brief [Doc. 62], "capital *sentencing* provisions [under the FDPA] . . . are relevant only *after* a jury convicts a defendant of the crime charged in the indictment." [Doc. 49 at 2 (emphasis in original)]; *see* § 3591(a) (discussing the statutory intent factors for imposing a death sentence after a "defendant has been found guilty").

Indeed, this Court did not instruct the jury of the statutory intent factors under the FDPA until the trial's penalty phase, *after* the jury returned a guilty verdict on all counts at the conclusion of the trial's guilt phase. [*See* 1:04-cr-160, Jury Charge, SEALED Doc. 876 at 177–93]. Thus, while the government must prove at least one of the statutory intent factors under the FDPA beyond a reasonable doubt before a court can impose a death *sentence*, proof that one of these factors exists is not necessary to support an underlying *conviction*. *See* § 3591(a)(2) (discussing the statutory intent factors necessary for consideration before imposing "a *sentence* of death" (emphasis

50

added)). This Court, therefore, does not find the Government's argument persuasive, and it declines to "look beyond the statute of conviction to an unrelated statutory scheme—like the FDPA—to add elements to" § 1201(a). *Tsarnaev*, 986 F.3d at 102.

Turning now to Petitioner's interpretation of *Borden*, he states the following in his supplemental brief: "[A]s now made clear by *Borden*, the use of force itself must meet a level of intentionality greater than recklessness. In other words, if, under the predicate statute, violence may result from reckless, rather than intentional, conduct, the offense categorically fails to qualify as a crime of violence under the elements clause." [Doc. 58 at 5 (citing *Borden*, 141 S. Ct. at 1834)]. Petitioner also maintains that "federal courts and the Government have accepted and applied that principle in *Borden*'s wake." [*Id*. at 5–6 (citing *Somers v. United States*, 15 F.4th 1049, 1051 (11th Cir. 2021); *United State v. Carter*, 7 F.4th 1039, 1041 (2021); *Roof*, 10 F.4th at 399–400; *United States v. Franciso Gonzales*, No. 21-2022 (10th Cir. July 21, 2021) (Doc. 010110551823))].

The Court agrees with Petitioner that the Supreme Court's holding in *Borden* indicates that offenses requiring mere proof of recklessness cannot satisfy § 924(c)(3)(A). 141 S. Ct. at 1834 ("Offenses with a *mens rea* of recklessness do not qualify as violent felonies under ACCA."). In addition, *Borden* clearly abrogated the Sixth Circuit's decision in *Verwiebe*, which the Government initially cited as binding authority in its response brief. *See id*. at 1818 ("abrogating . . . *Verwiebe*, 874 F.3d 258"). *Borden*, therefore, forecloses the Government's argument that mere reckless conduct can satisfy § 924(c)(3)(A).

But still, the Court does not agree with Petitioner that the minimum conduct criminalized by kidnapping resulting in death under § 1201(a) is reckless conduct simply because the statute's death-results provision lacks a *mens rea* requirement of *intent* to cause death. *Cf. Roof*, 10 F.4th

51

at 399–400 (rejecting the petitioner's argument that the court should isolate the *mens rea* requirement under 18 U.S.C. § 249(a)(1) from the statute's "death results" provision when determining whether the offense qualified as a crime of violence). As this Court has stated throughout this opinion, Sixth Circuit jurisprudence seems to support that § 1201(a) is a general intent crime because it "is silent insofar as requiring that a defendant act with any intent at all." *Gonyea*, 140 F.3d at 654; *see Sneezer*, 983 F.2d at 922–23 (determining that "kidnapping is a general intent crime" rather than a specific intent crime). This means that § 1201(a) "requires the knowing commission of an act that the law makes a crime," *Kimes*, 246 F.3d at 807 (internal quotation marks and citation omitted), and that the "actor . . . entertain[ed] . . . the criminal intent to do the acts," *Milliron*, 984 F.3d at 1194 (internal quotation marks and citation omitted). And that § 1201(a)'s death-results provision lacks an express *mens rea* requirement does not change the analysis.[27]

Because the Court, therefore, has determined that the minimum conduct criminalized by kidnapping resulting in death under § 1201(a) is not merely reckless conduct but rather is knowing conduct, *Borden* does not help Petitioner. The Supreme Court in *Borden*, for instance, held that *knowing* conduct equally covers the ACCA's elements clause, as do purposeful acts. 141 S. Ct. at 1826, 1828 ("The 'against' phrase indeed sets out a *mens rea* requirement—of purposeful *or* knowing conduct." (emphasis added)); *see Somers*, 15 F.4th at 1053 ("[Under *Borden*,] [s]pecific intent to direct action at another satisfies this requirement, as does 'knowing conduct.'" (quoting

---

[27] *See Roof*, 10 F.4th at 406 n.64 ("Although there is no mens rea specified for the element of causation. . . . [w]e find it difficult to imagine a realistic scenario in which a defendant would knowingly engage in conduct . . . and thereby only recklessly or negligently cause bodily injury." (quoting *United States v. Allred*, 942 F.3d 641, 654 (4th Cir. 2019))).

*Borden*, 141 S. Ct. at 1828)). As such, *Borden* does not appear to foreclose that a general intent crime like kidnapping resulting in death under § 1201(a)—an offense that is "silent insofar as requiring that a defendant act with any *intent*," *Gonyea*, 140 F.3d at 654 (emphasis added), but that nonetheless requires the *knowing* commission of an act, *Kimes*, 246 F.3d at 807—can qualify as a crime of violence under § 924(c)(3)(A).[28]

---

[28] The Sixth Circuit has held that other general intent crimes—those that are lacking a *mens rea* requirement of specific intent but that appear to require more than mere proof of reckless conduct—can qualify as crimes of violence under § 924(c)(3)(A) and similarly worded provisions defining crimes of violence. The Supreme Court's recent decision in *Borden* does not appear to have adversely affected these decisions. *See, e.g.*, *United States v. McBride*, 826 F.3d 293, 296 (6th Cir. 2016) (holding that federal bank robbery under 18 U.S.C. § 2113(a), which requires proof "that the defendant possessed '*general intent*—that is . . . knowledge'—with respect to taking the property by intimidation," qualifies as a crime of violence under the guidelines (quoting *Carter v. United States*, 530 U.S. 255, 268 (2000))); *Rafidi*, 829 F.3d 437, 445–46 (6th Cir. 2016) (holding that 18 U.S.C. § 111—which the Sixth Circuit has held in two separate decisions is a "general intent statute," *Milliron*, 984 F.3d at 1195 (citing *Kimes*, 246 F.3d at 807)—qualifies as a crime of violence under § 924(c)(3)(A)). Other circuit courts have also held that offenses lacking a *mens rea* requirement of specific intent can qualify as crimes of violence. *See, e.g.*, *United States v. Dominguez*, 954 F.3d 1251, 1261 (9th Cir. 2020) (rejecting defendant's argument that Hobbs Act robbery lacked "the necessary *mens rea* to qualify as a crime of violence" because acting knowingly or willingly were necessary elements of the offense); *United States v. Williams*, 864 F.3d 826, 829 (7th Cir. 2017) (holding that federal bank robbery satisfied § 924(c)(3)(A) despite no "requirement to prove *intent* to intimidate" (emphasis added)); *United States v. Burns-Johnson*, 864 F.3d 313, 318–20 (4th Cir. 2017) (rejecting defendant's argument that a state statute, "a general intent crime that requires knowledge," could not qualify as a crime of violence under the ACCA when it did not "explicitly require that a person *intentionally* use or threaten use of force" (emphasis in original)); *McNeal*, 818 F.3d at 155 (holding that federal bank robbery, which requires "proof of *general intent*, that is, that the defendant possessed knowledge with respect to the actus reus of the crime," is a crime of violence under § 924(c) (quoting *Carter*, 530 U.S. at 255, 268)); *United States v. Romo-Villalobos*, 674 F.3d 1246, 1251 (11th Cir. 2012) ("Because Florida's general intent crimes plainly require something more than recklessness, these kinds of crimes are not exempted from the 'crime of violence' definition [under the guidelines].")； *United States v. Melchor-Meceno*, 620 F.3d 1180, 1184 (9th Cir. 2010) (holding that state offense, "a general intent crime, include[d] the requisite *mens rea* of intent for a crime of violence" under the guidelines).

For the foregoing reasons, kidnapping resulting in death under § 1201(a) has the *mens rea* necessary to satisfy § 924(c)(3)(A) because it requires proof that an offender knowingly committed the act, as opposed to mere "reckless conduct." *Borden*, 141 S. Ct. at 1828. It therefore satisfies the second requirement to qualify as a crime of violence under § 924(c)(3)(A).

## IV.    CONCLUSION

For the forgoing reasons, kidnapping resulting in death under 18 U.S.C. § 1201(a) categorically qualifies as a crime of violence under 18 U.S.C. § 924(c)(3)(A). Therefore, Petitioner's conviction under count four for using, carrying, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), remains valid despite *Davis*. Petitioner's *Davis* claim as to count four of his conviction is therefore **DENIED**.

In addition, the Court **RESERVES** a decision on whether carjacking resulting in death, in violation of 18 U.S.C. § 2119(3), is a crime of violence under 18 U.S.C. § 924(c)(3)(A), warranting vacatur of Petitioner's firearms conviction under count two.[29]

**SO ORDERED.**

**ENTER:**

**/s/**
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

---

[29] *See supra* note 7.