IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

REJON TAYLOR, )
)
    Petitioner, )
)
v. )     No. 1:19-CV-147-CLC-CHS
)
UNITED STATES OF AMERICA, )     **CAPITAL 2255 PROCEEDINGS**
)
    Respondent. )

---

### UPDATED BRIEF IN SUPPORT OF THE APPLICATION OF *UNITED STATES V. DAVIS* TO REJON TAYLOR'S CASE

---

Rejon Taylor, by and through counsel, respectfully files this brief to address recent legal developments that alter this Court's May 27, 2022, decision (R. 63), denying Mr. Taylor's *United States v. Davis* claim as to Count Four of his conviction. *See* R. 74. The Court's finding that kidnapping resulting in death qualifies as a crime of violence under 18 U.S.C. § 924(c)'s elements clause is invalid in light of the Supreme Court's recent decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022), and the United States Court of Appeals for the Eighth Circuit's recent decision in *United States v. Ross*, No. 18-2800, 2022 WL 4103064 (8th Cir. Sept. 7, 2022). Given that Mr. Taylor's conviction under Count Four no longer stands and because he received a single, aggregated sentence stemming from his four-count conviction, this Court must also vacate Mr. Taylor's death sentence. *See United States v. Causey*, 185 F.3d 407, 423 (5th Cir. 1999). Mr. Taylor presents these arguments in more detail below.

1

In 2008, a jury convicted Mr. Taylor of four offenses: (1) carjacking resulting in death pursuant to 18 U.S.C. § 2119; (2) use of a firearm during and in relation to carjacking, resulting in death, pursuant to 18 U.S.C. §§ 924(c) and (j); (3) kidnapping resulting in death, as defined by 18 U.S.C. § 1201(a); and (4) use of a firearm during and in relation to kidnapping, resulting in death pursuant to 18 U.S.C. §§ 924(c) and (j). R. 58 at PageID 1685. A jury sentenced Mr. Taylor to death without identifying a particular count to which it was attaching the death sentence, or whether it was recommending death based on one or more of his convictions. *Id.*

Mr. Taylor appealed to the Sixth Circuit, arguing, *inter alia*, that his firearms convictions were invalid based on *Johnson v. United States*, 576 U.S. 591 (2015), which held that the residual clause of the Armed Career Criminal Act (ACCA) is unconstitutionally vague, and that convictions imposed under ACCA's residual clause must be vacated. *See United States v. Taylor*, 814 F.3d 340, 375–79 (6th Cir. 2016). Mr. Taylor argued that he was convicted of offenses under 18 U.S.C. § 924(c),[1] which

---

[1] Section 924(c)(3) enhances criminal penalties for individuals convicted of using a firearm in the commission of a felony that constitutes a "crime of violence." 18 U.S.C. § 924(c)(3). The statute defines a crime of violence as an offense that:

> (A) has an element the use, attempted use, or threatened use of physical force against the person or property of another, [commonly referred to as the "elements" or "force" clause] or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," [commonly referred to as the residual clause].

has a residual clause functionally identical to that of ACCA, and that therefore *Johnson* requires that his convictions likewise be invalidated. The Sixth Circuit disagreed, believing that ACCA was more narrowly drawn than Section 924(c), rendering *Johnson* inapplicable.*Id*. It, therefore, denied relief. *Id.*

In 2019, Mr. Taylor filed a motion for relief pursuant to 28 U.S.C. § 2255, again arguing that his convictions under Section 924(c) were constitutionally deficient. Thereafter, the Supreme Court decided in *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), that the residual clause of Section 924(c) was indeed unconstitutional. At this Court's request, the parties briefed the applicability of *Davis* to Mr. Taylor's Section 924(c) convictions and sentence. R. 43; R. 46; R. 49. In that briefing, Mr. Taylor also explained that based on the applicability of *Davis*, which invalidated one of Mr. Taylor's convictions, *United States v. Causey* also applied and required this Court to vacate Mr. Taylor's death sentence. *See* R. 43 at PageID 1632–37.

Subsequently, in June 2021, the Supreme Court decided *Borden v. United States*, 141 S. Ct. 1817 (2021). There, the Court held that violence that results from reckless conduct is insufficient to satisfy the elements clause and, hence, offenses that can be committed by reckless use of physical force categorically fail to qualify

---

18 U.S.C. § 924(c)(3)(A)–(B). Section 924(j) provides that individuals who violate Section 924(c) and cause the death of another shall be punished "by death or by imprisonment for any term of years or life." 18 U.S.C. § 924(j)(1). A defendant must be found guilty under Section 924(c) before they can be deemed death eligible under Section 924(j). Thus, if a charged offense is not a crime of violence pursuant to Section 924(c), a defendant cannot be found guilty of Section 924(j) or eligible for a death sentence under that provision.

as crimes of violence. *Id.* at 1834. The parties then filed supplemental briefing on the applicability of *Borden* to Mr. Taylor's Section 924(c) convictions and sentence. *See* R. 58; R. 61; R. 62. On May 27, 2022, this Court denied Mr. Taylor's *Davis* claim as to Count Four, finding that the predicate offense for his conviction—kidnapping resulting in death under 18 U.S.C. § 1201(a)—categorically qualifies as a crime of violence under 18 U.S.C. § 924(c)(3)(A)'s elements clause. R. 63. Although this Court did not address the *Causey* issue, it noted that the Government was in agreement that should this Court determine that Mr. Taylor's firearms conviction is invalid, "'resentencing would be necessary, because the jury returned a single verdict for all of [Petitioner]'s convictions.'" *Id.* at PageID 1741 (citing R. 46 at PageID 1653 n.4).

## ARGUMENT

Since this Court's May 2022 decision, two significant opinions were decided. First, in *United States v. Taylor* the Supreme Court held that attempted Hobbs Act robbery is not a crime of violence under Section 924(c)(3)(A)'s elements clause. 142 S. Ct. 2015. In reaching this conclusion, the Court rejected the proposition that a petitioner must satisfy a realistic-probability standard to be eligible for relief, and instead, reiterated the straightforward mandate of the court to look squarely "at the elements of the underlying crime." *Id.* at 2024–25. In its opinion, the Court also criticized the government's reliance on *Gonzales v. Duenas-Alvarez*, 439 U.S. 183 (2007). *Id.* at 2025. Notably, in its May 2022 opinion, not only did this Court require Mr. Taylor to make a realistic-probability showing, but it also relied on *Duenas-Alvarez* in reaching that conclusion. Second, in *United States v. Ross*, the Eighth

4

Circuit held that kidnapping resulting in death is not a crime of violence. 2022 WL 4103064, at *1.

In light of the Supreme Court's decision in *Taylor* and the Eight Circuit's decision in *Ross*, which qualitatively affect this Court's decision denying Mr. Taylor's *Davis* claim as to Count Four, the Court must correct the conviction, vacate the resulting death sentence according to *Causey*, and order a new sentencing hearing.

I.    **This Court's denial of relief is invalid in light of *United States v. Taylor*.**

A determination as to whether to vacate Mr. Taylor's conviction and sentence under Count Four rests entirely on whether kidnapping resulting in death under Section 1201(a) categorically qualifies as a crime of violence under the elements clause of Section 924(c). In denying Mr. Taylor relief, the Court found that kidnapping resulting in death categorically qualifies as a crime of violence under Section 924(c)(3)(A), and therefore Mr. Taylor's firearms conviction under Count Four remains valid. R. 63 at PageID 1776, 1785. Specifically, this Court found that kidnapping resulting in death under Section 1201(a) satisfies the two requirements necessary to qualify as a crime of violence under Section 924(c)(3)(A): (1) it "has as an element the use, attempted use, or threatened use of [violent] physical force against the person or property of another"; and (2) the death-results provision of Section 1201(a) requires proof that a petitioner knowingly committed the act, as opposed to mere "reckless conduct." The Supreme Court's recent decision in *Taylor* reveals that this analysis and conclusion are now in error.

**A. The Court's determination that Mr. Taylor must make a realistic-probability showing is no longer correct.**

In determining that kidnapping resulting in death under Section 1201(a) "has as an element the use, attempted use, or threatened use of [violent] physical force against the person or property of another" this Court focused largely on Mr. Taylor's alleged failure to satisfy the realistic-probability standard, which requires a showing that there is a realistic probability the government would apply its statute to conduct that falls outside the generic definition of a crime, in order to be eligible for relief. R. 63 at PageID 1764 (citing *Duenas-Alvarez*, 549 U.S. at 193–94). By requiring a realistic-probability showing, this Court analyzed Mr. Taylor's claim in a manner that is in direct conflict with the Supreme Court's decision in *Taylor*.

In *Taylor*, the Supreme Court held that attempted Hobbs Act robbery under 18 U.S.C. § 1951(a) does not qualify as a "crime of violence" under Section 924(c)(3)(A)'s elements clause because no element of the offense requires proof that the defendant used, attempted to use, or threatened to use force. 142 S. Ct. at 2025–26. Importantly, in reaching this conclusion, the Supreme Court squarely addressed whether a petitioner is required to make a realistic-probability showing—an issue central to this Court's May 2022 denial of relief.

In *Taylor*, the government insisted that a defendant must present an example from an actual case of how the crime in question could be committed without a "threat of force." *Id.* at 2024. In support of this argument, the government pointed to *Duenas-Alvarez*, a Supreme Court decision where the Court required a petitioner to show a realistic-probability that the State would apply its statute to conduct falling outside

the generic definition of a crime. *Id.* at 2024–25; *see also Duenas-Alvarez*, 549 U.S. at 193. Ultimately, the *Taylor*-Court rejected the proposition that a petitioner must make a realistic-probability showing as part of the use of force categorical inquiry. It explained that such a requirement places an undue "burden on the defendant to present empirical evidence about the government's own prosecutorial habits." *Taylor*, 142 S.Ct. at 2024. It also noted "the practical challenges such a burden would present" on defendants given that "most cases end in plea agreements, and not all of those cases make their way into easily accessible commercial databases." *Id.*

The *Taylor*-Court also criticized the government's reliance on *Duenas-Alvarez,* explaining that *Duenas-Alvarez* is not helpful in the context of determining whether a federal offense qualifies as a crime of violence under Section 924(c)(3)(A)'s elements clause for two reasons. First, the Court explained, "the immigration statute at issue… required a federal court to make a judgment about the meaning of a state statute." *Id.* at 2025. The Court continued that it made sense in that context for the federal court "to consult how a state court would interpret its own State's laws." *Id.* In *Taylor*, as here, there is "no such federalism concern…in play." *Id.* Secondly, the Court pointed out that in *Duenas-Alvarez*, an "element[] of the relevant state and federal offenses…overlapped," leaving "the only question [for] the Court [to] face[] was whether state courts" could apply the "'statute in [a] special (nongeneric) manner.'" *Id.* at 2025 (internal citation omitted). Again, those issues did not exist in *Taylor*, and they do not exist here.

In rejecting imposing a realistic-probability showing on a petitioner, the Court explained that imposing such a requirement would "effectively replicat[e] the work formerly performed by the residual clause" and invite constitutional challenges. *Id.* at 2023. The Court also reiterated that in Section 924(c)(3)(A), Congress did not "mandate an empirical inquiry into how crimes are usually committed, let alone impose a burden on the defendant to present proof about the government's own prosecutorial habits." *Id.* Rather, "Congress tasked the courts with a much more straightforward job: Look at the elements of the underlying crime and ask whether they require the government to prove the use, attempted use, or threatened use of force." *Id.*

To help illustrate the importance of looking solely at the elements of the underlying offense, Justice Alito, writing for the majority in *Taylor*, presented a hypothetical involving Adam, a would-be robber. In the scenario, Adam drafts a note reading, "Your money or your life." *Id.* at 2021. The note is a bluff, but Adam hopes the cashier will believe he is armed and dangerous. *Id.* However, upon crossing the threshold of the store, Adam is arrested without ever presenting the note. *Id.* The Court's hypothetical presents an example in which the government would succeed on a conviction of attempted Hobbs Act robbery, without making a crime of violence showing under the elements clause. As the Court notes, "Adam did not 'use' physical force. He did not 'attempt' to use such force—his note was a bluff and never delivered. And he never even got to the point of threatening the use of force. . . he may have intended and attempted to do just that, but he failed." *Id.*

This Court's order is in direct conflict with *Taylor*, in that not only did this Court place the onus on Mr. Taylor to supply cases to satisfy the realistic-probability standard, but it also relied on *Duenas-Alvarez* in reaching this conclusion. R. 63 at PageID 1764. In its May 2022 opinion, this Court insisted that Mr. Taylor point to "his own case or other cases in which the . . . courts in fact did apply the statute in the special (nongeneric) manner for which he argues," and then ultimately denied relief based on Mr. Taylor's failure to make this realistic-probability showing.[2] *Id.* (citing *Duenas-Alvaraz*, 549 at 193). By requiring Mr. Taylor to make a realistic-probability showing, the Court imposed a burden on Mr. Taylor that the Supreme Court flatly rejected in *Taylor*. And, as the *Taylor*-Court makes clear, *Duenas-Alvarez* is not relevant where, as here, there are no federalism concerns invoked (given that this is a § 2255 habeas petition involving convictions under federal law), and there is no overlap between the requirements of Sections 1201(a) and 924(c)(3)(A).

As the Supreme Court made clear in *Taylor*, "[t]he only relevant question is whether the federal felony at issue *always* requires the government to prove–beyond a reasonable doubt, as an element of its case–the use, attempted use, or threatened use of force." 142 S. Ct. at 2020 (emphasis added). Kidnapping resulting in death under Section 1201(a) does not require the government to prove the use, attempted use, or threatened use of physical force. Section 1201(a) is defined in a way that allows

---

[2] Regardless, in prior briefing, Mr. Taylor provided three realistically probable examples. *See* R. 63 at PageID 1764–65.

for both violent and nonviolent means of commission, and therefore cannot categorically qualify as a crime of violence under Section 924(c)(3)(A). Thus, Section 1201(a)'s death-results provision does not convert kidnapping into a crime of violence, as Section 1201 does not require the death be the result of physical force—it simply requires proof of causation.[3] *See* R. 43 at PageID 1627. The clear language of Section 1201(a)'s death-results provision indicates the statute can be used to criminalize accidental or negligent death during a kidnapping.

**B.      This Court incorrectly determined that Section 1201(a) has the requisite mens rea to qualify as a crime of violence.**

This Court also incorrectly determined that the death-results provision of Section 1201(a) has the requisite mens rea to qualify as a crime of violence under Section 924(c)(3)(A). Mr. Taylor argued, in part, that kidnapping resulting in death cannot qualify as a crime of violence under Section 924(c)(3)(A) because the death-results provision lacks a "heightened mens rea"—i.e., that a defendant intentionally or knowingly caused death. R. 43 at 1629–32. This Court disagreed, finding that the minimum conduct criminalized by kidnapping resulting in death under Section 1201(a) is not merely reckless conduct, but rather knowing conduct. R. 63 at PageID

---

[3] This Court also determined that because kidnapping resulting in death requires proof that a petitioner caused the death of another, it necessarily involves the use of physical force. R. 63 at PageID 1762 (citing *United States v. Collins*, 799 F.3d 554, 597 (6th Cir. 2015)). Notably, in determining causing the death of another necessarily involves the use of physical force, the *Collins*-court relied exclusively on *United States v. Anderson*, 695 F.3d 390 (6th Cir. 2012), which was overruled by *United States v. Burris*, 912 F.3d 386, 402 (6th Cir. 2019), on the basis that the *Anderson* panel incorrectly found the statute at issue categorically qualifies as a violent-felony predicate.

1783. Based on this reasoning, this Court concluded that Mr. Taylor does not benefit from *Borden. Id.* at PageID 1785. In reaching this conclusion, this Court incorrectly imputed "knowingly" onto the death-results provision of Section 1201(a).

A recent Supreme Court decision helps shed light on instances where imputing a mens rea requirement from one part of a statute to another is appropriate. In *Ruan v. United States*, two medical doctors licensed to prescribe controlled substances were tried for violating 21 U.S.C. § 841, which makes it a federal crime, "[e]xcept as authorized[,]. . . for a any person knowingly or intentionally to manufacture, distribute, or dispense . . . a controlled substance." 142 S. Ct. 2370, 2372 (2022) (citing 21 U.S.C. § 841). At issue in *Ruan*, was whether the "knowingly or intentionally" mens rea applied to the authorization clause of the statute. 142 S. Ct. at 2370. The Court concluded that Section 841's "knowingly or intentionally" mens rea did in fact apply to the statute's authorization clause, reasoning that the mens rea requirement helped advance "the purpose of scienter, for it help[ed] to separate wrongful from innocent acts." *Id.* at 2370, 2377 (internal citations omitted). In Mr. Taylor's case, a similar application is not necessary. Imputing a "knowledge" requirement onto the death-results provision is not necessary in order to differentiate wrongful conduct from innocent conduct, as there is no ambiguity as to whether kidnapping alone is a wrongful act, with or without death resulting.

However, assuming *arguendo*, that as this Court found, kidnapping resulting in death under Section 1201(a) is a crime of general intent and the scienter requirement is imputed onto the death-results provision, *Taylor* demonstrates a

11

heightened mens rea does not automatically result in a crime of violence finding. Take for example the statute at issue in *Taylor,* attempted Hobbs Act Robbery under 18 U.S.C. § 1951(a), which requires proving: (1) the defendant intended to unlawfully take or obtain personal property by means of actual or threatened force; and (2) completed a substantial step toward that end. *See, e.g., United States v. Resendiz-Ponce*, 549 U.S. 102 (2007). The first element requires a showing of specific intent. Despite this heightened mens rea requirement, the Court in *Taylor* found that attempted Hobbs Act robbery does not qualify as a crime of violence. Take also, for example, the simple kidnapping statute at issue in Mr. Taylor's case. Federal courts have found simple kidnapping under Section 1201 to be a crime of general intent. *See United States v. Sneezer*, 983 F.2d 920, 922-23 (9th Cir. 1992). Yet, despite the statute requiring the government to prove a defendant knowingly committed the crime, here, the government did not argue simple kidnapping qualifies as a crime of violence. R. 63 at PageID 1759–60 (noting "the Government has conceded that simple kidnapping under § 1201(a) is not a crime of violence under § 924(c)'s elements clause").

Importantly, in *Taylor*, the Court emphasized that "[t]he only relevant question is whether the federal felony at issue *always* requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." 142 S. Ct. at 2035 (emphasis added). To obtain a conviction for kidnapping resulting in death under Section 1201(a), the government must prove the first two elements of simple kidnapping: that the accused (1) unlawfully seized,

12

confined, inveigled, decoyed, kidnapped, abducted, or carried away a person; and (2) held a person "for ransom or reward or otherwise." 18 U.S.C. § 1201(a).[4] The death-results provision of Section 1201(a) requires an additional causation showing. *See Burrage v. United States*, 571 U.S. 204, 214 (2014). Simple kidnapping under Section 1201(a) does not qualify as a crime of violence. R. 63 at PageID 1756. Because simple kidnapping does not qualify as a crime of violence, and elements one and two of simple kidnapping overlap with elements from kidnapping resulting in death under Section 1201(a), the use of force showing hinges entirely on the third element ("death…results"). *See* 18 U.S.C. § 1201(a). But proof of "death…results" only requires causation, not state of mind or any other showing related to use of force. Thus, Section 1201(a) does not contain the requisite mens rea to qualify as a crime of violence.

**C.**    ***United States v. Ross* provides additional support that kidnapping resulting in death is not a crime of violence.**

In addition to *Taylor*, on September 7, 2022, the Eighth Circuit held that kidnapping resulting in death is not a crime of violence. *See United States v. Ross*. 2022 WL 4103064, at *1. Previously, the Eighth Circuit had held that kidnapping resulting in death under Section 1201(a) is a crime of violence under Section 924(c)(3)(A). *See United States v. Ross*, 969 F.3d 829 (8th Cir. 2020). That decision, however, predated *Borden*. In October 2021, the Supreme Court granted *certiorari* in *Ross* and a companion case, vacated judgment, and remanded the case for further

---

[4] There is also a jurisdictional requirement requiring the government to show that the accused "willfully transported" another "in interstate or foreign commerce." 18 U.S.C. §1201(a)(1).

consideration in light of *Borden. See King v. United States*, 142 S. Ct. 332 (2021). On remand, the government took the position that kidnapping resulting in death is not a crime of violence in light of *Borden*. 2022 WL 4103064, at \*1. Upon consideration of *Borden*, the Eighth Circuit agreed that kidnapping resulting in death is not a crime of violence and issued an updated opinion in *Ross. Id.* at \*2.

## II. Because Count Four is no longer valid, this Court must also vacate Mr. Taylor's death sentence.

As Mr. Taylor's argued in prior briefing, because *Davis* requires this Court to set aside Mr. Taylor's conviction under Count Four, this Court must also vacate his death sentence. *See* R. 43 at PageID 1632–37.

Each of the four counts Mr. Taylor was convicted of were death-eligible offenses. Rather than addressing each death-eligible count separately, the jury made one generalized finding that the aggravating factors outweighed any mitigation, which resulted in a single aggregate death sentence. *See* R. 62-2 (Verdict Forms).

Given the unique and rare nature of this issue, there are few published opinions addressing this type of aggregate sentence. In *United States v. Causey*, the only published federal circuit court opinion addressing this issue, the Fifth Circuit vacated two defendants' death sentences where the defendants received a single death sentence for three convictions and where one of those convictions was subsequently overturned. 185 F.3d 407, 423 (5th Cir. 1999). The Fifth Circuit noted that because "[t]he jury did not make separate recommendations concerning the appropriate penalties for each count of conviction . . . it is impossible to say that the jury's penalty phase recommendations of the death penalty were not influenced by

14

the fact that [defendants] had received three death eligible convictions, rather than two[.]" *Id.*

Because *Davis*, and the subsequent cases extending the rationale from *Davis*, require this Court to set aside Mr. Taylor's conviction under Count Four, Mr. Taylor now finds himself in an identical position to the defendants in *Causey*. Like the defendants in *Causey*, Mr. Taylor has an aggregate death sentence supported by a now-invalid conviction. Because of the aggregate death sentence, there is no way for this Court to ascertain whether the jury imposed a sentence of death as punishment for the conduct charged in Count One, Count Two, Count Three, or Count Four of the indictment, or some combination thereof. It is also impossible to say with certainty that the jury would have imposed a sentence of death for Count One, Two, or Three had the jury considered each conviction separately and had Mr. Taylor not been convicted of murder by use of a firearm during and in relation to kidnapping, 18 U.S.C. § 924(c)(3), § 924(j). *See generally* R. 62-2 (Verdict Forms) (Mr. Taylor's conviction for firearms murder during an in relation to kidnapping constituted proof of one of the statutory aggravators that the Government was required to prove beyond a reasonable doubt before the jury could impose a sentence of death).

Given the uncertainty inherent in an aggregate punishment supported by an invalid conviction, Mr. Taylor's sentence of death does not comply with the Eighth Amendment's "indispensable" need for reliability. *See Caldwell v. Mississippi*, 472 U.S. 320 (1985). Moreover, the government indicated that should this Court invalidate Mr. Taylor's conviction under Count Four, "resentencing would be

15

necessary." R. 46 PageID 1653 n.4 (citing *Causey*). Accordingly, this Court must vacate the death sentence.

**CONCLUSION**

Given the Supreme Court's decision in *United States v. Taylor*, and the resulting impact of *United States v. Causey*, Mr. Taylor requests that this Court set aside his conviction under Court Four, vacate his death sentence, and order a new sentencing hearing.

Dated: November 14, 2022

Respectfully submitted,

/s/ *Kelley Henry*
Kelley J. Henry, BPR # 021113
Supervisory Assistant Federal Public
Defender, Capital Habeas Unit

/s/ Amy D. Harwell
Amy D. Harwell, BPR # 018691
Assistant Chief, Capital Habeas Unit
Office of the Federal Public Defender for the
Middle District of Tennessee
810 Broadway, Suite 200
Nashville, TN 37203
615.736.5047
amy_harwell@fd.org
kelley_henry@fd.org

/s/ Alexis Hoag-Fordjour
Alexis Hoag-Fordjour, BPR # 028712
Assistant Professor of Law
Brooklyn Law School
250 Joralemon Street, Rm 814
Brooklyn, NY 11201
718.780.0372
alexis.hoag@brooklaw.edu

## CERTIFICATE OF SERVICE

I certify that on the 14th day of November, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

/s/ *Kelley Henry*
Kelley J. Henry, BPR #021113
Supervisory Asst. Federal Public Defender,
Capital Habeas Unit
Office of the Federal Public Defender for the
Middle District of Tennessee
810 Broadway, Suite 200
Nashville, TN 37203
Phone: (615) 736-5047
Fax: (615) 736-5265
Email: Kelley_Henry@fd.org