UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| REJON TAYLOR,<br>   Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>   Respondent. | No. 1:19-cv-147<br>Judge Collier |

**BRIEF REGARDING THE APPLICATION**
**OF *UNITED STATES V. CAUSEY***

Consistent with the Court's order (Doc. 74, Order), the United States of America submits this brief regarding the application, if any, of *United States v. Causey*, 185 F.3d 407 (5th Cir. 1999). Taylor argues that the Constitution and the Federal Death Penalty Act (FDPA) require an "individualized sentencing verdict" as to each capital count of conviction. (Doc. 76, Brief). He is incorrect, and, in any event, his reliance on *Causey* is misplaced.

**FACTUAL AND PROCEDURAL HISTORY**

In 2008, a jury convicted Taylor of carjacking resulting in death, in violation of 18 U.S.C. § 2119(3) (Count 1); murder by use of a firearm during and in relation to a crime of violence, *i.e.*, the carjacking in Count One, in violation of 18 U.S.C. § 924(j) (Count 2); kidnaping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) (Count 3); and murder by use of a firearm during and in relation to a crime of violence, *i.e.*, the kidnaping in Count Three, in violation of 18 U.S.C. § 924(j) (Count 4). (Case No. 1:04-cr-160, Doc. 670, Verdict; Doc. 790, Judgment.) The jury thereafter determined that Taylor should be sentenced to death, finding all four statutory intent factors (*i.e.*, that Taylor intentionally killed the victim; that he intentionally inflicted serious bodily injury that resulted in the death of the victim; that he intentionally

participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person other than one of the participants in the offense, and that the victim died as a direct result of the act; and that he intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life, and the victim died as a direct result of the act), two statutory aggravating factors (*i.e.*, that the murder occurred during a kidnaping and involved substantial planning and premeditation), and one non-statutory aggravating factor (*i.e.*, that Taylor posed a future danger to the lives and safety of others). (Case No. 1:04-cr-160, Doc. 760, Special Verdict.) As to the 33 mitigating factors proffered by Taylor, all 12 jurors found 12 of those factors to be mitigating, including those relating to Taylor's family situation and his adaptation to incarceration through educational and religious programs. (*Id.*) At least one juror (but fewer than all 12) found the existence of five other mitigating factors, and the remaining 16 mitigating factors were wholly rejected by the jury. (*Id.*)

In the penalty phase, the jury was not asked to render a separate verdict for each count, so it considered all the counts together. (*See* Case No. 1:04-cr-160, Doc. 902, Tr. at 7757-72.) On direct appeal, the Sixth Circuit affirmed this Court's judgment and, among other things, rejected Taylor's challenges to his death sentence. *United States v. Taylor*, 814 F.3d 340 (6th Cir. 2016).

## ARGUMENT

In the context of the federal capital sentencing scheme, statutory aggravating factors are designed to prevent the "arbitrary and capricious" imposition of the death penalty by "genuinely narrow[ing] the class of persons eligible for the death penalty" and "reasonably justify[ing] the imposition of a more severe sentence on the defendant compared to others found guilty of

murder." *Zant v. Stephens*, 462 U.S. 862, 877 (1983); *see also Woodson v. North Carolina*, 428 U.S. 280 (1976) (holding that a mandatory death sentence statute violated the Eighth and Fourteenth Amendments). To ensure that they serve that function, the Supreme Court has placed two requirements on aggravating factors that render a defendant eligible for the death penalty. "First, the circumstance may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder." *Tuilaepa v. California*, 512 U.S. 967, 972 (1994) (citing *Arave v. Creech*, 507 U.S. 463, 474 (1993)). "Second," the Court has explained, "the aggravating circumstance may not be unconstitutionally vague." *Id.* at 972 (citing *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980) (plurality opinion)); *see also Gregg v. Georgia*, 428 U.S. 153, 195 & n.46, 198, 200-203 (1976) (opinion of Stewart, Powell, and Stevens, JJ.) (discussing need to avoid vagueness). A sufficiently specific aggravating factor is valid because it can "reasonably justify the imposition of a more severe sentence," *Stephens*, 462 U.S. at 877, and it does not raise concerns that a sentencing jury will have insufficient guidance to determine whether an individual defendant has committed a capital-eligible offense.

Rather than contest whether the FDPA satisfies the requirements the Supreme Court has previously applied for evaluating constitutionality, Taylor seeks to infer another requirement: that the jury's eligibility decision and sentencing recommendation must be provided separately as to each count of conviction, not "bundled together." (Doc. 76, Brief at 3-4). In doing so, Taylor attempts to construe language requiring a sentencing jury to consider *individual defendants* as also requiring that jury to render an individualized sentencing recommendation as to each count of conviction. But neither the Constitution nor the FDPA support that leap.

Taylor received the constitutionally required individualized determination in this case.[1] During the penalty-selection phase of trial, the jury appropriately considered aggravating factors, non-statutory aggravating factors, and the numerous mitigating factors proposed by the defense including, for example, Taylor's background, character, lack of prior criminal history, maturity, conduct during trial, and future adaptation to prison. After considering all of the aggravating and mitigating factors, the jury determined "by unanimous vote" that "the sentence to be imposed shall be[] death." (Case No. 1:04-cr-160, Doc. 760, Special Verdict.) Nothing else was required.

Taylor nonetheless surmises that the jury may have "unfairly weigh[ed] the aggravation by accumulating counts." (Doc. 76, Brief at 3.) The Supreme Court has made clear that once a jury has found the defendant death-eligible, it "need not be instructed how to weigh any particular fact in the capital sentencing decision." *Tuilaepa v. California*, 512 U.S. 967, 979 (1994) (citing cases). Different jurors may consider and weigh different mitigating factors. It is not clear exactly what Taylor means in asserting that a juror could "unfairly accumulate counts" in conducting that person's individual determination about whether an aggravating factor or factors sufficiently outweigh any mitigating factors to justify a sentence of death. The fact that the jury recommended a death sentence after having convicted Taylor of multiple death-eligible convictions is not evidence that any individual juror impermissibly weighed the aggravating and mitigating factors.

---

[1] As a preliminary matter, the "individualized determination" required by the Constitution occurs at the selection phase, not at the eligibility phase when statutory aggravating factors are considered. *See, e.g.*, *Jones v. United States*, 527 U.S. 373, 381 (1999) (distinguishing between the narrowing function at the eligibility stage and the "individualized inquiry" at the selection stage); *Buchanan v. Angelone*, 522 U.S. 269, 275-276 (1998) ("contrast[ing]" the eligibility phase with "the selection phase," in which the Court "emphasized the need . . . to allow an individualized determination"); *Tuilaepa*, 512 U.S. at 972 ("What is important at the selection stage is an individualized determination[.]") (internal quotation omitted).

Taylor also suggests that the jury may have failed to consider that the mitigation factors could be weighed as to each of the offenses, and, in support, points to the jury's request for "more explanation" as to "how to mark" mitigating factors on the special verdict form and the inquiry about what would happen if the jury could not reach a unanimous decision. (Doc. 76, Brief at 4-6.) But those questions are evidence only that the jury took seriously its duty to consider and vote on each of the mitigating factors and reach a unanimous decision. There is no evidence that the jury so misunderstood the district court's instructions such that it failed to consider the mitigating factors with respect to each count of conviction. Indeed, that outcome is particularly unlikely because the mitigation factors, as required by the Constitution and FDPA, relate to the defendant's background or character in addition to the specific crime at issue. *See* 18 U.S.C. § 3592; *see McCleskey v. Kemp*, 481 U.S. 279, 294 (1987) ("[T]he Constitution requires that [the death penalty] decision rest on consideration of innumerable factors that vary according to the characteristics of the individual defendant and the facts of the particular capital offense."). And the Court specifically instructed the jury that its consideration of any aggravating and mitigating factors was "not a mechanical process." (Case No. 1:04-cr-160, Doc. 902, Tr. at 7769.) The jury was entitled to find, for example, that "one mitigating factor outweighs all aggravating factors combined, or that any aggravating factors proved do not, standing alone, justify imposition of a sentence of death." (*Id.*)

Finally, Taylor speculates that the jury "may not have been unanimous as to any one count." (Doc. 76, Brief at 4.) He alleges an inconsistency between the guilt-phase verdict, where the jury did not find Taylor's conduct as to the firearms offenses to be "willful, deliberate, malicious, and premeditated" (Case No. 1:04-cr-160, Doc. 670, Verdict), and the penalty-eligibility-phase verdict in which the jury found that he acted "intentionally" (Case No. 1:04-cr-

5

160, Doc. 760, Special Verdict at 3). But even an internally inconsistent jury verdict is not subject to challenge. As the Supreme Court explained long ago, "[c]onsistency in the verdict is not necessary," because even an acquittal alongside a seemingly inconsistent conviction "does not show that [the jurors] were not convinced of the defendant's guilt." *Dunn v. United States*, 284 U.S. 390, 393 (1932); *see also id.* at 394 ("That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters."); *United States v. Randolph*, 794 F.3d 602, 610 (6th Cir. 2015) (reasoning that a defendant is protected against jury irrationality by "the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts") (internal citation omitted). That principle applies with even greater force here where the verdicts occurred in two different phases of the trial: at the penalty phase, the elements of guilt are "a previously determined matter" and "not at issue." *Oregon v. Guzek*, 546 U.S. 517, 526 (2006). (*Accord* Case No. 1:04-cr-160, Doc. 902, Tr. at 7713 ("guilt or innocence [is] not an issue any more").) Any seeming inconsistencies may reflect these phases' divergent purposes as well as the distinct evidence and argument presented. So Taylor cannot undermine the jury's penalty-phase finding of intentionality. Taylor also surmises that the jury could have reached its recommendation by adding together "yes" votes on different counts, even without a single unanimous vote as to any count. But the special verdict form confirms that the jury reached its determination "by unanimous vote," not by aggregating various split votes, and there is no reason to doubt its veracity. (Case No. 1:04-cr-160, Doc. 760, Special Verdict at 8; *see also* Doc. 902, Tr. at 7765-70 (instructing the jury that it needed to be unanimous as to any findings of aggravating factors and regarding the penalty, but did not need to be unanimous as to any mitigating factors or the weight to be attributed to any particular factors).)

The Fifth Circuit's decision in *Causey*, 185 F.3d 407 (5th Cir. 1999), does not support Taylor's request to vacate his sentence. (Doc. 75, Updated Brief at 14-16; Doc. 76, Brief.) In *Causey*, the Fifth Circuit reversed the convictions of two defendants for witness tampering based on its fact-bound determination that the evidence was insufficient to support one of the elements of that offense. *Causey*, 185 F.3d at 423. Those witness-tampering convictions were one of three death-eligible convictions for which the jury had made recommendations concerning the appropriate penalties under the FDPA. *Id.* at 411-412. The Fifth Circuit therefore vacated the defendants' death sentences and remanded for new sentencing hearings, explaining that, because "[t]he jury did not make separate recommendations concerning the appropriate penalties for each count of conviction . . . it is impossible to say that the jury's penalty phase recommendations of the death penalty were not influenced by the fact that [the defendants] had received three death eligible convictions, rather than two." *Id.* at 423. Here, by contrast, each count of conviction in this case remains intact. So, unlike in *Causey*, the Court need not currently attempt to assess the impact, if any, on the jury's penalty recommendation were one of the death-eligible convictions vacated. Only if one or more of Taylor's convictions were deemed invalid would resentencing be appropriate, and—for the reasons set forth in the United States's contemporaneously filed brief—the Court should reject Taylor's challenge to his conviction on Count Four.

                                                  Respectfully submitted,

                                                  Francis M. Hamilton III
                                                  United States Attorney
                             by: *s/ Christopher D. Poole*
                                                  Christopher D. Poole
                                                  Assistant U.S. Attorney
                                                  1110 Market Street, Ste. 515
                                                  Chattanooga, Tennessee 37402
                                                  (423) 752-5140
                                                  Chris.Poole@USDOJ.GOV
                                                  TN BPR #019155