IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| REJON TAYLOR, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-147-CLC |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **CAPITAL 2255 PROCEEDINGS** |
| Respondent. | ) | |
| | ) | |

**REPLY IN SUPPORT OF
CLAIMS 17(b) AND (c)**

Rejon Taylor, through counsel, respectfully files this reply brief supporting his entitlement to relief as to claims 17(b) and (c) of His Motion for Collateral Relief to Vacate, Set Aside, or Correct Sentence and For a New Trial. R. 1 at PageID # 199–203; *see also* R. 76. Contrary to the Government's contention, Mr. Taylor was denied his constitutional right to a unanimous, individualized sentencing verdict, and due process as protected by the Fifth, Eighth, and Fourteenth Amendments.

**ARGUMENT**

**I.  Mr. Taylor was denied a unanimous, individualized sentencing verdict.**

The Government refuses to acknowledge the possibility of a non-unanimous verdict in this case, insisting instead that the jury reached its eligibility and sentencing determinations by unanimous vote. *See* R. 82. However, because of the general verdict form used in this case, it is possible the jury reached its

recommendation for death without a single unanimous vote as to any count. The possibility of this outcome is further supported by internal inconsistencies between the guilt and eligibility phase verdict forms.

The Government argues that the "special verdict form confirms that the jury reached its determination 'by unanimous vote'. . . and there is no reason to doubt its veracity." R. 82 at PageID # 1895. But that is simply not the case: nothing in the verdict form instruction militates against the conclusion that the general verdict permitted non-unanimous verdicts. Each count Mr. Taylor was convicted of carried a maximum possible sentence of death. The instruction provided to the jury did not ensure that the jury would be unanimous *as to which aggravating factor applied to any particular count*. When "presented with alternative bases for a verdict and simply asked whether it has unanimously reached that verdict, the jury's affirmative answer does not guarantee that all jurors unanimously agreed on the basis for [the death penalty]." *See United States v. Fields,* 516 F.3d 923, 939 (10th Cir. 2008). It is possible that the jury, while unanimously agreeing that an aggravating factor existed, disagreed as to which count the aggravating factor applied, thereby resulting in non-unanimity.

For example, it is possible that Juror One found that the aggravating factor "Defendant committed the murder after substantial planning and premeditation to cause the death of Guy Luck" applied only to Count One, while Juror Two found that same aggravating factor applied only to Count Three. In this scenario, the two jurors, while each finding the aggravating factor applies, were not unanimous as to which

count the aggravating factor applied. In this way, because the general verdict form did not instruct the jury to consider each aggravating factor and their respective applications count by count, the general verdict form creates a situation where there appears to be unanimity, when in fact there was not. But the illusion of unanimity is just that–illusory–not actual.

Inconsistencies between the guilt-phase and eligibility-phase verdict forms cast additional doubt as to juror unanimity. At the eligibility phase, the verdict form instructed the jury to make additional findings with respect to Count Two and Count Four in Mr. Taylor's case. The verdict form included two lines, which read: "was committed was (sic) during the perpetration of a kidnapping," and "was willful (sic), deliberate, malicious, and premeditated." *United States v. Taylor*, 1:04-cr-160, R. 670. The jurors placed a checkmark in the space provided on the first line but did not place a check mark next to the second line. *Id.* Thus, the jurors did not unanimously find that Mr. Taylor's conduct was willful, deliberate, malicious, or premeditated with respect to Count Two and Count Four.

Following the parties' presentation of proof during the first phase of trial regarding Mr. Taylor's mental state at the time of the crime, the jury did not learn any new information during the penalty phase. Despite the absence of any additional proof, the jury found the gateway and statutory aggravating factors that Mr. Taylor acted intentionally and with premeditation–a finding that cannot be squared with the first phase verdict. *Id.*, R. 760. While the Government notes these inconsistencies, it insists that "even an internally inconsistent jury verdict is not subject to challenge."

R. 82 at PageID # 1894–95. However, contrary to the Government's contention, the general verdict form here did not merely result in "internal inconsistency": the general verdict form does not reflect juror unanimity as to each count.

Despite the Government's contention that the special verdict form confirms unanimity, there is no clear showing that the jury made specific, unanimous findings beyond a reasonable doubt of the gateway factors, aggravating factors, and mitigating factors *as to each conviction*, thereby depriving Mr. Taylor of his right to a unanimous verdict as to the sentence on each count. *Ring v. Arizona*, 536 U.S. 584 (2002) (requiring jury to find the aggravating factors necessary for imposing death sentence); *see also Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Jones v. United States*, 526 U.S. 227 (1999). As such, vacatur of the death sentence is not only appropriate, but required by law.

The Government concedes that, like in *Causey*, resentencing would be appropriate where "one or more of Taylor's convictions were deemed invalid," but insists that *Causey* does not support vacatur here, given "each conviction remains intact." R. 82 at PageID # 1896; *see generally* R. 81. For the reasons set forth in contemporaneously filed briefing, Mr. Taylor's conviction on Count Four is invalid. *See* R. 75. Because Mr. Taylor received a single aggregate death sentence, supported by a now-invalid conviction, vacatur is necessary, as there is no way for this Court to ascertain whether the jury imposed a sentence of death as punishment for the conduct charged in Count One, Count Two, Count Three, Count Four, or some combination thereof. However, even if each conviction were to remain intact, as the

Government argues, vacatur of the capital sentence is still necessary, because the judgment does not reflect jury unanimity to each count. *See Causey*, 185 F. 3d at 423.

Of additional concern, when a capital defendant is convicted of more than one count, only the aggravating circumstances related to a given count should be considered in assessing the penalty for that count. Here, rather than weighing the aggravation of a single offense against the mitigation, the jury weighed the aggravation of four offenses against the mitigation. The Government casts aside this concern, noting the jury "need not be instructed how to weigh any particular fact in the capital sentencing decision." R. 82 at PageID # 1893 (citing *Tuilaepa v. California*, 512 U.S. 967, 979 (1994)). But the concern here goes beyond jury discretion in the weighing process. First, by adding together the aggravating circumstances of all four counts, the trial court denied Mr. Taylor the "consideration of . . . the circumstances of the particular offense" that is a "constitutionally indispensable part of the process." *Woodson v. North Carolina*, 428 U.S. 280 (1976) (plurality opinion). Second, the cumulative assessment of the aggravators of four offenses against the mitigation creates a situation in which the aggravating factors are essentially quadruple counted and therefore unfairly weighted in favor of death before jury discretion even comes into play. *See generally Stringer v. Black*, 503 U.S. 222, 232 (1992). In *Stringer*, the Court noted that when a sentencing body is asked to weigh a factor more than once in its decision, a reviewing court cannot "assume it would have made no difference if the thumb had been removed from death's side of the scale." *Id*. Here, this Court cannot now assume that had the thumb been removed from the death side

5

of the scale in Mr. Taylor's case, it would not have made a difference. The only way to ensure the lawfulness of Mr. Taylor's sentence, is for this Court to order a new sentencing hearing.

## CONCLUSION

Mr. Taylor respectfully requests this Court vacate his death sentence and order a new sentencing hearing.

Dated: January 20, 2023

                                                       Respectfully submitted,

                                                     /s/ *Kelley J. Henry*
                                                   Kelley J. Henry, BPR # 021113
                                                  Supervisory Assistant Federal Public
                                                  Defender, Capital Habeas Unit

                                                  /s/ Amy D. Harwell
                                                  Amy D. Harwell, BPR # 018691
                                                  Assistant Chief, Capital Habeas Unit
                                                  Office of the Federal Public Defender for the
                                                  Middle District of Tennessee
                                                  810 Broadway, Suite 200
                                                  Nashville, TN 37203
                                                  615.736.5047
                                                  amy_harwell@fd.org
                                                  kelley_henry@fd.org

                                                  /s/ Alexis Hoag-Fordjour
                                                  Alexis Hoag-Fordjour, BPR # 028712
                                                  Assistant Professor of Law
                                                  Brooklyn Law School
                                                  250 Joralemon Street, Rm 814
                                                  Brooklyn, NY 11201
                                                  718.780.0372
                                                  alexis.hoag@brooklaw.edu

## CERTIFICATE OF SERVICE

I certify that on the 20th day of January, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

/s/ *Kelley J. Henry*
Kelley J. Henry, BPR #021113
Supervisory Asst. Federal Public Defender,
Capital Habeas Unit
Office of the Federal Public Defender for the
Middle District of Tennessee
810 Broadway, Suite 200
Nashville, TN 37203
Phone: (615) 736-5047
Fax: (615) 736-5265
Email: Kelley_Henry@fd.org