IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

CHATTANOOGA DIVISION

---------------------------------------------------------------

REJON TAYLOR,

                        Petitioner,

v.                                 1:19-CV-147

UNITED STATES OF AMERICA,

                        Respondent.

---------------------------------------------------------------

Chattanooga, Tennessee
October 13, 2022

BEFORE:  THE HONORABLE CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE

APPEARANCES:

      FOR THE PETITIONER:

      KELLEY JANE HENRY
      Federal Public Defender
      for the Middle District of Tennessee
      810 Broadway, Suite 200
      Nashville, Tennessee  37203-3830

      ALEXIS J. HOAG-FORDJOUR
      Brooklyn Law School
      Columbia University
      250 Joralemon Street
      Room 814
      Brooklyn, New York  11201

CASE MANAGEMENT CONFERENCE

APPEARANCES: (Continuing)


      FOR THE RESPONDENT:

      STEVEN S. NEFF
      CHRISTOPHER D. POOLE
      Assistant United States Attorneys
      U.S. Department of Justice
      Office of the United States Attorney
      1110 Market Street, Suite 515
      Chattanooga, Tennessee  37402


                            - - -


      THE COURT:  Please call the case.

      THE COURTROOM DEPUTY:  Rejon Taylor versus United States of America, Case Number 1:19-CV-147.

      THE COURT:  Counsel, please make appearances for the record.

      MS. HENRY:  Good afternoon, Your Honor.  Kelley Henry, Assistant Federal Public Defender, on behalf of Mr. Taylor.

      MS. HOAG-FORDJOUR:  Alexis Hoag-Fordjour on behalf of Rejon Taylor, from Brooklyn Law School, professor.

      MR. POOLE:  Chris Poole for the United States, Your Honor.

      THE COURT:  And we're here this afternoon to touch base on where we are with the case and to see where we need to go from here.  I think all the outstanding motions have been

acted upon by now.  Is that correct?

MS. HENRY:  That is my understanding, Your Honor.  If I may address the Court as to where --

THE COURT:  You may.

MS. HENRY:  -- we believe we are.

THE COURT:  And why don't you come up to the lectern.

MS. HENRY:  Thank you, sir.

(Brief pause.)

MS. HENRY:  Thank you, Your Honor.  Again, Kelley Henry on behalf of Mr. Taylor.

Last week we had the opportunity to sit down with Assistant United States Attorneys Mr. Poole and Mr. Neff to discuss where we felt matters stand in the case.

Since Your Honor issued your opinion with respect to the what I'll call *Johnson* issue in the matter, there have been two significant legal developments which call the Court's order into question.  The first was the United States Supreme Court's decision in *United States vs. Taylor*, and that's found at 142 S. Ct. 2015, issued by the United States Supreme Court on June 21st of this year, a seven-to-two opinion authored by Justice Gorsuch in which Justice Gorsuch essentially rejected what was a main tenet of this Court's order, that being that a defendant, in order to prevail on a *Johnson* issue under the modified categorical approach, would have to be able to establish that someone had actually been prosecuted, that it

couldn't just be a hypothetical case.  Your Honor decided that we had the burden to show actual prosecution.  Justice Gorsuch, in his opinion, rejected that analysis specifically.

There's also been a decision by the Eighth Circuit in the matter of *United States vs. Ross and King*.  That is an unpublished decision of the Eighth Circuit on August the 11th of 2022, Case Number 18-2800.  That is the case in which the United States Court of Appeals for the Eighth Circuit determined that the crime of kidnapping resulting in death did not qualify as a crime of violence and therefore the conviction had to be overturned in that case.

The United States government had actually conceded that point in the *Ross* briefing.  The Eighth Circuit directed the United States to nevertheless provide additional briefing on the question of whether or not extreme recklessness would meet the Supreme Court's test for the categorical approach under *Johnson* and its progeny.  The Eighth Circuit ultimately held that it did not and specifically the crime of kidnapping resulting in death, which is the issue in our case.  The court found that reversal was required.

So in light of those two developments, what I suggested to the United States Attorney, and I believe they are in agreement, it would be appropriate for us to file with the Court new briefing within 30 days.  The government will look at the briefing, may agree with us, may not, but may

agree with us.  And if there is agreement between the parties, that could pretermit significant litigation which would need to happen in this case.

I would also respectfully suggest to the Court that at the same time we would add additional briefing on the issue of the omnibus jury verdict in the sentencing matter of this case.  As Your Honor knows, this is the only death penalty -- federal death penalty trial that has happened here in the Eastern District.  And so it's understandable that the verdict forms might have not been compliant.  However, we have one verdict form for four capital sentences, and that is, I believe, as a matter of law, unconstitutional.  There's precedent for that out of the Fifth Circuit in the *Causey* case.

And, again, since that is a simple matter of law and because it could resolve the penalty phase issues in this case, which could then ultimately lead to a settlement of all issues, it would seem appropriate for us to file that briefing at the same time, let the government look at it, make a recommendation to the Court, and then have the Court rule. And so that is, I believe, our joint recommendation. Mr. Poole can correct me if I'm wrong.  And I'm happy to answer any questions.

THE COURT:  Okay.  Let me hear from Mr. Poole.

Mr. Poole?

UNITED STATES DISTRICT COURT

MS. HENRY: Thank you.

MR. POOLE: Your Honor, she's right that if we agree with her we'll tell the Court, Judge. And we don't oppose -- I guess it would be a motion for reconsideration on the *Johnson* issue.

The *Causey* issue is a new issue. I'm interested to see what they have to say about it. I don't read the case the same way they do, but I'm interested to see their brief on it.

And we certainly don't oppose -- if those two issues do in fact resolve the case, obviously that would -- that would save the Court a lot of time and expense, and we're not -- we're obviously not opposed to that, Judge.

I'd like to see their briefing, as Ms. Henry said, and then we will -- we would like to respond. We don't oppose taking up those two issues first before getting into I don't know how many issues it would be after that, but it would be a lot.

MS. HENRY: (Moving head up and down.)

MR. POOLE: If it pleases the Court, we're fine with that, Judge.

THE COURT: And, Mr. Poole, this is off the subject a little bit, but am I incorrect that the President has imposed a moratorium on the death penalty?

MR. POOLE: I think that's correct, Judge. And I -- and Ms. Henry brought this up. In the Eighth Circuit case, the

*Ross* case, the United States's position was different than ours has been. I've asked for clarification on that. From what our -- what we were told when we responded to Your Honor's -- to the motion Your Honor's already ruled on was that we took the position we were told DOJ takes. Somebody -- either that position has changed or someone in the Eighth Circuit did not believe that our position was the same. So I honestly don't know if that's changed, Your Honor. We -- I've asked Appellate to check into that and have not gotten a response. I asked last Thursday when we met, and I haven't gotten a response. So I'm honestly not exactly sure if there's been a change in DOJ's position. We have not been told that, Your Honor.

THE COURT: Death penalty prosecutions on the federal level are extremely rare.

MR. POOLE: (Moving head up and down.)

THE COURT: When this case was going on, I took a look at all the death penalty cases across the United States. And at least according to those records, this was the first death penalty case ever decided by a jury in the history of the state of Tennessee on the federal level.

I would think that because there are so few cases, that people at Main levels at DOJ ought to have a pretty good handle on what's going on and what the position is in the prosecutions, because there are so few. It's not like gun cases where there are so many cases that no human being could

keep track of them all.

MR. POOLE: Agreed, Your Honor.

THE COURT: And this prosecution was how many years ago? Was it ten years ago now?

MR. POOLE: I believe that's right, Judge. 2013-ish sounds right.

THE COURT: And it seems like there's been an awful lot of litigation that's taken place. It's mostly motion practice, but there's been an awful, awful lot. And it would be nice if the Department could come to a decision on what they want to do with these cases.

MR. POOLE: Agreed, Judge. And we were following -- we have followed in this case, as always -- we have consulted with DOJ, with Capital Crimes, all along the way. We have followed the directives they have given us. I don't have the date on the Eighth Circuit case. That is, as I said, a position that, from the United States's perspective, was different than what we were told. But we have been in touch with Department of Justice at -- in the DC level since before indicting this case, Judge, and all along, at the appellate level, after the appellate level, when we responded to the motions Your Honor has already talked about resolving. So there has been no change that has been conveyed to us, and we have been in constant communication. So, Your Honor, yes, they're aware of it, we know they're aware of it, and we will

obviously have to follow what they tell us to do, but as of now that is to proceed as we have with Your Honor.

THE COURT: Well, obviously this Court has no business delving into policy issues and has no wish to do that. It's not the Court's job to tell another branch of government how they should perform their duties. The Court's job is to try to ascertain the law and try to follow the law to the best of the Court's ability. I would just observe, though, that it's taking a lot of this Court's time, it's taking a lot of time of counsel, and the Department should be cognizant of that.

MR. POOLE: Certainly.

THE COURT: Well, looks like, then, that the recommendation is that we set a briefing schedule. Are there two issues, or just one issue? I guess there's two issues, then. There's also the omnibus verdict form issue?

MR. POOLE: Yes, sir. It would be, I think, a motion for reconsideration and then an additional issue which would be the *Causey* issue or the omnibus verdict form issue, yes, Your Honor.

MS. HENRY: (Moving head up and down.)

THE COURT: And is this an issue that would not be considered under the waiver theories? I don't believe there was an objection to this at the trial.

MR. POOLE: There was not.

MS. HENRY: There was no objection at trial, Your Honor. We'll address waiver. I don't believe that waiver would be at issue here, because it would be a structural error, but we would include that in our briefing, of course, address that issue.

THE COURT: Okay. Well, do you want to handle those separately, or do you want to handle those together, then?

MS. HENRY: I think just in order to help the -- you know, speed the case along a little bit towards what I think is -- it should be, which I think we should be able to resolve the case, I think that it would be a good idea for us to brief them all at the same time. That way, if we have two legal issues both of which are fairly straightforward that would end up in a decision setting aside the capital case, it's probably better to do that together than piecemeal, as I look back over the case.

THE COURT: Okay. And when would you like to file the first round?

MS. HENRY: November 14th, if it please the Court.

THE COURT: So that's about a month from now.

MS. HENRY: Yes, sir.

THE COURT: And, Mr. Poole, how much time would you need to respond?

MR. POOLE: Three weeks, Your Honor.

THE COURT: So that should be about December 7th? Is

that right?

Ms. Lewis, what is December 7th on?

THE COURTROOM DEPUTY:  I'm going to pull up my calendar, Judge.

MS. HENRY:  December 7th, Your Honor, would be a Wednesday.

THE COURTROOM DEPUTY:  Thank you.

THE COURT:  Is December 7th, then, okay?

MR. POOLE:  Yes, sir.

THE COURT:  That's Pearl Harbor Day, isn't it?

MR. POOLE:  It is, Your Honor.

MS. HENRY:  And, Your Honor, may I ask the Court's indulgence for December 14th for a reply?

THE COURT:  You think seven days would be sufficient?

MS. HENRY:  Yes, sir.

THE COURT:  Okay.  And from what you've stated, I don't see much of a possibility of having an evidentiary hearing on either one of these, do you?

MS. HENRY:  No, sir.

THE COURT:  Okay.  So it's just papers, then, and the Court can decide.

I'm not familiar with especially the second issue at all.  So it will take me some time to get up to speed on that. If the Court believes that oral argument would be helpful, the Court will let counsel know.  I will not schedule that at this

time.

MR. POOLE: Yes, sir.

MS. HENRY: Thank you, sir.

THE COURT: Okay. What else do you need the Court to do this afternoon?

MS. HENRY: Nothing further for the petitioner, Your Honor.

MR. POOLE: Nothing further, Your Honor. Thank you.

THE COURT: Ms. Lewis.

THE COURTROOM DEPUTY: All rise. This honorable court is now adjourned.

                        END OF PROCEEDINGS


        I, Elizabeth B. Coffey, do hereby certify that I reported by mechanical stenography the proceedings held on this date in the above-styled cause, and that this transcript, produced by computer, is an accurate record of said proceedings.

                                s/Elizabeth B. Coffey

                                Elizabeth B. Coffey,
                                Official Court Reporter
                                United States District Court
                                Eastern District of Tennessee
                                900 Georgia Avenue
                                Chattanooga, Tennessee  37402

UNITED STATES DISTRICT COURT