IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| REJON TAYLOR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:19-CV-147-CLC-CHS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**PETITIONER'S MOTION TO AUTHORIZE DISCOVERY**

Petitioner Rejon Taylor, through counsel, respectfully moves this Honorable Court pursuant to Rule 6 of the Rules Governing §2255 Proceedings, for leave to conduct discovery relevant to Mr. Taylor's claims for relief.

Specifically, Mr. Taylor requests production of the Government's notes, documents, memoranda, or reports from its preparation for and during voir dire at Mr. Taylor's trial. These documents shall include the Government's notes prior to voir dire, such as all background investigation conducted on prospective and selected jurors, and all notes

and information gathered on prospective and selected jurors up until the jury was sworn in at Mr. Taylor's trial.

These documents are necessary to investigate and further establish Mr. Taylor's *Batson* claims and related ineffective assistance of counsel (IAC) claims for failure to object to the Government's *Batson* violations.

**A. "Good Cause" Standard for Discovery**

Congress enacted Rule 6 of the Rules Governing §2255 proceedings, permitting discovery upon a showing of good cause:

> A party may invoke the processes of discovery available under the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure or elsewhere in the usages and principles of law if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Rule 6 of the Rules Governing §2255.

"Good cause" is established where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief. *Cornell v. United States*, 472 F. App'x 352, 354 (6th Cir. 2012) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997)).

*Bracy* sets out a clear, straightforward framework for the determination of a habeas petitioner's discovery requests: a court must

1) determine whether the petitioner has alleged the elements of the claim to be proven and 2) determine whether the petitioner has made any specific allegations that support the particular discovery request. *Id.* If the petitioner has alleged the claim and asked for probative evidence, he has shown good cause for discovery and the court has the duty to permit it. *Id.*

**B. Mr. Taylor meets the *Bracy* good cause requirements as to the production of documents in support of his *Batson* and related IAC claims.**

In violation of the right to a fair and impartial jury as protected by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the Government used preemptory strikes in a non-race-neutral manner, excusing Black prospective jurors while accepting identically or similarly situated and responding White jurors. *See* Proposed Sealed Ex. 1 Jury Panel Challenge Forms; *Batson v. Kentucky*, 476 U.S. 79 (1986). The Government excused at least one Black juror, Prospective Juror R.W., whose responses to the jury questionnaires and to voir dire by both parties did not reflect any nonracially motivated reason for the use of a preemptory strike. *See* Proposed Sealed Ex. 2 Prospective Juror R.W. Jury Questionnaires. R.W. provided answers on

his questionnaires and in voir dire that were similar or identical to the answers of several White jurors that the Government accepted. *See Snyder v. Louisiana*, 552 U.S. 472 (2008) (finding *Batson* violation despite facially race-neutral justification where White jurors with same quality were not excused). This was a clear violation of the rule of *Batson*; the error is structural. *See United States v. McFerron,* 163 F.3d 952, 955 (6th Cir.1998); *United States v. Kimbrel*, 532 F.3d 461 (2008).

Trial counsel provided ineffective assistance regarding the *Batson* violation. *See Strickland v. Washington,* 466 U.S. 668, 696 (1984). Counsel failed to object to the Government's racially motivated use of preemptory strikes, failed to require the Government to provide a nonracially motivated justification for the strikes, and failed to request a ruling from the Court as to whether the Government's strikes violated *Batson*. Further, defense counsel failed to show that R.W.'s answers on his questionnaires and in voir dire were similar or identical to the answers of several White jurors who the Government accepted. *See Snyder,* 552 U.S. at 483–84 (finding *Batson* violation despite facially race-neutral justification where White jurors with same quality were not excused). Counsel's failure to object to the dismissal of Juror R.W.,

violated the prevailing professional norms for the defense in a capital case. Further, appellate counsel was ineffective in failing to raise the *Batson* issue on direct appeal. *Cowans v. Bagley*, 639 F.3d 241, 252 (6th Cir. 2011).

Prospective Juror R.W.[1] provided answers in his juror questionnaires and in voir dire that were identical or extremely similar to several jurors seated at Mr. Taylor's trial—all of whom were White. R.W. is a Black man from Hamilton County that served in the United States Air Force in Vietnam from 1969–1970. Proposed Sealed Ex. 9 Voir Dire at 40–41. At the time of trial, he was 65 years old. In response to Part 6 "Opinions of Guilt/Innocence and Punishment" of the Jury Questionnaire R.W., answered as follows:

> 55. Would you say that you are open to considering the death penalty in this case, depending on the evidence in the trial and what you learn about the defendant in the sentencing trial?
>
> Answer: Yes, I could consider giving the death penalty.
>
> 56. Would you say that you are open to considering giving a sentence of life imprisonment without possibility of release in this case depending on the evidence in the trial and what you learn about the defendant in the sentencing trial?

[1] All jurors and prospective jurors are identified by their initials. In an accompanying motion, Mr. Taylor moves to file the voir dire transcript, juror questionnaires, and jury challenge forms under seal.

Answer: Yes, I could consider giving a sentence of life imprisonment without possibility of release.

57. What are your personal feelings regarding the death penalty?

Answer: I am for it under some conditions or for some crimes.

58. Have your feelings about the death penalty changed over the years?

Answer: No.

59. Do you belong to any group(s) that advocates the increased use of or the abolition of the death penalty?

Answer: No.

60. Would you please explain any personal, moral, religious, or other views or opinions you have regarding the death penalty?

Answer: No answer provided.

62. Would your views or opinions regarding the death penalty influence or affect your ability to consider a verdict of guilty or not guilty during the guilt/innocence part of a trial for premeditated murder?

Answer: No.

63. If the court instructs you that you must determine the defendant's guilt or innocence based upon the evidence presented and the court's instructions on the law, would you be able to do so, despite your own views or opinion on the death penalty?

Answer: Yes.

64. Do you think you would be able to consider all the evidence in support of all aggravating and mitigating factors, based upon the facts of the case and the judge's instructions of the law, and make appropriate decisions regarding imposition of a sentence of death or life imprisonment, regardless of your personal views or opinions regarding the death penalty?

Answer: Yes.

> 65. If the evidence in this case establishes that a sentence of life imprisonment is appropriate under law, would you be able to impose a sentence of life imprisonment on the defendant?
>
> Answer: Yes.
>
> 66. If the evidence establishes that a sentence of death is appropriate under the law, would you be able to vote to impose the death penalty on the defendant?
>
> Answer: Yes.
>
> 67. The law requires that the government prove the defendant's guilt and, if the defendant is found guilty, any aggravating factors which would render the defendant eligible for the death penalty, "beyond a reasonable doubt." Because of your views or opinions regarding the death penalty, would you hold the government to a higher or greater burden of proof than "beyond a reasonable doubt" before you could return a verdict of guilt or make a decision regarding imposition of a sentence of death?
>
> Answer: No.
>
> 68. Because of your views or opinions regarding the death penalty, do you have any concerns regarding the consequences, either emotionally for you or for the reactions of family, friends, or neighbors, if you have to make a decision as to whether the death penalty or life imprisonment is appropriate penalty in this case?
>
> Answer: No.

*See* Proposed Sealed Ex. 2 Juror R.W. Questionnaires. All questions in Part 6 of the Jury Questionnaire except questions 57 and 60 are Yes/No questions.

In voir dire, R.W. stated that he could impose the death penalty for certain crimes such as murder and murder or rape of a child. Proposed Sealed Ex. 9 Voir Dire at 112–113, 136. R.W. clarified that premediated

murder warranted the death penalty and distinguished premeditated murder from manslaughter. Proposed Sealed Ex. 9 Voir Dire at 137–38.

Sitting juror, S. B., is a White woman that was 67 years old at the time of trial. *See* Proposed Sealed Ex. 3 Juror S.B. Jury Questionnaires. S.B. and R.W. had almost identical answers in their questionnaires and in voir dire. S.B. answered every Yes/No question in Part 6 of the Jury Questionnaire the same as R.W. In response to question 57, similar to R.W.'s response, S.B. wrote in "I think in some cases the death penalty is required." *See* Proposed Sealed Ex. 3 Juror S.B. Jury Questionnaires. In voir dire, like R.W., S.B. stated the death penalty should be imposed for premeditated murder and murder or rape of a child. Proposed Sealed Ex. 9 Voir dire at 337, 340–41.

Sitting juror, R.B., was a White man that served in Vietnam and was 59 years old at the time of Mr. Taylor's trial. *See* Proposed Sealed Ex. 4 R.B. Juror Questionnaires; Proposed Sealed Ex. 9 Voir Dire at 41. R.B. answered every Yes/No question in Part 6 of the Jury Questionnaire the same as R.W. In response to question 57 he wrote an almost an identical answer to R.W. stating his personal feelings on the death

penalty were that it "depends on the circumstances." *See* Proposed Sealed Ex. 4 R.B. Jury Questionnaires.

Sitting Juror A.G., a White woman that was 50 years old at the time of trial, also answered similarly to R.W. in Part 6 of the Jury Questionnaire and in voir dire. Like R.W., she expressed that crimes against children warrant the death penalty and accidental homicides should not be subject to the death penalty. *See* Proposed Sealed Ex. 5 Jury A.G. Questionnaires; Proposed Sealed Ex. 9 Voir Dire at 186, 223–24.

Sitting Juror J. H., a White woman from Hamilton County, answered almost identically to R.W. in Part 6 of the Jury Questionnaire. J.H. wrote in answers to questions 57 and 60 that her feelings toward the death penalty depended on the crime and cruelty of it. *See* Proposed Sealed Ex. 6 J.H. Jury Questionnaires. On voir dire, like R.W., J.H. stated that child rape warranted the death penalty. Proposed Sealed Ex. 9 Voir Dire at 87.

Alternate Juror A.C., a White woman from Hamilton County, answered every Yes/No question in Part 6 of the Jury Questionnaire the same as R.W. In response to question 57, A.C. stated that she is for the

death penalty if the crime deserves it. *See* Proposed Sealed Ex. 7 A.C. Jury Questionnaires. Like R.W., A.C. clarified that she believed the crimes that deserved the death penalty were premediated ones. Proposed Sealed Ex. 9 Voir Dire at 342.

Sitting Juror H. S. is a White man and military veteran that was 69 years old at the time of Mr. Taylor's trial. H.S. answered every Yes/No question in Part 6 of the Jury Questionnaire identically to R.W. *See* Proposed Sealed Ex. 8 H.S. Jury Questionnaires.

As outlined above, prospective juror R.W., a Black man, answered identically or extremely similar to White jurors that the Government accepted to serve on Mr. Taylor's jury. The Government's voir dire notes will provide probative evidence that the Government struck at least one prospective Black juror from Mr. Taylor's jury for non-race neutral reasons. Notes of any disparate investigation will also be probative evidence of Mr. Taylor's *Batson* claim. *See Flowers v. Mississippi*, 588 U.S. 284, 310 (2019) (stating that by "conducting additional inquiry into th[e] backgrounds" of only Black jurors, "a prosecutor can try to find some pretextual reason—any reason—that the prosecutor can later articulate to justify what is in reality a racially motivated strike."). Mr. Taylor

cannot access this necessary information without discovery. This information will allow Mr. Taylor to further investigate his claims and demonstrate that he is entitled to relief.

**C. Conclusion**

For the reasons articulated above, Mr. Taylor has met the *Bracy* requirements: he has set out the elements for his *Batson* and related IAC claims and made specific allegations that support this discovery request for the Government's voir dire notes, documents, memoranda, or reports from its preparation for and during voir dire at Mr. Taylor's trial. Accordingly, Mr. Taylor has demonstrated that he has good cause for discovery for this information. *Bracy*, 520 U.S. at 908–09. Thus, the Court should grant this motion.

Dated this 21st day of September 2026.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER FOR THE MIDDLE DISTRICT OF TENNESSEE
CAPITAL HABEAS UNIT

AMY D. HARWELL
First Assistant Federal Public Defender

SAMANTHA N. BARRY

Asst. Federal Public Defender

164 Rosa L. Parks Blvd.
Nashville, TN 37203
Phone: (615) 736-5047
Fax: (615) 736-5265

BY: */s/Samantha N. Barry*

## CERTIFICATE OF SERVICE

I certify that on this 21st day of September 2026, a copy of the foregoing was filed and served via the Court's CM/ECF system on all counsel for Respondents.

*/s/Samantha N. Barry*
Assistant Federal Public Defender